# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

COMMITTEE ON THE JUDICIARY,
UNITED STATES HOUSE OF
REPRESENTATIVES,
2138 Rayburn House Office Building
Washington, D.C. 20515,

                *Plaintiff*,

   v.

DONALD F. MCGAHN II,
51 Louisiana Avenue, N.W.
Washington, D.C. 20001,

                *Defendant*.

Case No. 1:19-cv-2379

# Exhibit II

JERROLD NADLER, New York
CHAIRMAN

ZOE LOFGREN, California
SHEILA JACKSON LEE, Texas
STEVE COHEN, Tennessee
HENRY C. "HANK" JOHNSON, JR., Georgia
TED DEUTCH, Florida
KAREN BASS, California
CEDRIC L. RICHMOND, Louisiana
HAKEEM S. JEFFRIES, New York
DAVID CICILLINE, Rhode Island
ERIC SWALWELL, California
TED LIEU, California
JAMIE RASKIN, Maryland
PRAMILA JAYAPAL, Washington
VAL DEMINGS, Florida
LOU CORREA, California
MARY GAY SCANLON, Pennsylvania
SYLVIA GARCIA, Texas
JOSEPH NEGUSE, Colorado
LUCY McBATH, Georgia
GREG STANTON, Arizona
MADELEINE DEAN, Pennsylvania
DEBBIE MUCARSEL-POWELL, Florida
VERONICA ESCOBAR, Texas

ONE HUNDRED SIXTEENTH CONGRESS

Congress of the United States
House of Representatives
COMMITTEE ON THE JUDICIARY
2138 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6216
(202) 225-3951
http://www.house.gov/judiciary

DOUG COLLINS, Georgia
RANKING MEMBER

F. JAMES SENSENBRENNER, JR., Wisconsin
STEVE CHABOT, Ohio
LOUIE GOHMERT, Texas
JIM JORDAN, Ohio
KEN BUCK, Colorado
JOHN RATCLIFFE, Texas
MARTHA ROBY, Alabama
MATT GAETZ, Florida
MIKE JOHNSON, Louisiana
ANDY BIGGS, Arizona
TOM McCLINTOCK, California
DEBBIE LESKO, Arizona
GUY RESCHENTHALER, Pennsylvania
BEN CLINE, Virginia
KELLY ARMSTRONG, Alabama
GREG STEUBE, Florida

May 7, 2019

William A. Burck, Esq.
Quinn Emanuel Urquhart & Sullivan
1300 I St. NW
Suite 9000
Washington, D.C. 20005

Dear Mr. Burck:

    On Monday, April 22, the House Committee on the Judiciary served a subpoena on your client, former White House Counsel Donald F. McGahn II, compelling the production of documents in Mr. McGahn's possession or control by May 7, and his testimony on May 21, 2019. We write in response to your letter received this morning regarding that subpoena.

    As an initial matter, regarding the subpoenaed documents, the White House Counsel's letter did not actually *invoke* executive privilege, but rather merely suggested at the 11th hour – without providing any supporting authority – that all requested documents "*implicate* significant Executive Branch confidential interests and executive privilege."[1] This blanket suggestion of potential privilege is entirely insufficient. As the district court for the District of Columbia held in *Committee on the Judiciary v. Miers*, a subpoena recipient is "not excused from compliance with [a] Committee's subpoena by virtue of a claim of executive privilege that *may ultimately be made*."[2] Nor can a "blanket assertion of privilege over all records generated after a particular date . . . pass muster," without a "showing . . . that any of the individual records satisf[y] the prerequisites for the application of the privilege."[3]

    Even if the President were to properly invoke privilege, any claim of executive privilege has been waived as to documents that the White House voluntarily disclosed to Mr. McGahn and

---

[1] Letter to Chairman Nadler from Pat A. Cipollone (May 7, 2019) (*emphasis added*).
[2] Mem. Op., *Comm. on Judiciary v. Miers*, No. 08-cv-0409-JDB (D.D.C. Jul. 31, 2008), at 91 (emphasis added).
[3] *Committee on the Judiciary, U.S. House of Representatives v. Miers*, 558 F. Supp. 2d 53 (D.D.C. 2008).

his counsel. The D.C. Circuit expressly held in *In re Sealed Case (Espy)* that the White House "waive[s] its claims of privilege in regard to specific documents that it voluntarily reveal[s] to third parties outside the White House."[4] In *Espy*, as is the case here, the disclosure at issue was to the attorney for a former government official.[5] Thus, given that there has been neither an actual assertion of executive privilege, nor an individualized showing that the privilege would apply to the subpoenaed records, the Committee continues to insist upon compliance with the subpoena.

As to Mr. McGahn's own document production obligations, the subpoena plainly directs that your client must provide a privilege log containing specific information for any document in his possession or control that "is withheld in full or in part on any basis," including on "the basis of a privilege asserted by or on behalf of the White House, or at the request of the White House."[6] As the instructions also make clear, any "objections or claims of privilege are waived if you fail to provide an explanation of why full compliance is not possible and a log identifying with specificity the ground(s) for withholding each withheld document prior to the request compliance date."[7] In accordance with the requirements laid out in our subpoena, we expect a full privilege log specifying each document withheld, the asserted basis for so doing and the other information demanded, to be provided forthwith.

Turning to the other requirement of the subpoena – that Mr. McGahn appear before the Committee to provide testimony in two weeks – I fully expect that the Committee will hold Mr. McGahn in contempt if he fails to appear before the Committee, unless the White House secures a court order directing otherwise.[8] Further, even if Mr. McGahn is authorized by court order to invoke executive privilege as to certain testimony, he still is required by law to "appear before the Committee to provide testimony, and invoke executive privilege where appropriate."[9]

Consistent with the rules of the House of Representatives, and as the Supreme Court has admonished, "[a] subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase. If that were the case, then, indeed, the great power of testimonial compulsion, so necessary to the effective functioning of courts and legislatures, would be a nullity."[10] And the Supreme Court has "often iterated the

---

[4] *In re Sealed Case*, 121 F.3d 729, 741-42 (D.C. Cir. 1997).
[5] *See id.*
[6] Subpoena by Authority of the House of Representatives of the United States of America to Donald F. McGahn for documents and testimony, signed by Representative Jerrold Nadler, April 22, 2019.
[7] *Id.*
[8] *See, e.g., United States v. Bryan*, 339 U.S. 323, 332 (1950) (reasoning that a party cannot fail to comply with a subpoena absent a "return of the writ" providing reasons for non-compliance, because to "deny the Committee the opportunity to consider the objection or remedy it is in itself a contempt of its authority and an obstruction of its processes").
[9] *Miers*, 558 F. Supp. 2d 53, 106 (D.D.C. 2008).
[10] *Bryan*, 339 U.S. at 331.

2

importance of this public duty, which every person within the jurisdiction of the Government is bound to perform when properly summoned."[11]

As I am sure you are aware, the President recently declared that he is "fighting *all* the subpoenas" issued by Congress, evidently without regard to whether he has any legal basis to do so.[12] To be clear, a letter from the White House in service of the President's apparent goal of blocking or delaying testimony that the President believes would be politically damaging is not a basis for Mr. McGahn to violate his legal obligation to appear before the Committee. Rather, if the President wishes to block Mr. McGahn's appearance in the face of a duly issued subpoena, the burden rests with the White House to file an action in court to attempt to do so.

Moreover, with regard to Mr. McGahn's testimonial obligations, there is no valid executive privilege invocation that could be asserted in good faith regarding the subject of the Special Counsel's investigation and report. President Trump had the opportunity to assert executive privilege over Mr. McGahn's interviews with the Special Counsel and, for strategic reasons, "declined to assert any privilege over Mr. McGahn's testimony," allowing Mr. McGahn to answer the Special Counsel's questions "fulsomely and honestly."[13] Thereafter, the White House made the same strategic decision with regard to publication of the report itself not to assert executive privilege over *any* portion of the report, including portions describing Mr. McGahn's communications with the President and other senior officials in extensive detail.[14] As the D.C. Circuit has already recognized, publication of such information "waives [] privileges for the document or information specifically released."[15]

The President and his personal counsel have also routinely commented publicly regarding the President's communications with Mr. McGahn, and the content of Mr. McGahn's testimony to the Special Counsel. By way of example, on April 25, shortly after the Report was released, President Trump denied a central event described by Mr. McGahn, tweeting, "I never told the White House Counsel Don McGahn to fire Robert Mueller."[16] As has long been recognized, no person—not even the President—can employ privilege as both a sword and a shield, selectively cherry picking which information to tout publicly in his defense, and which information to deliberately withhold from the American people.[17]

---

[11] *Id.*
[12] Charlie Savage, *Trump Vows Stonewall of 'All' House Subpoenas*, N.Y. Times, Apr. 24, 2019 (emphasis added).
[13] Michael S. Schmidt & Maggie Haberman, *White House Counsel, Don McGahn, Has Cooperated Extensively in Mueller Inquiry*, N.Y. TIMES, Aug. 18, 2018.
[14] Attorney General Barr Press Conference on April 18, 2019 (the President confirmed that "he would not assert privilege over the Special Counsel's report . . . [and] no material has been redacted based on executive privilege.").
[15] *In re Sealed Case*, 121 F.3d. at 741.
[16] Donald J. Trump (@realDonaldTrump), Twitter (Apr. 25, 2019, 4:47 AM).
[17] *See, e.g., Nixon v. Sirica*, 487 F.2d 700, 717-18 (D.C. Cir. 1973) (considering public statements by President Nixon to be a factor undermining the White House claimed need for confidentiality in related conversations).

3

Lastly, this Committee is currently engaged in an investigation into alleged obstruction of justice, public corruption and other abuses of power by the President and his administration. Even in its redacted form, the Special Counsel's report offers substantial evidence and analysis that the President did, in fact, engage in multiple acts of obstruction. Mr. McGahn provided critical information that appears throughout Volume II of the Special Counsel's report, detailing incidents in which, *inter alia*, the President: sought to stop former Attorney General Sessions from recusing himself from the Russia investigation and then to have Sessions reverse his recusal decision[18]; directed Mr. McGahn to have Special Counsel Mueller fired[19]; directed Mr. McGahn to deny that attempted firing[20]; and sought to curtail the scope of the Special Counsel's investigation.[21] Where, as here, there is substantial evidence indicating that the President engaged in such misconduct, the public interest in the "fair administration of justice" outweighs the President's "generalized interest in confidentiality."[22]

For all these reasons, Mr. McGahn is required to appear and provide testimony before the Committee absent a court order authorizing non-compliance, as well as provide a privilege log for any documents withheld. Otherwise, the Committee will have no choice but to resort to contempt proceedings to ensure that it has access to the information it requires to fulfill its constitutionally mandated duties.

Sincerely,

*[signature: Jerrold Nadler]*

Jerrold Nadler
Chairman
House Committee on the Judiciary

cc: Doug Collins
Ranking Member
House Committee on the Judiciary

---

[18] Special Counsel Robert S. Mueller III, *Report on the Investigation Into Russian Interference in the 2016 Presidential Election*, Vol. II, at 48-51, 107-11 (hereinafter "Mueller Report").
[19] *Id.* Vol. II, at 77-87.
[20] *Id.* Vol. II, at 90-94.
[21] *Id.* Vol. II, at 113-18.
[22] *United States v. Nixon*, 418 U.S. 683, 713 (1974).

4