# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

COMMITTEE ON THE JUDICIARY,
UNITED STATES HOUSE OF
REPRESENTATIVES,
2138 Rayburn House Office Building
Washington, D.C. 20515,

                *Plaintiff*,

   v.

DONALD F. MCGAHN II,
51 Louisiana Avenue, N.W.
Washington, D.C. 20001,

                *Defendant*.

Case No. 1:19-cv-2379

# Exhibit KK

JERROLD NADLER, New York
CHAIRMAN

ZOE LOFGREN, California
SHEILA JACKSON LEE, Texas
STEVE COHEN, Tennessee
HENRY C. "HANK" JOHNSON, JR., Georgia
TED DEUTCH, Florida
KAREN BASS, California
CEDRIC L. RICHMOND, Louisiana
HAKEEM S. JEFFRIES, New York
DAVID CICILLINE, Rhode Island
ERIC SWALWELL, California
TED LIEU, California
JAMIE RASKIN, Maryland
PRAMILA JAYAPAL, Washington
VAL DEMINGS, Florida
LOU CORREA, California
MARY GAY SCANLON, Pennsylvania
SYLVIA GARCIA, Texas
JOSEPH NEGUSE, Colorado
LUCY McBATH, Georgia
GREG STANTON, Arizona
MADELEINE DEAN, Pennsylvania
DEBBIE MUCARSEL-POWELL, Florida
VERONICA ESCOBAR, Texas

ONE HUNDRED SIXTEENTH CONGRESS

# Congress of the United States
## House of Representatives
COMMITTEE ON THE JUDICIARY
2138 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6216
(202) 225-3951
judiciary.house.gov

DOUG COLLINS, Georgia
RANKING MEMBER

F. JAMES SENSENBRENNER, JR., Wisconsin
STEVE CHABOT, Ohio
LOUIE GOHMERT, Texas
JIM JORDAN, Ohio
KEN BUCK, Colorado
JOHN RATCLIFFE, Texas
MARTHA ROBY, Alabama
MATT GAETZ, Florida
MIKE JOHNSON, Louisiana
ANDY BIGGS, Arizona
TOM McCLINTOCK, California
DEBBIE LESKO, Arizona
GUY RESCHENTHALER, Pennsylvania
BEN CLINE, Virginia
KELLY ARMSTRONG, North Dakota
GREG STEUBE, Florida

May 16, 2019

Mr. Pat Cipollone
Counsel to the President
The White House
1600 Pennsylvania Ave, N.W.
Washington, D.C. 20002

Dear Mr. Cipollone:

I write to reply to your May 14 and May 15, 2019 letters. As a threshold matter, your failure to comprehend the gravity of the Special Counsel's findings is astounding and dangerous. The Mueller Report found that Russia interfered in our elections and outlined our nation's acute vulnerability to another attack. The Special Counsel also found that the President engaged in multiple acts to exert undue influence over law enforcement investigations. Recently, more than 900 former federal prosecutors of both parties wrote that such conduct, but for the Office of Legal Counsel policy against charging sitting presidents (followed by the Special Counsel), would have resulted in the indictment of Donald Trump for serious crimes. As the prosecutors wrote: "As former federal prosecutors, we recognize that prosecuting obstruction of justice cases is critical because unchecked obstruction—which allows intentional interference with criminal investigations to go unpunished—puts our whole system of justice at risk. We believe strongly that, but for the OLC memo, the overwhelming weight of professional judgment would come down in favor of prosecution for the conduct outlined in the Mueller Report."[1]

Accordingly, the Committee has the right – indeed the duty under the Constitution – to investigate these and other related circumstances. Recent developments indicate that the objects of our investigation as to both past and current actions are needed more urgently than ever. Both the Russian threat to our elections and the President's threat to the rule of law continue.

Against this backdrop, your sweeping claim that the Committee has no right to seek documents and information related to the issues investigated by the Special Counsel is unprecedented and unsupported by law, history and practice. The Administration's position that the President cannot be indicted by the Department of Justice, and that Congress cannot

---

[1] May 6, 2019 Statement by Former Federal Prosecutors.

investigate him, effectively places the President above the law. That claim, like your demand that the Committee "discontinue its inquiry,"[2] is inconsistent with the most basic principles underlying our constitutional system of government. We can only conclude that the President's recent pronouncement that he will "fight all the subpoenas" issued by Congress[3] is what prompted that portion of your May 15 missive responding to the Committee's letter sent over two months prior.

Your letters also inaccurately describe the documents the Committee seeks in its subpoena, and the Committee's accommodation efforts to date. To clarify the record, I set forth below the exact terms of the current offer of accommodation. I urge the Administration to resume negotiations to resolve this dispute, which were abruptly broken off by the Department of Justice when it rejected the Committee's most recent counter-offer.

The Committee's April 18, 2019 Subpoena and Accommodation Process

Your May 14, 2019 letter references and attaches only letters from the Department to the Committee; it does not attach any of the letters from the Committee to the Department, including the most recent letter dated May 10, 2019 (attached), summarizing in detail the extensive negotiations regarding the subpoena.[4]

The Committee has agreed, and remains prepared, to limit its request for the underlying documents to those specifically referenced in the Muller Report (request 2 in the April 18 subpoena), and relieve the Department of the obligation to produce the other underlying documents responsive to request 3 (which instruction 24 to the April 18 subpoena states were only subject to consultation regarding the time period for compliance). In addition, the Committee has offered the additional accommodation of providing a defined set of the highest priority referenced documents for initial production, thereby making the Department's review less burdensome to perform. It was against this backdrop that the Department refused to engage in further discussions, or even respond to the Committee's offer. Instead, on May 7, 2019, the Department sent its eleventh-hour threat that if the contempt markup was not postponed, the Attorney General would request that the President invoke executive privilege as to every document responsive to the subpoena – a threat the President, of course, promptly followed through on the following morning.

For these reasons, your claim that "the Committee rushed to vote on contempt for failing to provide 100% and immediate compliance with a subpoena that seeks *millions of pages* of documents from a prosecutor's files"[5] is demonstrably false. As described above, the Committee agreed not only to limit its request to those documents that were publicly referenced in the Special Counsel report, but also further agreed to prioritize that limited set of documents.

---

[2] May 15, 2019 Letter from Pat A. Cipollone, p.3.

[3] Charlie Savage, *Trump Vows Stonewall of 'All' House Subpoenas*, N.Y. Times, April 24, 2019 (emphasis added).

[4] May 10, 2019 Letter from Chairman Nadler to Attorney General William P. Barr.

[5] May 15, 2019 Letter from Pat A. Cipollone, p.3.

Similarly, your claim that "the Committee – for the first time in American history – voted to recommend that the Attorney General be held in contempt because he *refused to violate the law* by turning over grand-jury materials that he may not lawfully disclose"[6] is also false. First, the subpoena recognizes in the instructions that the Department may withhold any document for which it believes there is an operative privilege, a legal impediment, or other valid reason not to produce, so long as it provides a log describing the document and basis for the withholding. Second, as I have repeatedly stated, the Committee is requesting only that the Department join in an application to the Court for authorization to release documents withheld pursuant to Rule 6(e), and not that it unilaterally produce them. Third, the Committee did not pursue contempt based on the Department's refusal to join in that application. That point was made clear by me at the Committee's contempt proceeding,[7] as well as in the bipartisan support for an amendment reinforcing that the contempt was not based on Rule 6(e).[8] Your inaccurate claim to the contrary regarding Rule 6(e) is a red herring.

If the Attorney General feels there are Rule 6(e) materials he cannot produce, he is free to say so, log them pursuant to the subpoena's instructions, and withhold them pending judicial review. We have previously cited the relevant legal authorities. Thus, the Rule 6(e) dispute need not detain us any longer.

To ensure there is no further misunderstanding, in accord with our attached May 10 letter, we remain ready, willing, and able to continue the accommodations process with the goal of resolving the only two matters at issue – the specific documents referenced in the report, and the non-Rule 6(e) redactions.

Legislative Purpose of the Committee's Investigation[9]

Your May 15 letter also claims that "the Committee has not articulated any proper legislative purpose for pursuing inquiries that duplicate matters that were the subject of the Special Counsel's inquiry."[10] As an initial matter, the Committee's work is not limited to the specific areas covered by the Special Counsel's investigation, both in terms of legislative

---

[6] *Id.*

[7] May 8, 2019 Judiciary Committee Mark-up of the Contempt Report at p. 114 ("[I]t has never been our intention, as we have stated before, to ask the Attorney General to violate the law. We have always intended and we have made it very clear that we wanted him to come to court with us to ask for an exemption to Rule 6(e)."); p. 117 ("But the contempt citation is for his ignoring the subpoena, in effect. It was never intended to put him in jeopardy by saying you have to give us 6(e) material."); p. 175 ("We have no intention and never had any intention of enforcing -- of trying to force the Attorney General or anyone else to give us 6(e) material without going to court.").

[8] *Id.* at 186-87 ("We have made clear that the 6(e) material is not included for purposes of the subpoena. And if that wasn't clear enough, when we accepted Mr. Gaetz's amendment, that is made super clear.").

[9] This text is adapted from the Committee Report accompanying the contempt resolution against the Attorney General.

[10] May 15, 2019 Letter from Pat A. Cipollone, p.3.

3

purpose and oversight activities. Regardless, the Committee has previously articulated in great detail the legislative purpose behind its requests and actions, and there can be no doubt about the copious legislative, oversight and Constitutional purposes at issue.[11]

The investigation into the alleged obstruction of justice, public corruption, and other abuses of power by President Donald Trump, his associates, and members of his Administration and related concerns is being undertaken pursuant to the full authority of the Committee under Rule X(l) and applicable law. The purposes of this investigation include but are not limited to: 1) investigating any possible malfeasance, abuse of power, corruption, obstruction of justice, or other misconduct on the part of the President or other members of his Administration; 2) considering whether the conduct uncovered may warrant amending or creating new federal authorities, including among other things, relating to election security, campaign finance, misuse of electronic data, and the types of obstructive behavior and other misconduct the Mueller Report describes;[12] and 3) considering whether any of the conduct described in the Special Counsel's Report warrants the Committee taking any further steps under Congress's Article I powers.

Notably, the Mueller Report presents grave concerns about the susceptibility of the nation's governing institutions to foreign disinformation campaigns and the vulnerability of our election infrastructure. It also demonstrates a compelling need to strengthen laws to improve election security. The redacted Mueller Report, however, does not provide sufficient details for the Committee to perform its own constitutional duty and engage in a thorough and independent investigation based on that Report's findings. It is therefore imperative that the Committee have access to the additional documents, information and testimony necessary for it to effectively investigate possible misconduct, and to consider appropriate legislative, oversight, or other constitutionally warranted responses. The Administration's refusal to comply with the Committee's subpoena and other efforts to obtain information, or to engage in a meaningful accommodations process, therefore continues to thwart the Committee's ability to fulfill its constitutional duties.

The urgency of the Committee's work is highlighted because Russia's hostile actions against the United States and its election process are ongoing. The Justice Department has indicated that Russian influence efforts continued into the 2018 midterm elections.[13] With the 2020 elections looming, this threat to our republic is at risk of recurrence, and Congress must act immediately to address it. Just recently, FBI Director Christopher Wray warned that Russia continues to pose a "very significant counterintelligence threat," and that the U.S. government

---

[11] For example, the Committee has previously discussed legislative purpose in Committee Report accompanying the resolution to hold the Attorney General in contempt.

[12] Several bills relevant to the legislative purpose of this investigation have already been introduced and referred to the Committee, including but not limited to: the Special Counsel Independence and Integrity Act, H.R. 197, 116th Cong (2019); the Special Counsel Reporting Act, H.R. 1357, 116th Cong. (2019); the Presidential Pardon Transparency Act, H.R. 1348, 116th Cong. (2019); and the For the People Act of 2019, H.R. 1, 116th Cong. (2019) (now pending in the Senate).

[13] *See* Criminal Complaint ¶ 14, United States v. Khusyaynova, No. 1:18-mj-464 (E.D. Va. Sept. 28, 2018) (alleging Russian national participated in a conspiracy "to interfere with U.S. political and electoral processes, including the 2018 U.S. elections").

"view[ed] 2018 as just kind of a dress rehearsal for the big show in 2020."[14] Earlier this year, the Director of National Intelligence similarly warned that Russia and other adversaries "probably are already looking to the 2020 U.S. election" to conduct malign influence operations and that "Moscow may employ additional influence toolkits—such as spreading disinformation, conducting hack-and-leak operations, or manipulating data—in a more targeted fashion to influence U.S. policy, actions, and elections."[15]

In the face of these efforts, and with the 2020 elections approaching, the Committee requires a more complete understanding of Russia's influence and hacking operations. Among other things, the Committee must be permitted to assess whether the Department and the FBI are devoting sufficient resources to the growing threat, and to consider remedial legislation such as criminal penalties targeting election inference activities or the use of illegally acquired data. For example, in its current form, sections of the Mueller Report describing the structure and actions taken by the Internet Research Agency are heavily redacted.[16] Sections of the Mueller Report describing the hacking activities undertaken by Russian intelligence services likewise contain significant redactions, which impair the ability of the Committee to gain a complete understanding of Russia's actions.[17] Without this information, the Committee is unable to fully perform its responsibility to protect the impending 2020 elections—and thus our republic itself— from a recurrence of foreign interference.

President Trump's repeated efforts to interfere with and derail the Special Counsel's investigations also pose grave concerns. Volume II of Special Counsel Mueller's Report details "multiple acts by the President that were capable of exerting undue influence over law enforcement investigations, including the Russian-interference and obstruction investigations."[18] The President's efforts increased in intensity over time. Once he "became aware that his own conduct was being investigated in an obstruction-of-justice inquiry, he engaged in a second phase of conduct, involving public attacks on the investigation, non-public efforts to control it, and efforts in both public and private to encourage witnesses not to cooperate with the investigation."[19] These actions "ranged from efforts to remove the Special Counsel and to reverse the effect of the Attorney General's recusal; to the attempted use of official power to limit the scope of the investigation; to direct and indirect contacts with witnesses with the potential to influence their testimony."[20] To carry out this campaign of obstruction, President Trump "sought to use his official power outside of usual channels," including by conducting "one-on-one meetings" with Administration officials or other advisors and by contacting the

---

[14] Transcript, *A Conversation with Christopher Wray*, Council on Foreign Relations (Apr. 26, 2019).

[15] Daniel R. Coats, Director of National Intelligence, *Worldwide Threat Assessment of the U.S. Intelligence Community* (Jan. 29, 2019).

[16] Mueller Report, Vol. I, at 15-35.

[17] *Id.* Vol. I, at 35-51.

[18] *Id.* Vol. II, at 157.

[19] *Id.* Vol. II, at 7.

[20] *Id.* Vol. II, at 157.

5

Attorney General about the Russia investigation after he had been explicitly counseled against doing so.[21]

The Mueller Report contains evidence that in the wake of an attack by a hostile nation against American institutions, President Trump's response was to undermine the investigation rather than take action against the perpetrators. The facts recounted in the Mueller Report make clear the Committee's interest in obtaining more detailed information. The President's "position as the head of the Executive Branch provided him with unique and powerful means of influencing official proceedings, subordinate officers, and potential witnesses."[22]

To protect the rule of law, the Committee requires an immediate and more detailed accounting of these and other actions taken by the President. The Special Counsel "conducted a thorough factual investigation in order to preserve the evidence when memories were fresh and documentary materials were available."[23] As a result, the Committee has sought access to a discrete subset of the fruits of that work – including investigative materials, such as interview reports, as well as evidence, such as contemporaneous notes taken by fact witnesses – that are referenced in the report. The Committee urgently requires access to those materials to perform its core constitutional functions. The Special Counsel has expressly noted the need to avoid "preempt[ing] constitutional processes for addressing presidential misconduct,"[24] and affirmed that "Congress can validly make obstruction-of-justice statutes applicable to corruptly motivated official acts of the President without impermissibly undermining his Article II functions."[25]

As the Special Counsel further noted, the Department has a policy against indicting a sitting president, which the Special Counsel "accepted for purposes of exercising prosecutorial jurisdiction."[26] Congress is therefore the only branch of government able to hold the President to account for improper conduct in our tripartite system, and urgently requires the subpoenaed material to determine whether and how to proceed with its constitutional duty to provide checks and balances on the President and Executive Branch. Otherwise, the President remains insulated from legal consequences and sits above the law. As the Special Counsel emphasized, in our system, "no person in this country is so high that he is above the law."[27]

---

[21] *Id.*; *see also e.g., id.* Vol. II at 50-51 (President Trump pulled Attorney General Sessions aside to ask that he "unrecuse" himself from the Russia investigation after the White House Counsel's office directed that Sessions should not be contacted about the matter).

[22] *Id.* Vol. II, at 7.

[23] *Id.* Vol. II, at 2.

[24] *Id.* Vol. II, at 1.

[25] *Id.* Vol. II, at 171.

[26] *Id.*

[27] *Id.* Vol. II at 181-82 (citations, quotation marks and brackets omitted).

The Administration's Efforts to Frustrate Congress' Constitutional Role

You assert in your May 15 letter that my "claim that 'virtually all document requests are going unsatisfied' is contradicted by the facts."[28] But "facts are stubborn things"[29] and a review of them reveals the truth about the Administration's compliance with the President's declaration of war against all of Congress' lawful requests. The following are only a few recent examples of the Judiciary Committee's requests to which the Administration has been unresponsive:

- January 11, 2019 document request from Chairman Nadler to the Department of Justice relating to the Administration's Zero Tolerance Policy.

- February 15, 2019 document request from Chairman Nadler and Subcommittee Chairs Lofgren, Cicilline, Johnson, Cohen, Bass, and Vice Chair Scanlon to President Trump relating to the President's decision to declare a national emergency to fund the border wall.

- March 7, 2019 document request from Chairman Nadler and Subcommittee Chairman Cicilline to the Department of Justice relating to President Trump's interference with antitrust law enforcement.

- March 22, 2019 follow-up document request from Chairman Nadler and Subcommittee Chair Cohen to the Department of Justice and the White House relating to the President's decision to declare a national emergency to fund the border wall.

- April 8, 2019 document request from Chairs Nadler, Scott, Neal, Cummings, and Pallone to the Department of Justice, Department of Health & Human Services, and the White House relating to the Administration's decision not to defend the Affordable Care Act.

- April 8, 2019 request for information from Chairman Nadler, Subcommittee Chair Bass, and Reps. Jeffries, Jackson Lee, and Richmond to the Department of Justice and the Bureau of Prisons for information about the implementation of the "First Step Act."

- April 15, 2019 request for documents and information from Chairs Nadler, Cummings, and Thompson to the White House and the Department of Homeland Security relating to the Administration's plan to use political retribution as to the basis for relocating detained immigrants and misusing related funds.

- April 16, 2019 request for documents and information from Chairman Nadler and Subcommittee Chairs Cohen and Lofgren to the Department of Homeland Security relating to the President's comments about offering pardons to Department personnel.

---

[28] May 15, 2019 Letter from Pat A. Cipollone, p. 1.

[29] John Adams, "Adams' Argument for the Defense: 3–4 December 1770," *Founders Online*, National Archives.

7

- April 25, 2019 request for documents and information from Chairs Nadler, Cummings, and Thompson to the Department of Homeland Security relating to the removal of members of the Department's senior leadership.

Given your statement that your office is prepared to "work with the Committee through the constitutionally mandated accommodation process to provide the Committee with materials it can properly request,"[30] the Committee's staff is prepared at any time to resume discussions regarding the open issues related to the April 18 subpoena, as well as the many other outstanding requests, such as those listed above, to which the Administration has not responded. To attempt to cut through our disputes, I am prepared to make my staff available at a mutually convenient time to meet with your staff regarding these issues. I hope you will take us up on that offer.

Sincerely,

*Jerrold Nadler*

Jerrold Nader
Chairman
Committee on the Judiciary

cc: Hon. Doug Collins, Ranking Member

---

[30] May 15, 2019 Letter from Pat A. Cipollone, p. 12.

8