**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES,<br><br>    *Plaintiff*,<br><br>v.<br><br>DONALD F. MCGAHN II,<br><br>    *Defendant*. | Case No. 1:19-cv-2379 |

**RESPONSE TO ORDER TO SHOW CAUSE**
**REGARDING RELATED CASE DESIGNATION**

Plaintiff Committee on the Judiciary of the United States House of Representatives (Judiciary Committee) hereby responds to the Court's order to show cause why this case should be designated as related to *In re Application of the Committee on the Judiciary, U.S. House of Representatives, for an Order Authorizing the Release of Certain Grand Jury Materials*, 1:19-gj-00048-BAH (filed July 26, 2019) (*In re Application*).

These cases are properly related under Local Civil Rule 40.5(a)(3)(ii)-(iii) because both seek key evidence for the Judiciary Committee's investigation into whether to recommend articles of impeachment against President Donald J. Trump for potentially criminal obstructive conduct. The same underlying Committee investigation of the same Presidential misconduct is at the heart of both matters before this Court. Therefore, "judicial economy would be served by having the[] matters resolved by the same judge." *Singh v. McConville*, 187 F. Supp. 3d 152, 156 (D.D.C. 2016) (quoting *Autumn Journey Hospice, Inc. v. Sebelius*, 753 F. Supp. 2d 135, 140 (D.D.C. 2010)).

## BACKGROUND

In March 2019, Special Counsel Robert S. Mueller III issued his *Report On The Investigation Into Russian Interference In The 2016 Presidential Election* (Report), concluding that the "Russian government interfered in the 2016 presidential election in sweeping and systematic fashion." Application of the Committee on the Judiciary, U.S. House of Representatives, For An Order Authorizing the Release of Certain Grand Jury Materials (Committee Application) at 3, *In re Application* (July 26, 2019) (quoting Report, Vol. I at 1) (ECF No. 1); Compl. ¶ 1, *Comm. on the Judiciary, U.S. House of Representatives v. McGahn*, 1:19-cv-2379 (August 7, 2019) (ECF No. 1). The Report, which followed a lengthy investigation by the Special Counsel and grand jury proceedings overseen by this Court,[1] further details considerable evidence of multiple acts undertaken by President Trump to obstruct the Special Counsel's investigation. *See* Committee Application at 3-8; Compl. ¶¶ 2, 24, 26.

As explained in the pleadings filed thus far in the two cases, the Judiciary Committee is investigating the events described in the Report to determine "whether to recommend articles of impeachment against the President based on the obstructive conduct described by the Special Counsel." Compl. ¶ 1; *see also id.* ¶¶ 61-62; *accord* Committee Application at 1-2, 3, 22-23 (Judiciary Committee is "conducting an investigation to determine whether to recommend articles of impeachment"). To gather evidence for this investigation, the Judiciary Committee filed *In re Application* on July 26, 2019, seeking the release of portions of the Report redacted pursuant to Federal Rule of Criminal Procedure 6(e) as well as certain underlying grand jury

---

[1] *See* Minute Order (Aug. 7, 2019) (explaining that the Committee filed *In re Application* with a Notice of Related Case to *In re Application for an Order Authorizing the Release of Grand Jury Material Cited, Quoted, or Referenced in the Report of Special Counsel Robert S. Mueller III*, 1:19-mc-00045-BAH (filed April 1, 2019)).

materials that would enable it to assess, among other things, the President's "knowledge and state of mind" concerning the events of the Presidential campaign described in the Report in order "to determine whether he acted with corrupt intent when he took actions to impede the Special Counsel's investigation." Committee Application at 35. The Committee additionally seeks underlying grand jury materials that "relate directly to … actions taken by" former White House Counsel and counsel for the Trump Campaign Donald F. McGahn II "during the campaign, the transition, or McGahn's period of service as White House Counsel," to question McGahn effectively. *Id.* at 41-42.

On August 7, 2019, the Judiciary Committee filed its complaint in this case to compel testimony from McGahn, who is "the most important witness, other than the President, to the key events that are the focus of the Judiciary Committee's investigation." Compl. ¶ 5. As with the evidence sought in *In re Application*, the testimony of McGahn is "critical to the Judiciary Committee's independent assessment of President Trump's conduct as described in the Special Counsel's Report," Compl. ¶ 64, including the Committee's efforts to assess the President's "intent" and the "motivations for his actions" in interfering with the Special Counsel's investigation, among other potentially obstructive conduct, *id.* ¶ 66.

## ARGUMENT

Ordinarily, "new cases filed in this courthouse are randomly assigned," *Singh*, 187 F. Supp. at 154 (citing Local Civ. R. 40.3(a)), but the "local rules contain an exception … for related cases," *id.* (citing Local Civ. R. 40.5 (additional citations omitted)). Pending civil cases are "deemed related" when, as relevant here, they "involve common issues of fact" or "grow out of the same event or transaction." Local Civ. R. 40.5(a)(3)(ii)-(iii). This "related case rule embodies the principle that in certain instances, the interests of judicial economy outweigh the

fundamental interests served by the random assignment rule." *Autumn Journey*, 753 F. Supp. at 139 (citing *Doe v. Von Eschenbach,* 2007 WL 1655881, at *1 (D.D.C. June 7, 2007)).

For the related-case rule to apply, "the underlying facts themselves must be common." *Dakota Rural Action v. U.S. Dep't of Agric.*, No. 18-cv-2852-BAH, 2019 WL 1440134, at *2 (D.D.C. Apr. 1, 2019). However, the factual overlap between the two cases need not be complete. Courts in this district have treated cases as related where, for example, plaintiffs shared the same "ultimate goal," *Assiniboine & Sioux Tribe of Fort Peck Indian Reservation v. Norton*, 211 F. Supp. 2d 157, 158 (D.D.C. 2002), there was "substantial overlap in both the factual underpinning and the legal matters in dispute," *Autumn Journey*, 753 F. Supp. 2d at 140, or the court would "be required to make similar factual determinations" concerning defendants' conduct, *Singh*, 187 F. Supp. 3d at 156. Thus, "although differences may exist between" two cases, a related-case designation is nonetheless proper where "there are clearly issues of fact that are common to both." *Assiniboine*, 211 F. Supp. 2d at 160.

This standard is readily satisfied here for three reasons.

*First,* the cases involve numerous "common issues of fact." Local Civ. R. 40.5(a)(3)(ii). *In re Application* and *McGahn* arise out of the same Judiciary Committee investigation being conducted pursuant to the same legal authorities—and in each, the Committee seeks evidence to assess whether to recommend articles of impeachment based on the same underlying obstructive acts by President Trump. Committee Application at 1-2, 12-13, 22-23 (setting forth authorization for and purpose of impeachment investigation); *accord* Compl. ¶¶ 1, 4, 19, 61-62 (same). The "underlying facts" of the two cases are thus identical: Russia's interference in the 2016 election, welcomed by the Trump campaign, *see* Committee Application at 3-6, Compl. ¶¶ 26, 31; the Special Counsel's investigation of that interference, *see* Committee Application at 3-

8, Compl. ¶¶ 24-25; the President's multiple actions to undermine the Special Counsel's investigation, *see* Committee Application at 6-12, Compl. ¶¶ 32-51; and the Committee's commencement of an investigation into the President's conduct and months-long efforts to procure evidence for that investigation; *see* Committee Application at 13-25, Compl. ¶¶ 57-63, 69-86.[2]

This factual overlap extends to the *specific types* of evidence the Judiciary Committee is amassing, as well as findings the Court must make regarding the Committee's need for that evidence. Principally, the Committee is seeking evidence in both cases that would bear on whether President Trump acted with "corrupt intent" in the various episodes of potential obstruction of justice set forth in the Report. *See* Committee Application at 35-36 (grand jury materials would enable the Committee to assess "the President's knowledge and state of mind"); Compl. ¶ 66 (testimony from McGahn would be "of critical aid to the Judiciary Committee in assessing the President's intent"). Because of his senior roles on the campaign and in the White House, the witness best situated to shed light on the President's intent is McGahn. *See* Compl. ¶ 65 ("McGahn witnessed or participated in events relevant to nearly all of the most egregious episodes of possible Presidential obstruction[.]"); *id.* ¶ 5 ("McGahn is uniquely positioned to … provide evidence regarding the President's intent").

---

[2] Nothing in *Trump v. Comm. on Ways & Means, U.S. House of Representatives*, No. 1:19-cv-02173 (TNM), 2019 WL 3388537 (D.D.C. July 25, 2019), changes this relatedness analysis. In concluding that the related-case rule did not apply, the Court in *Ways & Means* stressed that the President's suit against the State of New York and the Ways and Means Committee to strike down a New York state tax law on First Amendment grounds had "nothing [to] do with" the Ways and Means Committee's earlier-filed case under a "*federal* statute that, the [Ways and Means] Committee argues, allows it to acquire the President's *federal* tax returns from a *federal* agency." 2019 WL 3388537, at *2 (emphasis in original). By contrast, both cases here arise out of the same Judiciary Committee investigation under the same constitutional authority of the same Presidential conduct.

In *In re Application*, the Committee thus is seeking grand jury materials "that describe actions taken by the central witness to the Committee's investigation, Don McGahn" or that could otherwise be used to question McGahn about the President's conduct. *See* Committee Application at 40; *see also id.* 41-42. For example, the Committee could use grand jury materials regarding former Trump Campaign Chairman Paul Manafort's dealings with President Trump during the campaign, *see* Committee Application at 21, 35-36, to question McGahn about his discussions with the President regarding the risks of Manafort's potential cooperation and the President's state of mind when he attempted to discourage Manafort from cooperating, *see* Compl. ¶ 50. Because the Court must find that the Committee has demonstrated a "particularized need," *In re Sealed Case*, 801 F.2d 1379, 1381 (D.C. Cir. 1986), for the materials it seeks in *In re Application*, it will thus need to evaluate any materials pertaining to McGahn for eventual use by the Committee when McGahn testifies. *See* Committee Application at 37-38 (discussing Judiciary Committee's "particularized need" for materials to "question McGahn about his precise understanding of all relevant facts at the time the President engaged in various attempts to undermine the Special Counsel's investigation, including when he ordered McGahn to fire Special Counsel Mueller"). McGahn is therefore a critical link connecting the two cases. His unique role as the most important witness to possible obstruction, and so his place in both the Committee Application and the Complaint, reinforces the relatedness of the two matters.

*Second*, and for similar reasons, both cases "grow out of the same event or transaction," Local Civ. R. 40.5(a)(3)(iii)—namely, the Judiciary Committee's impeachment investigation regarding the potentially obstructive conduct detailed in the Report. *See Autumn Journey*, 753 F. Supp. at 140 (cases concerning promulgation and application of regulation "arise out of" the same event or transaction). The Committee has explained in both cases that the authority for this

investigation, and the need for the requested materials and testimony, derive from, among other sources, the House's Article I impeachment powers and the Committee's role in determining the potential exercise of those powers. *See* Committee Application at 1-2, 12-13, 22-25; Compl. ¶¶ 11, 19, 57. Evaluating the claims in each case will thus require the Court's review of the constitutional basis for and the purpose behind the Judiciary Committee's impeachment investigation. *See* Committee Application at 27 (arguing impeachment investigation is preliminary to a "judicial proceeding" for purposes of Rule 6(e)(3)(E)); Compl. ¶¶ 61-62 (outlining various legislative, investigative, and oversight purposes of Judiciary Committee's investigation, including whether to recommend articles of impeachment); *see also Autumn Journey*, 753 F. Supp. 2d at 140 (finding relatedness, where there was "substantial overlap in both the factual underpinning and the legal matters in dispute"). The clear factual overlap concerning the Committee's legal authority to conduct its investigation further supports relatedness here.

*Third*, given the urgency of the Judiciary Committee's investigative task, judicial efficiency would be served by a finding of relatedness. *See Singh*, 187 F. Supp. 3d at 156-57. The Judiciary Committee and counsel for the Department of Justice have already agreed to a briefing schedule in *In re Application*, *see* Minute Order (July 31, 2019), and the Judiciary Committee has advised counsel in *McGahn* (McGahn is represented by the same Department of Justice attorneys who have appeared in *In re Application*) that the Committee will be pursuing expedited relief in *McGahn*. *See* Compl. ¶ 10 ("The delay caused by McGahn's refusal to testify thus severely impedes the Judiciary Committee's ability to do its time-sensitive work."). Given the anticipated expedition of both cases, considerations of judicial economy and efficiency

7

militate in favor of a single judge resolving the overlapping factual and legal questions presented in both cases.

## CONCLUSION

For the reasons set forth above, the Court should deem this case related to *In re Application* under Local Civ. Rule 40.5.

                      Respectfully submitted,

                      */s/ Douglas N. Letter*
                      Douglas N. Letter (D.C. Bar No. 253492),
                          *General Counsel*
                      Todd B. Tatelman (VA Bar No. 66008),
                          *Deputy General Counsel*
                      Megan Barbero (MA Bar No. 668854),
                          *Associate General Counsel*
                      Josephine Morse (D.C. Bar No. 1531317),
                          *Associate General Counsel*
                      Sarah E. Clouse (MA Bar No. 688187),
                          *Attorney*
                      OFFICE OF GENERAL COUNSEL
                      U.S. HOUSE OF REPRESENTATIVES
                      219 Cannon House Office Building
                      Washington, D.C. 20515
                      Telephone: (202) 225-9700
                      Douglas.Letter@mail.house.gov

                      Annie L. Owens (D.C. Bar No. 976604)
                      Joshua A. Geltzer (D.C. Bar No. 1018768)
                      INSTITUTE FOR CONSTITUTIONAL
                      ADVOCACY AND PROTECTION
                      Georgetown University Law Center
                      600 New Jersey Avenue NW
                      Washington, D.C. 20001
                      Telephone: (202) 662-9042
                      ao700@georgetown.edu

                      *Counsel for Plaintiff Committee on the Judiciary of the U.S. House of Representatives*

August 12, 2019

## CERTIFICATE OF SERVICE

    I hereby certify that on August 12, 2019, I caused the foregoing document to be filed via this Court's CM/ECF system, which I understand caused service on all registered parties.

                                              */s/ Douglas N. Letter*
                                              Douglas N. Letter