## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ———————————————————————— ) | |
| COMMITTEE ON THE JUDICIARY OF THE ) | |
| U.S. HOUSE OF REPRESENTATIVES, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 1:19-cv-2379-BAH |
| ) | |
| DONALD F. McGAHN II, ) | |
| ) | |
| Defendant. ) | |
| ———————————————————————— ) | |

## DEFENDANT'S OBJECTION TO PLAINTIFF'S NOTICE OF RELATED CASE

### INTRODUCTION

The random assignment of cases in the lower courts is a fundamental part of the judicial process. Among other purposes, that general rule guarantees fair and equal distribution of cases, avoids the appearance of favoritism in assignments, and reduces opportunities for both the appearance and the reality of parties attempting to game the system by shopping for a judge they perceive as more favorable to their cause. *See Tripp v. Executive Office of the President*, 196 F.R.D. 201, 202 (D.D.C. 2000). In an attempt to circumvent this process, the Committee on the Judiciary of the U.S. House of Representatives ("the Committee") seeks to designate this case as "related" to a Grand Jury application it recently filed with the Chief Judge, *Application of the Committee on the Judiciary, U.S. House of Representatives, for an Order Authorizing the Release of Certain Grand Jury Materials*, 1:19-gj-00048-BAH ("*In re Application*"). *See* Notice of Designation of Related Civil Cases, ECF No. 2.

But the two cases could not be more different. *In re Application* petitions this Court to unseal Grand Jury information pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(i), through an application of the law governing such petitions under the Criminal Rules. This matter,

by contrast, is a civil action to enforce a subpoena in the face of the government's assertion of testimonial immunity. This later-filed, subpoena-enforcement suit involves no issues of fact or law common to the earlier Grand Jury application, nor does it focus on a common event or transaction such that the matters would be "related" within the meaning of LCvR 40.5(a)(3). This case should thus be transferred to the Calendar and Case Management Committee for random reassignment in the ordinary fashion.

## LEGAL STANDARD

The default rule in this district is that civil cases "shall be assigned to judges of this Court selected at random" in the manner specified in the Local Rules. LCvR 40.3(a). The so-called "related-case rule" set forth in LCvR 40.5 creates a narrow exception that allows cases to be assigned to the same judge where "the interests of judicial economy . . . outweigh the fundamental interests served by the random assignment rule." *See Lucas v. Barreto*, No. 04-1262, 2005 WL 607923, at *3 (D.D.C. Mar. 16, 2005). Under the related-case rule, new civil cases are assigned to the judge already handling a pending case where, among other circumstances not relevant here, both cases "involve common issues of fact" or "grow out of the same event or transaction[.]" LCvR 40.5(a)(3)(ii), (iii). The burden of demonstrating relatedness lies with the party seeking to avoid random assignment—here, the Committee. *See Autumn Journey Hospice, Inc. v. Sebelius*, 753 F. Supp. 2d 135, 140 (D.D.C. 2010). "The burden on the party claiming relation is heavy as random assignment of cases is essential to the public's confidence in an impartial judiciary." *Dakota Rural Action v. U.S. Dep't of Agric.*, 2019 WL 1440134, at *1 (D.D.C. Apr. 1, 2019). "Deviating from that foundational principle is appropriate only if the relationship between the two cases is certain." *Id.*

2

**ARGUMENT**

The Committee's arguments in response to the Court's show cause order fail for at least three key reasons.

*First*, this case does not share common issues of fact with the Committee's application for the disclosure of Grand Jury information.  LCvR 40.5(a)(3)(ii).  The Committee claims that a sufficient factual nexus exists because, in both cases, the Committee purportedly seeks evidence to aid what it describes as its "impeachment investigation."  *See* Response to Order to Show Cause Regarding Related Case Designation, ECF No. 13 at 4 ("Response").  Yet the Committee offers no reasoning or authority supporting the notion that any suit of any nature seeking information for the purpose of advancing a broad "investigation" constitutes a related case within the meaning of LCvR 40.5(a)(3)(ii).  To the contrary, that Rule requires "common *issues* of fact," (emphasis added)—that is, questions of fact that the Court will necessarily have to resolve in order to adjudicate the legal claims presented in each case.  *See, e.g.*, *Singh v. McConville*, 187 F. Supp. 3d 152, 156 (D.D.C. 2016) (designating cases challenging the same government regulations as related partly because "the Court *will be required to make similar factual determinations* in both cases") (emphasis added); *Dakota Rural Action*, 2019 WL 1440134, at *2 ("At bottom, the plaintiffs may have shown that the two cases will pose similar questions dependent on a similar class of facts, but have failed to establish that *the facts dictating the answers to those questions* are common.") (emphasis added); *Assiniboine & Sioux Tribe of Fort Peck Indian Reservation v. Norton*, 211 F. Supp. 2d 157, 159 (D.D.C. 2002) (designating cases as related partly because "[t]here are many factual issues *that this Court must resolve*" in each case) (emphasis added).  *Cf. Dale v. Executive Office of the President*, 121 F. Supp. 2d 35, 37 (D.D.C. 2000) ("Any common issues of fact are

3

minimal and completely insufficient to meet plaintiff's burden of demonstrating that these two cases are related.").

There is nothing approaching that level of common issues of fact here, as the two matters do not require *any* common "factual determinations," much less any important or essential ones. *See Singh*, 187 F. Supp. 3d at 156; *Assiniboine & Sioux Tribe*, 211 F. Supp. 2d at 158.  To the contrary, *In re Application* will require this Court to resolve questions concerning the exceptions to Grand Jury confidentiality under Criminal Rule 6(e), notably whether the Committee's request is "preliminarily to or in connection with a judicial proceeding" and whether the Committee has demonstrated a "particularized need" for the Grand Jury information at issue.  Neither of those inquiries has anything to do with this suit seeking to compel the former Counsel to testify—an action that raises complex legal issues concerning justiciability and testimonial immunity that are entirely unrelated to the Committee's Grand Jury application.

Nor is the Committee's asserted desire to use Grand Jury material "to question McGahn about the President's conduct," Response at 6, sufficient to relate the cases, as that goes solely to what the Committee hopes to gain from initiating both matters.  It says nothing about whether the cases are related from the perspective of the adjudicative process, which asks whether the two cases require resolution of sufficiently common issues such that efficiency would favor adjudication by a single judge—not whether a litigant's disparate lawsuits might be connected by some common goal.  Nor is this explanation for relatedness plausible in any event, given that there are no redactions for Grand Jury material in the passages of the Report that involve former Counsel McGahn.

*Second*, the Committee's suit against former Counsel McGahn does not grow out of the same event or transaction as its Grand Jury application. LCvR 40.5(a)(3)(iii). The Committee contends that this case and *In re Application* both arise from its "impeachment investigation" and thus "grow out of the same event or transaction" within the meaning of the related-case rule. Response at 6-7. That is not what the Rule means. What the Rule is describing is a common event or transaction that underpins multiple actions, the judicial treatment of which will affect the outcome in all of the actions, such as multiple suits arising from a single industrial accident or multiple suits challenging the legality of a newly issued regulation. The Committee's attempt to use the investigation as the common thread gets it backwards—rather than relating cases based on some shared underlying transaction that will be central to the adjudication of those suits, the Committee is trying to relate completely unrelated cases simply because it filed them in service of its overarching desire to bring various matters together in its investigation of the President. But that makes these separate matters no more related than every case a litigant files in service of some broader goal, such as a trade association that challenges several regulatory initiatives in service of one broad deregulatory agenda. By flipping the relatedness rule to turn on what a litigant claims as its purpose behind multiple actions, the Committee's proposal would enable parties to manipulate that Rule simply through how they characterize their separate actions.

That potential for manipulation is particularly problematic where, as here, the first-filed case the Committee is invoking is not even a traditional "civil case" that was itself subject to random assignment. The Committee's first-filed action is, rather, an application under LCrR 57.6—titled "Applications for Relief in a Criminal Case by Persons Not Parties"—"that pertains to a criminal investigative or grand jury matter to which no judge has been assigned" and that was

therefore automatically "referred by the Clerk to the Chief Judge for determination."  LCrR 57.6.

Allowing plaintiffs to relate subsequent cases to a matter that is itself not randomly assigned would

further exacerbate the potential for mischief in the Committee's inversion of the test for

relatedness.   And that potential will be especially glaring here, where the Committee will

apparently take the position that all of the many suits it might attempt to file as part of its so-called

"impeachment investigation" are related to its original application for Grand Jury material under

LCrR 57.6.  "[T]o permit such an interpretation of the related case rule would undermine the

important goals of LCvR 40.3, namely to avoid any appearance of judge-shopping or favoritism

in assignments and to assure the public that cases were assigned on an impartial and neutral basis."

*Tripp*, 196 F.R.D. at 202.

Under the relatedness rule conceived correctly, it is clear that there is no common

transaction here.  The Committee filed this suit to enforce a subpoena purporting to compel the

former Counsel to appear and testify before the Committee, which he declined to do in light of the

President's invocation of the former Counsel's absolute immunity from compelled congressional

testimony.  That subpoena and former Counsel McGahn's failure to comply—not the Committee's

asserted "impeachment investigation"—is the event or transaction that precipitated this action.  By

contrast, *In re Application* arises from the Committee's separate efforts to acquire a variety of

Grand Jury materials referenced in the Report, including redacted portions of the Report and

underlying transcripts and exhibits of Grand Jury testimony.  *See* Application, No. 1:19-gj-00048-

BAH, ECF No. 1 at 1-2.  It is solely the Committee's effort to obtain these materials that gave rise

to *In re Application*.  The two matters arose from different events and have divergent origins.  They

thus did not grow out of the same event or transaction under LCvR 40.5(a)(3)(iii).

6

*Finally*, it would not promote judicial efficiency to indulge the Committee's asserted desire for expedient resolution of its separate cases by allowing the Committee to manipulate the rules on relatedness. *See* Response at 7. For one thing, the Committee's desire for rapid adjudication rings hollow given that the Committee waited until August to file suit over former Counsel McGahn's testimony despite being formally advised of the former Counsel's absolute immunity from compelled congressional testimony on May 20, 2019. *See* Complaint ¶ 75, ECF No. 1. Nor has the Committee explained how relating these cases would actually expedite resolution, given that they involve completely different factual and legal issues. Thus, any delay is the Committee's doing at this point. In any event, it is also not evident how the Committee's current attempt to evade random assignment would speed things up or conserve judicial resources.

## CONCLUSION

The Government has no objection to proceeding in this matter (or any matter) before any Judge of this Court. But the Committee's Notice of Related Case was improper and should be rejected on that basis. This case, like most cases, should be assigned randomly by the Calendar and Case Management Committee.

Dated: August 13, 2019                     Respectfully submitted,

                                           JOSEPH H. HUNT
                                           Assistant Attorney General

                                           JAMES M. BURNHAM
                                           Deputy Assistant Attorney General

                                           ELIZABETH J. SHAPIRO
                                           Deputy Branch Director

/s/ *Cristen C. Handley*
CRISTEN C. HANDLEY
(MO Bar No. 69114)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
(202) 305-2677
cristen.handley@usdoj.gov

*Counsel for Defendant*