UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES, <br><br> Plaintiff, <br><br> v. <br><br> DONALD F. MCGAHN II, <br><br> Defendant. | Civil Action No. 19-2379 (BAH) <br><br> Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Committee on the Judiciary of the United States House of Representatives ("House Judiciary Committee"), has filed the instant Complaint for Declaratory and Injunctive Relief ("McGahn Subpoena Case") to enforce a congressional subpoena, issued on April 22, 2019, seeking testimony from the defendant, Donald F. McGahn II, former White House Counsel. Compl. for Decl. & Inj. Relief ("Compl.") at 1, ¶¶ 1, 72, ECF No. 1.[1] The House Judiciary Committee's lawsuit asserts that the Committee "is now determining whether to recommend articles of impeachment against" President Donald J. Trump, "based on the obstructive conduct described by" Special Counsel Robert S. Mueller III in the Special Counsel's "*Report On The Investigation Into Russian Interference In The 2016 Presidential Election*," in "his public statement of May 29, 2019, related to the Report, and in testimony before the Judiciary Committee and House Permanent Select Committee on Intelligence." *Id.* ¶ 1. To that

---

[1] This subpoena also sought documents in McGahn's possession, but an accommodation has been reached with the White House for rolling production of the documents and thus the pending Complaint "addresses and seeks enforcement of the McGahn Subpoena only as it relates to McGahn's testimony." Compl. ¶ 72 n.155.

1

end, and to further the House Judiciary Committee's "other constitutionally authorized legislative and oversight duties," *id.* ¶ 6, the House Judiciary Committee seeks testimony from McGahn, "a crucial witness," who has refused to appear "at the direction of President Trump, who claims McGahn is 'absolutely immune' from testifying," *id.* ¶ 1.

With the Complaint, the House Judiciary Committee filed a Notice of Related Case, ECF No. 2, representing that the instant McGahn Subpoena Case "involves common issues of fact" with, and "grows out of the same event or transaction" as an earlier-filed case, *In re Application of the Committee on the Judiciary, U.S. House of Representatives, for an Order Authorizing the Release of Certain Grand Jury Materials* ("*HJC's GJ Materials Application*"), No. 19-gj-48 (BAH), for which the House Judiciary Committee also filed a Notice of Relation to an even earlier-filed case, *In re Application of the Reporters Committee for Freedom of the Press for an Order Authorizing the Release of Grand Jury Material Cited, Quoted, or Referenced in the Report of Special Counsel Robert S. Mueller III*, No. 19-mc-45 (BAH). Both earlier-filed cases were directly assigned to the Chief Judge, not because they were related to one another, but because both seek the release of grand jury materials. *See* LCrR 6.1 (providing that a "motion or application filed in connection with a grand jury subpoena or other matter occurring before a grand jury . . . shall . . . be assigned to the Chief Judge").

Due to the House Judiciary Committee's Notice of Related Case to *HJC's GJ Materials Application*, the instant case was also assigned to the undersigned Chief Judge. *See* LCvR 40.5(c)(1) ("Where the existence of a related case in this Court is noted at the time . . . the complaint is filed, the Clerk shall assign the new case to the judge to whom the oldest related case is assigned."). The same day as the assignment, the Court *sua sponte* ordered the House Judiciary Committee to show cause, on an expedited basis, "why this matter should be

designated as related, pursuant to D.D.C. Local Civil Rule 40.5(a)(3)." Min. Order (Aug. 7, 2019). Having received the House Judiciary Committee's submission and McGahn's objection to the Notice of Related Case, the question of relation is now ripe for resolution. *See* House Judiciary Committee's Resp. to Order to Show Cause Regarding Related Case Designation ("HJC's OSC Resp."), ECF No. 13; McGahn's Obj. to HJC's Notice of Related Case ("McGahn's Obj."), ECF No. 14.

## I. LEGAL STANDARD

"The general rule is that all new cases filed in this courthouse are randomly assigned in order to ensure greater public confidence in the integrity of the judicial process, guarantee fair and equal distribution of cases to all judges, avoid public perception or appearance of favoritism in assignments, and reduce opportunities for judge-shopping." *Dakota Rural Action v. U.S. Dep't of Agric.*, No. CV 18-2852 (BAH), 2019 WL 1440134, at *1 (D.D.C. Apr. 1, 2019) (internal quotation marks and alterations omitted) (quoting *Singh v. McConville*, 187 F. Supp. 3d 152, 154–55 (D.D.C. 2016), and *Tripp v. Exec. Office of the President*, 196 F.R.D. 201, 202 (D.D.C. 2000)); *see also Trump v. Comm. on Ways & Means, U.S. House of Representatives*, No. 19-CV-2173 (TNM), 2019 WL 3388537, at *3 (D.D.C. July 25, 2019) ("Scrupulous adherence to Local Rule 40.5 is important 'to avoid any appearance of judge-shopping or favoritism in assignments and to assure the public that cases were assigned on an impartial and neutral basis.'" (quoting *Tripp*, 196 F.R.D. at 202)). In the "interest of judicial economy," however, "Local Civil Rule 40.5 creates an exception for 'related cases.'" *Dakota Rural Action*, 2019 WL 1440134, at *1 (quoting *Singh*, 187 F. Supp. 3d at 155). Under that rule, the plaintiff may complete a form, to be provided to the Clerk of the Court and served on the defendant with

the complaint, designating the action as related to an earlier-filed and still pending action. LCvR 40.5(b)(2).

Civil cases are "related when the earliest is still pending on the merits in the District Court and they (i) relate to common property, or (ii) involve common issues of fact, or (iii) grow out of the same event or transaction, or (iv) involve the validity or infringement of the same patent." LCvR 40.5(a)(3). "The party requesting the related-case designation bears the burden of showing that the cases are related under Local Civil Rule 40.5." *Singh*, 187 F. Supp. 3d at 155. "The burden on the party claiming relation is heavy as random assignment of cases is essential to the public's confidence in an impartial judiciary." *Dakota Rural Action*, 2019 WL 1440134, at *1; *accord Comm. on Ways & Means*, 2019 WL 3388537, at *1 (same). "Deviating from that foundational principle is appropriate only if the relationship between the two cases is certain." *Dakota Rural Action*, 2019 WL 1440134, at *1.

"The judge to whom a case is assigned resolves any objection to a related-case designation." *Id.* (citing *Singh*, 187 F. Supp. 3d at 155, and LCvR 40.5(c)(1)). "If the objection is sustained, the judge may transfer the later-filed case to the Calendar and Case Management Committee, which then decides if good causes exists for the transfer and thus random reassignment of the case." *Id.* (citing LCvR 40.5(c)(1)).

## II. DISCUSSION

The House Judiciary Committee contends that the instant McGahn Subpoena Case is related to *HJC's GJ Materials Application* because the two cases "involve common issues of fact" and "grow out of the same event or transaction," HJC's OSC Resp. at 3, as provided in Local Civil Rule 40.5(a)(3)(ii) and (iii). The rule offers little guidance on the degree of relatedness required to circumvent the normal random assignment system to make a direct

assignment to a particular judge, including how much factual overlap is needed, how similar the underlying facts must be, or how to define the relevant event or transaction. *See Dakota Rural Action*, 2019 WL 1440134, at *2; *Comm. on Ways & Means*, 2019 WL 3388537, at *2.

As support for its Notice of Related Case, the House Judiciary Committee points out that the instant McGahn Subpoena Case and *HJC's GJ Materials Application* concern "the same Judiciary Committee investigation being conducted pursuant to the same legal authorities," and for the same purpose of obtaining evidence "to assess whether to recommend articles of impeachment based on the same underlying obstructive acts by President Trump," including evidence concerning "actions taken by" McGahn. HJC's OSC Resp. at 3, 4. Thus, at first blush, the House Judiciary Committee's view that the related case rule applies is understandable due to these factual connections between the two cases.

Nonetheless, closer examination demonstrates that these connections between the two cases are too superficial and attenuated for the instant McGahn Subpoena Case to qualify, under Local Civil Rule 40.5(a)(3), as related to *HJC's GJ Materials Application*. Accordingly, for several reasons explained below, the McGahn Subpoena Case will be transferred to the Calendar and Case Management Committee for random reassignment. LCvR 40.5(c)(1).

First, the instant case does not "involve common issues of fact" with *HJC's GJ Materials Application*. LCvR 40.5(a)(3)(ii). Most obviously, "these cases involve different claims." *Comm. on Ways & Means*, 2019 WL 3388537, at *2. This McGahn Subpoena Case is a congressional subpoena enforcement action, based on Congress's powers under Article I of the Constitution. Compl. at 52 (Specific Claim for Relief). According to the House Judiciary Committee, "McGahn's testimony is necessary for the Judiciary Committee to fulfill its constitutional functions," *id.* ¶ II.B (capitalization omitted), to "address[] presidential

5

misconduct," *id*. ¶ 3, conduct "oversight and hearings," as well as contemplated "remedial legislation and amendments to existing laws," *id.* ¶ 57.  The Complaint fronts some of the legal issues involving immunity, various privileges and waiver, *id*. ¶¶ 1, 8, 87–95, 112, that likely will arise in this case due to McGahn's unique position as White House counsel, which, according the House Judiciary Committee, gave him a "central role" and provided him with the opportunity to "witness[] multiple serious acts of potential obstruction of justice by the President," *id*. ¶ 5.  Resolution of those legal issues will turn on the particularized facts pertinent only to McGahn.

In contrast, *HJC's GJ Materials Application* is an ancillary grand jury action requesting the release of grand jury material protected by Federal Rule of Criminal Procedure 6(e).  *See* House Judiciary Committee's Appl. for Release of Grand Jury Materials ("HJC's GJ Appl.") at 1, ECF No. 1 (No. 19-gj-48).  Specifically, in *HJC's GJ Materials Application*, the House Judiciary Committee seeks "an order pursuant to Federal Rule of Criminal Procedure 6(e) authorizing the release to the Committee" of redacted grand jury material in the Special Counsel's Report, and "access to all underlying grand jury materials that bear directly on President Trump's knowledge of any potential misconduct during the 2016 election campaign and afterward," since the "Committee seeks to use them" for its "investigation to determine whether to recommend articles of impeachment." *Id.* at 1, 2, 3.  *HJC's GJ Materials Application* principally concerns the scope of Federal Rule of Criminal Procedure Rule 6(e)(3)(E)(i), and whether the House Judiciary Committee's investigation to determine whether to recommend articles of impeachment is "preliminarily to or in connection with a judicial proceeding." *Id.* at 3.  As such, the relief sought in *HJC's GJ Materials Application* likely turns on the proper interpretation and reach of a federal procedural rule.  Those legal issues are entirely absent from

the instant McGahn Subpoena case, which, in turn, raises legal issues that turn on particularized facts different from any that will be at issue in *HJC's GJ Materials Application*.

Consequently, these distinct claims present discrete "issues of fact" to be resolved making a related case designation wholly inappropriate. *Cf. Singh*, 187 F. Supp. 3d at 156 (concluding two cases were related, in part because "the Court will be required to make similar factual determinations in both cases"); *Assiniboine & Sioux Tribe of Fort Peck Indian Reservation v. Norton*, 211 F. Supp. 2d 157, 159 (D.D.C. 2002) (finding relation appropriate where there were "many" overlapping "factual issues that this Court must resolve" in both cases).

Second, the two actions place different sets and types of evidence at issue. The House Judiciary Committee here alleges that McGahn should be compelled to comply with its subpoena for public testimony. Compl. ¶ 9. In contrast, *HJC's GJ Materials Application* does not request McGahn's public testimony, but rather secret "grand jury materials" that are "referenced," "included in," or "underly[]" the Special Counsel's Report. HJC's GJ Appl. at 13. Indeed, due to the secrecy accorded to the grand jury materials sought in *HJC's GJ Materials Application*, the House Judiciary Committee has outlined "Grand Jury Handling Procedures," which have been adopted to protect any such materials released to the Committee, that require "any grand jury materials obtained by the Committee to be stored in a secure area with access limited to Members of the Committee, certain designated staff, and Members of [the House Permanent and Select Committee on Intelligence] and their designated staff." *Id.* These special handling procedures being proffered for the grand jury materials sought in *HJC's GJ Materials Application,* compared to the demand for compelled public testimony by McGahn in the instant case, only highlight the divergent sets and types of evidence sought that set the two cases apart.

7

In short, rather than "involve common issues of fact," the different claims in each case present distinct "issues of fact" to be resolved. This conclusion comports with prior decisions on the related case rule, which have also looked to the claims alleged to assess the similarity of the "issues of fact" involved in each case. *See, e.g.*, *Boyd v. Farrin*, No. CIV.A. 12-1893 PLF, 2012 WL 6106415, at *2 (D.D.C. Dec. 10, 2012) (concluding two cases did not "involve common issues of fact" because one involved a "cause of action rooted in the Equal Credit Opportunity Act," while another was "a common law diversity action" for "breach of contract and fiduciary duty," and thus raised different issues of fact); *cf. Singh*, 187 F. Supp. 3d at 156 (concluding relation of two cases was proper because "the plaintiffs in both cases at issue . . . challenge[d] the same Department of Defense and Army regulations governing requests for religious accommodations on the same grounds"); *Autumn Journey Hospice, Inc. v. Sebelius*, 753 F. Supp. 2d 135, 140 (D.D.C. 2010) ("[T]here is substantial overlap in both the factual underpinning and the legal matters in dispute in each of these hospice cap cases.").

The House Judiciary Committee posits that this case and *HJC's GJ Materials Application* involve "common issues of fact" because in both, the Committee has the same objective: to "seek[] evidence to assess whether to recommend articles of impeachment based on the same underlying obstructive acts by President Trump." HJC's OSC Resp. at 4. The purpose behind the House Judiciary Committee filing both actions, however, is insufficient to support a claim of relation because a litigant's reason for filing two cases begs the crucial question whether the two cases involve "common issues of fact." The principle behind the related case rule is that in certain instances, the strong presumption of random case assignment is outweighed by the interests of judicial efficiency in narrow circumstances, such as when virtually identical and highly overlapping issues of fact are likely to be resolved in two cases. In such a truly related

8

case, resolution of the cases by the same judge would promote just and efficient resolution of legal claims.  As McGahn points out, a litigant's purpose "says nothing about whether the cases are related from the perspective of the adjudicative process, which asks whether the two cases require resolution of sufficiently common issues such that efficiency would favor adjudication by a single judge."  McGahn's Obj. at 4.   Relation based on a litigant's purpose simply sweeps too broadly.  For example, if a common purpose behind two actions were sufficient for relation, any person seeking records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, from a targeted agency with the same goal as another requester making requests of the same agency could relate her case, despite seeking different sets of documents, solely because both FOIA requests were made with the same goal in mind.  A "litigant's purpose" test stretches the related case rule too far.

Finally, the instant McGahn Subpoena Case and *HJC's GJ Materials Application* do not "grow out of the same event or transaction."  LCvR 40.5(a)(3)(iii).  Even though the House Judiciary Committee filed this case and *HJC's GJ Materials Application* to seek evidence for its ongoing investigation, this congressional subpoena enforcement action "arises out of the Judiciary Committee's efforts to enforce a duly authorized, issued, and served Congressional subpoena to McGahn."  Compl. at 1.  The issuance of the McGahn Subpoena, and McGahn's refusal to comply, is the event or transaction that uniquely precipitated this action.  *HJC's GJ Materials Application*, in contrast, grows out of the House Judiciary Committee's other efforts to obtain grand jury materials in and underlying the Special Counsel's Report.  These cases, as a result, do not grow out of the same event or transaction.  *See Lucas v. Barreto*, No. CIV.A. 04-1262 (EGS), 2005 WL 607923, at *3 (D.D.C. Mar. 16, 2005) (concluding that two cases did not

"on the whole, 'grow out of the same event or transaction,'" even though an agency's "Performance Review Process" served as a "hook" between them).

\* \* \*

The potential for manipulation of the ordinary rule of random assignment would be particularly acute if the House Judiciary Committee could relate any matter arising from its ongoing investigation to a single judge on this Court, irrespective of the particularities of each case. "[T]o permit such an interpretation of the related case rule would undermine the important goals of" Local Civil Rule 40.5, "namely to avoid any appearance of judge-shopping or favoritism in assignments and to assure the public that cases were assigned on an impartial and neutral basis." *Tripp*, 196 F.R.D. at 202.

Although the House Judiciary Committee claims "judicial efficiency would be served by a finding of relatedness" since it seeks expedition in this case and in *HJC's GJ Materials Application,* HJC's OSC Resp. at 7, judicial efficiency is not served where two cases present such different factual and legal issues, as is the circumstance here. While cases need not present entirely identical factual issues and legal claims to be sufficiently related under Local Civil Rule 40.5(a)(3), *HJC's GJ Materials Application* and the instant McGahn Subpoena Case are so far apart on the core issues for decision that judicial efficiency is not a reason for relation. At bottom, the House Judiciary Committee has failed to meet its burden that departure from the practice of random case assignment is warranted.

## III. ORDER

For the reasons set forth above, consistent with Local Civil Rule 40.5(c)(1), this case shall be transferred to the Calendar and Case Management Committee for random reassignment.

**SO ORDERED**.

Date: August 14, 2019

_____
BERYL A. HOWELL
Chief Judge