**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES, <br><br> *Plaintiff,* <br><br> v. <br><br> DONALD F. MCGAHN II, <br><br> *Defendant.* | No. 19-cv-2379 (KBJ) |

**<u>DECLARATION OF DAVID F. LASSETER</u>**

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1.     I serve as Deputy Assistant Attorney General within the Office of Legislative Affairs of the Department of Justice (Department).  I have served in this capacity since May 27, 2017.  My responsibilities include, among other things, supervising the Department's responses to congressional oversight requests seeking information that implicates the equities of the Department and the Federal Bureau of Investigation (FBI).  The statements made herein are based on my personal knowledge or on information made available to me in the course of performing my responsibilities.

2.     Since March 2019 I have been involved in congressional oversight matters pertaining to efforts by various congressional committees, including the Committee on the Judiciary of the House of Representatives (the House Committee on the Judiciary or Committee), to obtain information from the Department of Justice and the FBI pertaining to the *Report on the Investigation Into Russian Interference in the 2016 Presidential Election* issued by Special Counsel Robert Mueller II (the "Special Counsel's Report" or "Report").

3.      In negotiations arising from those efforts, the Department has agreed to provide the Committee with access to certain FBI reports of interviews (known as FBI FD-302 forms) underlying the Special Counsel's Report on certain terms and subject to appropriate redactions for privilege.  The Department is reviewing and making these FD-302s available on a rolling basis.

4.      Attached as Exhibit A is a true and correct copy of a letter to the Hon. Lindsey Graham, Chairman, Senate Committee on the Judiciary (Chairman Graham), Hon. Dianne Feinstein, Ranking Member, Senate Committee on the Judiciary (Ranking Member Feinstein), Hon. Jerrold Nadler, Chairman, House Committee on the Judiciary (Chairman Nadler), and Hon. Doug Collins, Ranking Member, House Committee on the Judiciary (Ranking Member Collins) from Attorney General William P. Barr (Attorney General Barr), dated March 22, 2019.

5.      Attached as Exhibit B is a true and correct copy of a letter to Chairman Graham, Ranking Member Feinstein, Chairman Nadler, and Ranking Member Collins from Attorney General Barr, dated March 24, 2019.

6.      Attached as Exhibit C is a true and correct copy of a letter to Attorney General Barr from the Hon. Elijah Cummings, Chairman, House Committee on Oversight and Reform (Chairman Cummings), Hon. Maxine Waters, Chairwoman, House Committee on Financial Services (Chairwoman Waters), Hon. Eliot L. Engel, Chairman, House Committee on Foreign Affairs (Chairman Engel), Hon. Richard Neal, Chairman, House Committee on Ways and Means (Chairman Neal), Hon. Adam Schiff, Chairman, House Permanent Select Committee on Intelligence (Chairman Schiff), and Chairman Nadler, dated March 25, 2019.

7.      Attached as Exhibit D is a true and correct copy of a letter to Chairman Graham and Chairman Nadler from Attorney General Barr, dated March 29, 2019.

8.      Attached as Exhibit E is a true and correct copy of a letter to Attorney General Barr from Chairman Cummings, Chairwoman Waters, Chairman Engel, Chairman Neal, Chairman Schiff, and Chairman Nadler, dated April 1, 2019.

9.      Attached as Exhibit F is a true and correct copy of a letter to Chairman Graham, Ranking Member Feinstein, Chairman Nadler, and Ranking Member Collins from Attorney General Barr, dated April 18, 2019.

10.     Attached as Exhibit G is a true and correct copy of a letter to Chairman Graham and Chairman Nadler from Assistant Attorney General Stephen E. Boyd (Assistant Attorney General Boyd), dated April 18, 2019.

11.     Attached as Exhibit H is a true and correct copy of a subpoena issued by Chairman Nadler and the House Committee on the Judiciary to Attorney General Barr, dated April 18, 2019.

12.     Attached as Exhibit I is a true and correct copy of a letter to Chairman Nadler from Assistant Attorney General Boyd, dated May 1, 2019.

13.     Attached as Exhibit J is a true and correct copy of a letter to Attorney General Barr from Chairman Nadler, dated May 3, 2019.

14.     Attached as Exhibit K is a true and correct copy of a letter to Chairman Nadler from Assistant Attorney General Boyd, dated May 6, 2019.

15.     Attached as Exhibit L is a true and correct copy of a letter to Attorney General Barr and the Hon. Pat Cipollone, Counsel to the President, from Chairman Nadler, dated May 24, 2019.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October **1**, 2019.

DAVID LASSETER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES, <br><br>                          *Plaintiff,* <br><br> v. <br><br> DONALD F. MCGAHN II, <br><br>                          *Defendant.* | No. 19-cv-2379 (KBJ) |

### INDEX OF EXHIBITS TO DECLARATION OF DAVID F. LASSETER

| Exhibit | Document |
|---|---|
| A. | Letter to Chairman Graham, Ranking Member Feinstein, Chairman Nadler, and Ranking Member Collins from Attorney General Barr, dated March 22, 2019. |
| B. | Letter to Chairman Graham, Ranking Member Feinstein, Chairman Nadler, and Ranking Member Collins from Attorney General Barr, dated March 24, 2019. |
| C. | Letter to Attorney General Barr from Chairman Cummings, Chairwoman Waters, Chairman Engel, Chairman Neal, Chairman Schiff, and Chairman Nadler, dated March 25, 2019. |
| D. | Letter to Chairman Graham and Chairman Nadler from Attorney General Barr, dated March 29, 2019. |
| E. | Letter to Attorney General Barr from Chairman Cummings, Chairwoman Waters, Chairman Engel, Chairman Neal, Chairman Schiff, and Chairman Nadler, dated April 1, 2019. |
| F. | Letter to Chairman Graham, Ranking Member Feinstein, Chairman Nadler, and Ranking Member Collins from Attorney General Barr, dated April 18, 2019. |
| G. | Letter to Chairman Graham and Chairman Nadler from Assistant Attorney General Boyd, dated April 18, 2019. |
| H. | Subpoena issued by Chairman Nadler and the House Committee on the Judiciary to Attorney General Barr, dated April 18, 2019. |

| I. | Letter to Chairman Nadler from Assistant Attorney General Boyd, dated May 1, 2019. |
|---|---|
| J. | Letter to Attorney General Barr from Chairman Nadler, dated May 3, 2019. |
| K. | Letter to Chairman Nadler from Assistant Attorney General Boyd, dated May 6, 2019. |
| L. | Letter to Attorney General Barr and Pat Cipollone, Counsel to the President, from Chairman Nadler, dated May 24, 2019. |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

COMMITTEE ON THE JUDICIARY,
UNITED STATES HOUSE OF
REPRESENTATIVES,

                    *Plaintiff,*

    v.

DONALD F. MCGAHN II,

                    *Defendant.*

---

No. 19-cv-2379 (KBJ)

# EXHIBIT A



# The Attorney General
## Washington, D.C.

March 22, 2019

The Honorable Lindsey Graham
Chairman, Committee on the Judiciary
United States Senate
290 Russell Senate Office Building
Washington, D.C. 20510

The Honorable Jerrold Nadler
Chairman, Committee on the Judiciary
United States House of Representatives
2132 Rayburn House Office Building
Washington, D.C. 20515

The Honorable Dianne Feinstein
Ranking Member, Committee on the Judiciary
United States Senate
331 Hart Senate Office Building
Washington, D.C. 20510

The Honorable Doug Collins
Ranking Member, Committee on the Judiciary
United States House of Representatives
1504 Longworth House Office Building
Washington, D.C. 20515

Dear Chairman Graham, Chairman Nadler, Ranking Member Feinstein, and Ranking Member Collins:

I write to notify you pursuant to 28 C.F.R. § 600.9(a)(3) that Special Counsel Robert S. Mueller III has concluded his investigation of Russian interference in the 2016 election and related matters. In addition to this notification, the Special Counsel regulations require that I provide you with "a description and explanation of instances (if any) in which the Attorney General" or acting Attorney General "concluded that a proposed action by a Special Counsel was so inappropriate or unwarranted under established Departmental practices that it should not be pursued." 28 C.F.R. § 600.9(a)(3). There were no such instances during the Special Counsel's investigation.

The Special Counsel has submitted to me today a "confidential report explaining the prosecution or declination decisions" he has reached, as required by 28 C.F.R. § 600.8(c). I am reviewing the report and anticipate that I may be in a position to advise you of the Special Counsel's principal conclusions as soon as this weekend.

Separately, I intend to consult with Deputy Attorney General Rosenstein and Special Counsel Mueller to determine what other information from the report can be released to Congress and the public consistent with the law, including the Special Counsel regulations, and the Department's long-standing practices and policies. I remain committed to as much transparency as possible, and I will keep you informed as to the status of my review.

Finally, the Special Counsel regulations provide that "the Attorney General may determine that public release of" this notification "would be in the public interest." 28 C.F.R. § 600.9(c). I have so determined, and I will disclose this letter to the public after delivering it to you.

Sincerely,

William P. Barr
Attorney General

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

COMMITTEE ON THE JUDICIARY,
UNITED STATES HOUSE OF
REPRESENTATIVES,

                     *Plaintiff,*

      v.

DONALD F. MCGAHN II,

                    *Defendant.*

No. 19-cv-2379 (KBJ)

# EXHIBIT B



# The Attorney General
## Washington, D.C.

March 24, 2019

The Honorable Lindsey Graham
Chairman, Committee on the Judiciary
United States Senate
290 Russell Senate Office Building
Washington, D.C. 20510

The Honorable Jerrold Nadler
Chairman, Committee on the Judiciary
United States House of Representatives
2132 Rayburn House Office Building
Washington, D.C. 20515

The Honorable Dianne Feinstein
Ranking Member, Committee on the Judiciary
United States Senate
331 Hart Senate Office Building
Washington, D.C. 20510

The Honorable Doug Collins
Ranking Member, Committee on the Judiciary
United States House of Representatives
1504 Longworth House Office Building
Washington, D.C. 20515

Dear Chairman Graham, Chairman Nadler, Ranking Member Feinstein, and Ranking Member Collins:

As a supplement to the notification provided on Friday, March 22, 2019, I am writing today to advise you of the principal conclusions reached by Special Counsel Robert S. Mueller III and to inform you about the status of my initial review of the report he has prepared.

### *The Special Counsel's Report*

On Friday, the Special Counsel submitted to me a "confidential report explaining the prosecution or declination decisions" he has reached, as required by 28 C.F.R. § 600.8(c). This report is entitled "Report on the Investigation into Russian Interference in the 2016 Presidential Election." Although my review is ongoing, I believe that it is in the public interest to describe the report and to summarize the principal conclusions reached by the Special Counsel and the results of his investigation.

The report explains that the Special Counsel and his staff thoroughly investigated allegations that members of the presidential campaign of Donald J. Trump, and others associated with it, conspired with the Russian government in its efforts to interfere in the 2016 U.S. presidential election, or sought to obstruct the related federal investigations. In the report, the Special Counsel noted that, in completing his investigation, he employed 19 lawyers who were assisted by a team of approximately 40 FBI agents, intelligence analysts, forensic accountants, and other professional staff. The Special Counsel issued more than 2,800 subpoenas, executed nearly 500 search warrants, obtained more than 230 orders for communication records, issued almost 50 orders authorizing use of pen registers, made 13 requests to foreign governments for evidence, and interviewed approximately 500 witnesses.

The Special Counsel obtained a number of indictments and convictions of individuals and entities in connection with his investigation, all of which have been publicly disclosed. During the course of his investigation, the Special Counsel also referred several matters to other offices for further action. The report does not recommend any further indictments, nor did the Special Counsel obtain any sealed indictments that have yet to be made public. Below, I summarize the principal conclusions set out in the Special Counsel's report.

**Russian Interference in the 2016 U.S. Presidential Election.** The Special Counsel's report is divided into two parts. The first describes the results of the Special Counsel's investigation into Russia's interference in the 2016 U.S. presidential election. The report outlines the Russian effort to influence the election and documents crimes committed by persons associated with the Russian government in connection with those efforts. The report further explains that a primary consideration for the Special Counsel's investigation was whether any Americans – including individuals associated with the Trump campaign – joined the Russian conspiracies to influence the election, which would be a federal crime. The Special Counsel's investigation did not find that the Trump campaign or anyone associated with it conspired or coordinated with Russia in its efforts to influence the 2016 U.S. presidential election. As the report states: "[T]he investigation did not establish that members of the Trump Campaign conspired or coordinated with the Russian government in its election interference activities."[1]

The Special Counsel's investigation determined that there were two main Russian efforts to influence the 2016 election. The first involved attempts by a Russian organization, the Internet Research Agency (IRA), to conduct disinformation and social media operations in the United States designed to sow social discord, eventually with the aim of interfering with the election. As noted above, the Special Counsel did not find that any U.S. person or Trump campaign official or associate conspired or knowingly coordinated with the IRA in its efforts, although the Special Counsel brought criminal charges against a number of Russian nationals and entities in connection with these activities.

The second element involved the Russian government's efforts to conduct computer hacking operations designed to gather and disseminate information to influence the election. The Special Counsel found that Russian government actors successfully hacked into computers and obtained emails from persons affiliated with the Clinton campaign and Democratic Party organizations, and publicly disseminated those materials through various intermediaries, including WikiLeaks. Based on these activities, the Special Counsel brought criminal charges against a number of Russian military officers for conspiring to hack into computers in the United States for purposes of influencing the election. But as noted above, the Special Counsel did not find that the Trump campaign, or anyone associated with it, conspired or coordinated with the Russian government in these efforts, despite multiple offers from Russian-affiliated individuals to assist the Trump campaign.

---

[1]   In assessing potential conspiracy charges, the Special Counsel also considered whether members of the Trump campaign "coordinated" with Russian election interference activities. The Special Counsel defined "coordination" as an "agreement—tacit or express—between the Trump Campaign and the Russian government on election interference."

**Obstruction of Justice.** The report's second part addresses a number of actions by the President – most of which have been the subject of public reporting – that the Special Counsel investigated as potentially raising obstruction-of-justice concerns. After making a "thorough factual investigation" into these matters, the Special Counsel considered whether to evaluate the conduct under Department standards governing prosecution and declination decisions but ultimately determined not to make a traditional prosecutorial judgment. The Special Counsel therefore did not draw a conclusion – one way or the other – as to whether the examined conduct constituted obstruction. Instead, for each of the relevant actions investigated, the report sets out evidence on both sides of the question and leaves unresolved what the Special Counsel views as "difficult issues" of law and fact concerning whether the President's actions and intent could be viewed as obstruction. The Special Counsel states that "while this report does not conclude that the President committed a crime, it also does not exonerate him."

The Special Counsel's decision to describe the facts of his obstruction investigation without reaching any legal conclusions leaves it to the Attorney General to determine whether the conduct described in the report constitutes a crime. Over the course of the investigation, the Special Counsel's office engaged in discussions with certain Department officials regarding many of the legal and factual matters at issue in the Special Counsel's obstruction investigation. After reviewing the Special Counsel's final report on these issues; consulting with Department officials, including the Office of Legal Counsel; and applying the principles of federal prosecution that guide our charging decisions, Deputy Attorney General Rod Rosenstein and I have concluded that the evidence developed during the Special Counsel's investigation is not sufficient to establish that the President committed an obstruction-of-justice offense. Our determination was made without regard to, and is not based on, the constitutional considerations that surround the indictment and criminal prosecution of a sitting president.[2]

In making this determination, we noted that the Special Counsel recognized that "the evidence does not establish that the President was involved in an underlying crime related to Russian election interference," and that, while not determinative, the absence of such evidence bears upon the President's intent with respect to obstruction. Generally speaking, to obtain and sustain an obstruction conviction, the government would need to prove beyond a reasonable doubt that a person, acting with corrupt intent, engaged in obstructive conduct with a sufficient nexus to a pending or contemplated proceeding. In cataloguing the President's actions, many of which took place in public view, the report identifies no actions that, in our judgment, constitute obstructive conduct, had a nexus to a pending or contemplated proceeding, and were done with corrupt intent, each of which, under the Department's principles of federal prosecution guiding charging decisions, would need to be proven beyond a reasonable doubt to establish an obstruction-of-justice offense.

### *Status of the Department's Review*

The relevant regulations contemplate that the Special Counsel's report will be a "confidential report" to the Attorney General. *See* Office of Special Counsel, 64 Fed. Reg. 37,038,

---

[2]   *See A Sitting President's Amenability to Indictment and Criminal Prosecution*, 24 Op. O.L.C. 222 (2000).

37,040-41 (July 9, 1999).  As I have previously stated, however, I am mindful of the public interest in this matter.  For that reason, my goal and intent is to release as much of the Special Counsel's report as I can consistent with applicable law, regulations, and Departmental policies.

Based on my discussions with the Special Counsel and my initial review, it is apparent that the report contains material that is or could be subject to Federal Rule of Criminal Procedure 6(e), which imposes restrictions on the use and disclosure of information relating to "matter[s] occurring before [a] grand jury."  Fed. R. Crim. P. 6(e)(2)(B).  Rule 6(e) generally limits disclosure of certain grand jury information in a criminal investigation and prosecution.  *Id.*  Disclosure of 6(e) material beyond the strict limits set forth in the rule is a crime in certain circumstances.  *See, e.g.*, 18 U.S.C. § 401(3).  This restriction protects the integrity of grand jury proceedings and ensures that the unique and invaluable investigative powers of a grand jury are used strictly for their intended criminal justice function.

Given these restrictions, the schedule for processing the report depends in part on how quickly the Department can identify the 6(e) material that by law cannot be made public.  I have requested the assistance of the Special Counsel in identifying all 6(e) information contained in the report as quickly as possible.  Separately, I also must identify any information that could impact other ongoing matters, including those that the Special Counsel has referred to other offices.  As soon as that process is complete, I will be in a position to move forward expeditiously in determining what can be released in light of applicable law, regulations, and Departmental policies.

*          *          *

As I observed in my initial notification, the Special Counsel regulations provide that "the Attorney General may determine that public release of" notifications to your respective Committees "would be in the public interest."  28 C.F.R. § 600.9(c).  I have so determined, and I will disclose this letter to the public after delivering it to you.

Sincerely,

William P. Barr
Attorney General

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

COMMITTEE ON THE JUDICIARY,
UNITED STATES HOUSE OF
REPRESENTATIVES,

*Plaintiff,*

v.

DONALD F. MCGAHN II,

*Defendant.*

No. 19-cv-2379 (KBJ)

# EXHIBIT C

# Congress of the United States
## Washington, DC 20515

March 25, 2019

The Honorable William P. Barr
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Dear Attorney General Barr:

Your March 24 letter concerning Special Counsel Mueller's report leaves open many questions concerning the conduct of the President and his closest advisors, as well as that of the Russian government during the 2016 presidential election.  Accordingly, we formally request that you release the Special Counsel's full report to Congress no later than Tuesday, April 2.  We also ask that you begin transmitting the underlying evidence and materials to the relevant committees at that time.

As you know, on March 14, the full House of Representatives approved H. Con. Res. 24, calling for the release of the Special Counsel's report by a vote of 420-0.[1]  Each of our committees is currently engaged in oversight activities that go directly to the President's conduct, his attempts to interfere with federal and congressional investigations, his relationships and communications with the Russian government and other foreign powers, and/or other alleged instances of misconduct.

Your four-page summary of the Special Counsel's review is not sufficient for Congress, as a coequal branch of government, to perform this critical work.  The release of the full report and the underlying evidence and documents is urgently needed by our committees to perform their duties under the Constitution.  Those duties include evaluating the underlying facts and determining whether legislative or other reforms are required—both to ensure that the Justice

---

[1] Roll Call Vote No. 125, 116th Cong., Mar. 14, 2019.

PRINTED ON RECYCLED PAPER

Department is able to carry out investigations without interference or obstruction by the President and to protect our future elections from foreign interference.

First, Congress must be permitted to make an independent assessment of the evidence regarding obstruction of justice.  The determinations you have reached regarding obstruction and the manner in which you chose to characterize the Special Counsel's investigation only raise further questions, particularly in light of the Special Counsel's decision to refrain from making "a traditional prosecutorial judgment."[2]  We also cannot evaluate your determination that "the report identifies no actions" that meet the elements of obstruction in the absence of the report, evidence and other materials.[3]

Second, we have no reason to question that Special Counsel Mueller made a well-considered prosecutorial judgment in two specific and narrow areas—whether the Trump campaign conspired to join Russia's election-related online disinformation and hacking and dissemination efforts.  But it is vital for national security purposes that Congress be able to evaluate the full body of facts and evidence collected and evaluated by the Special Counsel, including all information gathered of a counterintelligence nature.

The provision of the report—in complete and unredacted form—and the underlying evidence and materials would be fully consistent with the Justice Department's practice and precedent with Congress, which the Department reinforced in recent years.  With respect to the Hillary Clinton email investigation, the Department and the FBI released more than 880,000 pages of documents, publicly identified career officials involved in the case, and produced volumes of internal deliberative materials, including sensitive investigatory and classified materials.[4]  In response to congressional requests and subpoenas regarding allegations of bias in the Russia investigation, the Department produced to congressional committees thousands of pages of highly sensitive law enforcement and classified investigatory and deliberative records related to that investigation—which remained open and ongoing at the time.  Moreover, the Department produced to congressional committees in full, and then took the unprecedented step of releasing to the public in redacted form, multiple documents related to the surveillance of a United States person under the Foreign Intelligence Surveillance Act.[5]

---

[2] Letter from U.S. Attorney General William Barr to Chairman Jerrold Nadler, H. Comm. on the Judiciary, et al., Mar. 24, 2019.

[3] *Id.*

[4] *See, e.g., A Review of Allegations Regarding Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election*, hearing before the H. Comm. on the Judiciary, June 28, 2018 (statement of FBI Director Christopher Wray).

[5] Byron Tau, et al., *Trump Orders Declassification of Intelligence Documents Related to Former Adviser Carter Page*, WALL ST. JOURNAL, Sept. 17, 2018.

We look forward to receiving the report in full no later than April 2, and to begin receiving the underlying evidence and documents that same day.[6] To the extent that you believe applicable law limits your ability to comply, we urge you to begin the process of consultation with us immediately in order to establish shared parameters for resolving those issues without delay.

Sincerely,

Jerrold Nadler
Chairman
House Committee on the Judiciary

Elijah E. Cummings
Chairman
House Committee on Oversight and Reform

Adam Schiff
Chairman
House Permanent Select Committee on Intelligence

Maxine Waters
Chairwoman
House Committee on Financial Services

Richard E. Neal
Chairman
House Committee on Ways and Means

Eliot L. Engel
Chairman
House Committee on Foreign Affairs

---

[6] As to materials that are subject to Rule 6(e) of the Federal Rules of Criminal Procedure, there is precedent for the release of such materials to Congress under similar circumstances. We look forward to discussing this issue to determine if we can reach a mutually acceptable accommodation.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

COMMITTEE ON THE JUDICIARY,
UNITED STATES HOUSE OF
REPRESENTATIVES,

*Plaintiff,*

v.

DONALD F. MCGAHN II,

*Defendant.*

No. 19-cv-2379 (KBJ)

---

# EXHIBIT D



# The Attorney General
Washington, D.C.

March 29, 2019

The Honorable Lindsey Graham
Chairman, Committee on the Judiciary
United States Senate
290 Russell Senate Office Building
Washington, D.C. 20510

The Honorable Jerrold Nadler
Chairman, Committee on the Judiciary
United States House of Representatives
2132 Rayburn House Office Building
Washington, D.C. 20515

Dear Chairman Graham and Chairman Nadler,

I write in response to Chairman Nadler's March 25, 2019 letter and Chairman Graham's March 27, 2019 letter, which addressed the investigation of Special Counsel Robert S. Mueller, III and the "confidential report" he has submitted to me pursuant to 28 C.F.R. § 600.8(c).

As we have discussed, I share your desire to ensure that Congress and the public have the opportunity to read the Special Counsel's report. We are preparing the report for release, making the redactions that are required. The Special Counsel is assisting us in this process. Specifically, we are well along in the process of identifying and redacting the following: (1) material subject to Federal Rule of Criminal Procedure 6(e) that by law cannot be made public; (2) material the intelligence community identifies as potentially compromising sensitive sources and methods; (3) material that could affect other ongoing matters, including those that the Special Counsel has referred to other Department offices; and (4) information that would unduly infringe on the personal privacy and reputational interests of peripheral third parties. Our progress is such that I anticipate we will be in a position to release the report by mid-April, if not sooner. Although the President would have the right to assert privilege over certain parts of the report, he has stated publicly that he intends to defer to me and, accordingly, there are no plans to submit the report to the White House for a privilege review.

Also, I am aware of some media reports and other public statements mischaracterizing my March 24, 2019 supplemental notification as a "summary" of the Special Counsel's investigation and report. For example, Chairman Nadler's March 25 letter refers to my supplemental notification as a "four-page summary of the Special Counsel's review." My March 24 letter was not, and did not purport to be, an exhaustive recounting of the Special Counsel's investigation or

1

report. As my letter made clear, my notification to Congress and the public provided, pending release of the report, a summary of its "principal conclusions"—that is, its bottom line. The Special Counsel's report is nearly 400 pages long (exclusive of tables and appendices) and sets forth the Special Counsel's findings, his analysis, and the reasons for his conclusions. Everyone will soon be able to read it on their own. I do not believe it would be in the public's interest for me to attempt to summarize the full report or to release it in serial or piecemeal fashion.

As I have discussed with both of you, I believe it would be appropriate for me to testify publicly on behalf of the Department shortly after the Special Counsel's report is made public. I am currently available to testify before the Senate Judiciary Committee on May 1, 2019 and before the House Judiciary Committee on May 2, 2019.

\* \* \*

Finally, in the interests of keeping the public informed as to these matters, I intend to make this letter public after delivering it to you.

Sincerely,

William P. Barr
Attorney General

cc:    Ranking Member Dianne Feinstein; Ranking Member Doug Collins

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

COMMITTEE ON THE JUDICIARY,
UNITED STATES HOUSE OF
REPRESENTATIVES,

*Plaintiff,*

v.

DONALD F. MCGAHN II,

*Defendant.*

No. 19-cv-2379 (KBJ)

# EXHIBIT E

# Congress of the United States
## Washington, DC 20515

April 1, 2019

The Honorable William P. Barr
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Dear Attorney General Barr:

On March 25, 2019, we sent you a letter requesting that you produce to Congress the full
report of Special Counsel Robert S. Mueller III and its underlying evidence by Tuesday, April 2,
2019.  "To the extent you believe the applicable law limits your ability" to produce the entire
report, we urged that you "begin the process of consultation with us immediately" to resolve
those issues without delay.[1]  On Wednesday, April 3, 2019, the House Judiciary Committee
plans to begin the process of authorizing subpoenas for the report and underlying evidence and
materials.  While we hope to avoid resort to compulsory process, if the Department is unwilling
to produce the report to Congress in unredacted form, then we will have little choice but to take
such action.

As Chairman Nadler explained in his phone conversation with you on March 27,
Congress requires a complete and unedited copy of the Special Counsel's report, as well as
access to the evidence and materials underlying that report.  During your confirmation hearing in
January, you stated that your "goal will be to provide as much transparency as I can consistent
with the law."  As such, if the Department believes it is unable to produce any of these materials
in full due to rules governing grand jury secrecy, it should seek leave from the district court to
produce those materials to Congress—as it has done in analogous situations in the past.  To the
extent you believe any other types of redactions are necessary, we again urge you to engage in an

---

[1] Letter from Chairpersons Jerrold Nadler, H Comm. on the Judiciary, Elijah Cummings H. Comm. on Oversight &
Reform, Adam Schiff, H. Perm. Select. Comm. on Intelligence, Maxine Waters, H. Comm. on Fin. Servs., Richard
Neal, House Comm. on Ways & Means, and Eliot Engel, H. Comm. on Foreign Affairs, to Att'y Gen. William P.
Barr (Mar. 25, 2019).  *See also* Letter from Chairpersons Jerrold Nadler, H Comm. on the Judiciary, Elijah
Cummings H. Comm. on Oversight & Reform, Adam Schiff, H. Perm. Select. Comm. on Intelligence, Maxine
Waters, H. Comm. on Fin. Servs., Richard Neal, House Comm. on Ways & Means, and Eliot Engel, H. Comm. on
Foreign Affairs, to Att'y Gen. William P. Barr, informing him of their expectation that he will make Special
Counsel Robert Mueller's report public "without delay and to the maximum extent permitted by law" (Feb. 22,
2019).

immediate consultation to address and alleviate any concerns you have about providing that information to Congress.[2]

We also reiterate our request that you appear before the Judiciary Committee as soon as possible—not in a month, as you have offered, but now, so that you can explain your decisions to first provide Congress with your characterization of the Mueller report as opposed to the report itself; to initiate a redaction process that withholds critical information from Congress; and to assume for yourself final authority over matters within Congress's constitutional purview. In addition, as Chairman Nadler also requested on his call with you, we ask for your commitment to refrain from interfering with Special Counsel Mueller testifying before the Judiciary Committee—and before any other relevant committees—after the report has been released regarding his investigation and findings.

Congress is, as a matter of law, entitled to each of the categories of information you proposed to redact from the Special Counsel's report in your March 29 letter.[3] In the attached appendix we provide a more complete legal analysis of each of the potential redaction categories your letter identified. We expect the Department will take all necessary steps without further delay—including seeking leave from the court to disclose the limited portions of the report that may involve grand jury materials—in order to satisfy your promise of transparency and to allow Congress to fulfill its own constitutional responsibilities.[4]

Full release of the report to Congress is consistent with both congressional intent and the interests of the American public. On March 14, 2019, by a vote of 420-0, the House unanimously passed H. Con. Res. 24, a resolution calling for "the full release" of the Special Counsel's report to Congress, as well as the public release of the Special Counsel's report except to the extent the disclosure of "any portion thereof is expressly prohibited by law." The American people have also consistently and overwhelmingly supported release of the full report. The President himself has likewise called for its release in full.

The allegations at the center of Special Counsel Mueller's investigation strike at the core of our democracy. Congress urgently needs his full, unredacted report and its underlying evidence in order to fulfill its constitutional role, including its legislative, appropriations, and

---

[2] Congress is authorized by law and equipped to receive and examine the U.S. government's most sensitive materials and information. The Department of Justice and the Federal Bureau of Investigation have long provided to relevant congressional committees sensitive law enforcement and investigatory information and records in complete and unredacted form, including those involving classified information, that are not provided to the general public.

[3] Letter from Att'y Gen. William P. Barr to Chairman Lindsey Graham, S. Comm. on the Judiciary, and Chairman Jerrold Nadler, H. Comm. on the Judiciary (Mar. 29, 2019).

[4] At a minimum, the Department should produce a detailed log of each redaction and the reasons supporting it in order to facilitate the accommodation process and to provide sufficient clarity for Congress to evaluate the Department's claims.

oversight responsibilities. Congress can and has historically been provided with sensitive, unredacted, and classified material that cannot be provided to the general public. In addition, the American people deserve to be fully informed about these issues of extraordinary public interest, and therefore need to see the report and findings in Special Counsel Mueller's own words to the fullest extent possible.

For all these reasons, we hope you will produce to Congress an unredacted report and underlying materials to avoid the need for compulsory process.

Sincerely,

Jerrold Nadler
Chairman
House Committee on the Judiciary

Richard E. Neal
Chairman
House Committee on Ways and Means

Maxine Waters
Chairwoman
House Committee on Financial Services

Adam Schiff
Chairman
House Permanent Select Committee on
Intelligence

Elijah E. Cummings
Chairman
House Committee on Oversight and Reform

Eliot L. Engel
Chairman
House Committee on Foreign Affairs

**Appendix:**
**The Department of Justice Must Produce the Full Mueller Report**

Congress urgently needs the full Special Counsel's report and the underlying evidence in order to fulfill its Article I constitutional functions, including its legislative, appropriations, and oversight responsibilities. Moreover, there is no basis for withholding from Congress the four categories of information described by the Attorney General in his March 29 letter to the House and Senate Judiciary Committees.[1]

1. Congress Urgently Requires the Full Report and the Evidence

The Attorney General's March 24 letter indicates that the Special Counsel found that President Trump may have criminally obstructed the Department's investigation of Russia's interference in the 2016 election and related matters.[2] The Special Counsel pointedly stated that the evidence the investigation uncovered "does not exonerate" the President of obstruction, and includes potentially criminal acts not yet known to the public.[3] It is difficult to overstate the seriousness of those actions if, in the wake of an attack by a hostile nation against our democracy, President Trump's response was to seek to undermine the investigation rather than take action against the perpetrators.

The longer the delay in obtaining this information, the more harm will accrue to Congress's independent duty to investigate misconduct by the President and to assure public confidence in the integrity and independence of federal law enforcement operations. These are not only matters of addressing the harm that has occurred; they are urgent ongoing concerns. As has been publicly reported and referenced in the March 24 letter, multiple open investigations referred by the Special Counsel to other U.S. Attorneys' offices may implicate the President or his campaign, transition, inauguration, or businesses. These critically important inquiries could be compromised if the President is seeking to interfere with them. Among other things, Congress has considered and continues to consider legislation to protect the integrity of these type of investigations against precisely the sorts of interference in which the President appears to have engaged.[4]

---

[1] Letter from Att'y Gen. William P. Barr to Chairman Lindsey Graham, S. Comm. on the Judiciary, and Chairman Jerrold Nadler, H. Comm. on the Judiciary (Mar. 29, 2019).

[2] Letter from Att'y Gen. William P. Barr to Chairman Lindsey Graham and Ranking Member Dianne Feinstein, S. Comm. on the Judiciary, and Chairman Jerrold Nadler and Ranking Member Doug Collins, H. Comm. on the Judiciary (Mar. 24, 2019) (hereinafter "March 24 Letter").

[3] March 24 Letter at 3 (the report "addresses a number of actions by the President—*most of which* have been the subject of public reporting") (emphasis added).

[4] *See* H.R. 197 and S. 71, Special Counsel Independence and Integrity Act, 116th Cong (2019); *see also* H.R. 1357, Special Counsel Reporting Act, 116th Cong. (2019); H.R. 1627, Abuse of Pardon Prevention Act, 116th Cong. (2019); H.R. 1348, Presidential Pardon Transparency Act, 116th Cong. (2019).

Moreover, the Judiciary Committee is engaged in an ongoing investigation of whether the President has undermined the rule of law, including by compromising the integrity of the Justice Department. Other committees are engaged in investigations related to whether the President, his associates, or members of his administration have engaged in other corrupt or unethical activities or are subject to foreign influence or compromise by actors abroad. Congress's authority "to inquire into and publicize corruption, maladministration or inefficiency in agencies of the Government" has been unquestioned since "the earliest times in its history."[5] That interest is at its height when Congress's oversight activities pertain to potentially illegal acts by the President. As a court determined in another context involving the release of a report about potential obstruction of justice by a President, "[i]t would be difficult to conceive of a more compelling need than that of this country for an unswervingly fair inquiry based on all the pertinent information."[6]

The March 24 letter also claims that the Special Counsel's decision not to reach a definitive legal conclusion about obstruction "leaves it to the Attorney General to determine whether the conduct described in the report constitutes a crime."[7] That view is fundamentally flawed. As a coequal branch of government—indeed, as the only branch of government that is expressly empowered by the Constitution to hold the President accountable—Congress must be permitted to assess the President's conduct for itself. The Attorney General cannot unilaterally make himself judge and jury. That is particularly so where the Attorney General has already expressed the view—in arguing against a theory of obstruction in this very investigation—that "there is no legal prohibition . . . against the President's acting on a matter in which he has a personal stake."[8]

The Attorney General's pre-confirmation memorandum on this topic also stated that "the determination of whether the President is making decisions based on 'improper' motives or whether he is 'faithfully' discharging his responsibilities is left to the people, through the election process, and the Congress."[9] Neither the American people nor Congress, however, can make any such a determination without all of Special Counsel Mueller's evidence, analysis, and findings—unfiltered and in his own words.

---

[5] *Watkins v. United States*, 354 U.S. 178, 200 n.33 (1957) (internal quotations omitted)

[6] *In re Report & Rec. of June 5, 1972 Grand Jury Concerning Transmission of Evidence to House of Representatives*, 370 F. Supp. 1219, 1230 (D.D.C. 1974).

[7] March 24 Letter at 3.

[8] William P. Barr, *Memorandum Re: Mueller's "Obstruction" Theory* at 10, June 8, 2018 (emphasis omitted). Additionally, although the Attorney General's March 24 letter states that the absence of an underlying crime bears upon the President's intent, it is black-letter law that there need not be an underlying crime for obstruction of justice to occur. *See, e.g.*, *United States v. Hopper*, 177 F.3d 828, 831 (9th Cir. 1999).

[9] *Id.* at 11.

The Special Counsel's investigation also confirmed that Russia engaged in extensive efforts to interfere in the 2016 presidential election, and Congress's need for that information is no less urgent. The Special Counsel's report, according to the Attorney General, describes "crimes committed by persons associated with the Russian government in connection with these efforts," including "efforts to conduct computer hacking operations designed to gather and disseminate information to influence the election."[10]

These hostile acts are ongoing: The Department has indicated in at least one other case that Russian influence efforts continued into the 2018 midterm elections.[11] The Director of National Intelligence likewise testified last year in regard to the 2018 midterm elections that Russia would continue to use "persistent and disruptive cyber operations" and would target "elections as opportunities to undermine democracy" both here and against our allies in Europe.[12] More recently, Director Coats warned that Russia and other adversaries "probably are already looking to the 2020 U.S. election" to conduct malign influence operations and that "Moscow may employ additional influence toolkits—such as spreading disinformation, conducting hack-and-leak operations, or manipulating data—in a more targeted fashion to influence U.S. policy, actions, and elections."[13] It is imperative that Congress have access to the Special Counsel's full descriptions and evidence of these crimes and malign influence operations that the Russian government or associated actors perpetrated against our democracy.

Moreover, the Attorney General's March 24 letter acknowledges "multiple offers from Russian-affiliated individuals to assist the Trump campaign."[14] The facts and circumstances uncovered by the Special Counsel's Office surrounding these and any other overtures by foreign actors, as well as the individuals associated with them and how they responded to such offers, are of vital importance to Congress. The Foreign Affairs Committee, for example, requires access to these facts as it investigates whether the foreign and financial entanglements of the President and his associates may be improperly influencing foreign policy in ways that serve their private interests rather than the national security of the United States. Moreover, the House Permanent Select Committee on Intelligence must have access to the full facts as it evaluates counterintelligence threats and risks during and since the 2016 U.S. election, and as it considers

---

[10] March 24 Letter at 2.

[11] *See* Criminal Complaint ¶ 14, *United States v. Khusyaynova*, No. 1:18-mj-464 (E.D. Va. Sept. 28, 2018) (alleging Russian national participated in a conspiracy "to interfere with U.S. political and electoral processes, including the 2018 U.S. elections").

[12] Patricia Zengerle and Diona Chaicu, *U.S. 2018 Elections 'Under Attack' by Russia: U.S. Intelligence Chief*, Reuters, Feb. 13, 2018.

[13] Worldwide Threats: Hearing before the S. Select Comm. on Intelligence, 116th Cong. (Jan. 29, 2019) (Statement of Daniel R. Coats, Director of National Intelligence).

[14] March 24 Letter at 2.

remedies necessary to prevent, or mitigate to the greatest extent possible, the vulnerability of campaigns, or persons associated with them, to foreign influence or compromise operations.

Congressional committees have conducted multiple hearings regarding foreign influence operations and the security of our election systems and have proposed numerous legislative reforms to address vulnerabilities.[15]  In an appropriations bill enacted into law last year, Congress allocated much-needed funding to support election security initiatives.[16]  It is critical to legislation that has or will be introduced this year to understand foreign intelligence disinformation campaigns, risks to our election infrastructure security, evolving methods of voter targeting and suppression, and the manner in which foreign adversaries seek to exploit campaign vulnerabilities as well as the technology industry in our elections moving forward.

In addition, the House of Representatives' appropriations process for the next fiscal year is already underway—including for funding any election security, cybersecurity, and offensive or defensive counterintelligence operations needed to combat attacks during the 2020 election— with submission deadlines scheduled for April and appropriations packages expected to reach the House floor in June.[17]  However, Congress cannot fully address the scope of these threats (whether through appropriations or other legislation) without a thorough accounting by the Special Counsel's Office of the attack that occurred in 2016.  Indeed, it is difficult to envision any function of Congress more important than ensuring the integrity of our democratic elections, authorizing and appropriating funding for the relevant federal authorities, and authorizing critical national security programs.

2.   The Application of Rule 6(e) is Limited and Does Not Bar Disclosures to Congress

The Attorney General has indicated that the Department is reviewing the Special Counsel's report to identify material whose disclosure may be limited by Federal Rule of Criminal Procedure 6(e), which prohibits certain disclosures of "matter[s] occurring before the grand jury."  In a call with Chairman Nadler, the Attorney General suggested that redactions made in accordance with Rule 6(e) will be substantial.  But even assuming Rule 6(e) applies with respect to disclosures to Congress,[18] the law clearly forbids the Department from making

---

[15] *See, e.g.*, Secure America from Russian Interference Act, H.R. 6437, 115th Cong. (2018); Defending Elections from Threats by Establishing Redlines Act, H.R. 4884, 115th Cong. (2018); Bot Disclosure Accountability Act, S. 3127, 115th Cong. (2018); H.R. 5011, Election Security Act, 115th Cong. (2018); For the People Act, H.R. 1, 116th Cong (2019).

[16] Pub. L. No. 115-141, Div. E, tit. V (2018).

[17] *See* Hearings, H. Comm. on Appropriations, 116th Cong. (2019); Paul M. Krawzak, *House appropriations may start markup in April*, RollCall, Mar. 19, 2019.

[18] *See, e.g., In re Grand Jury Inv. of Ven-Fuel*, 441 F. Supp. 1299, 1302, 1304-08 (M.D. Fla. 1977) (holding that Congress has "an independent right" under the Constitution to obtain requested documents regardless of whether they are subject to Rule 6(e)); *In re Proceedings of Grand Jury No. 81-1 (Miami)*, 669 F. Supp. 1072, 1075 (S.D.

sweeping designations as to any evidence that happens to have been presented to a grand jury or was obtained through a grand jury subpoena.

Rule 6(e) "does not 'draw a veil of secrecy . . . over all matters occurring in the world that happen to be investigated by a grand jury.'"[19] "The mere fact that information has been presented to the grand jury does not" mean that the information is prohibited from disclosure.[20] Further, as the D.C. Circuit has made clear, the fact that evidence was obtained through a grand jury subpoena does not necessarily mean that it is barred from disclosure by Rule 6(e).[21] As a result, the Department cannot withhold documents or information simply because they were produced in response to a grand jury subpoena. Because a person receiving the documents would not know whether they were obtained through a grand jury subpoena or other means, "subpoenaed documents would not necessarily reveal a connection to a grand jury."[22] Just last year, the D.C. Circuit reaffirmed this principal in *Bartko v. Dep't of Justice*, where it made clear that "copies of specific records provided to a federal grand jury" were not covered by Rule 6(e) because "'the mere fact the documents were subpoenaed fails to justify withholding under Rule 6(e).'"[23]

For this reason, it is clear the Department cannot withhold portions of the Special Counsel's report merely because they discuss information that was presented to the grand jury or documents that were obtained through a grand jury subpoena. Likewise, the Department cannot withhold underlying evidence simply because it was presented to the grand jury or obtained through a grand jury subpoena. That is particularly so because the Special Counsel's Office obtained a great deal of evidence by other means. The Special Counsel's team interviewed numerous witnesses on a voluntary basis and acquired voluminous records without resorting to grand jury subpoenas.[24] Other evidence was obtained through different types of mandatory legal process, such as through the issuance of nearly 500 search warrants.[25] That evidence can of course be disclosed without implicating Rule 6(e). And because so much evidence was obtained

---

Fla. 1987) (similar). *But see In re Grand Jury Investigation of Uranium Indus.*, Misc. 78-173, 1979 WL 1661, at *4 (D.D.C. Aug. 16, 1979). No circuit court has squarely addressed this issue.

[19] *Labow v. Dep't of Justice*, 831 F.3d 523, 529 (D.C. Cir. 2016) (quoting *Senate of the Com. of Puerto Rico v. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987) (R.B. Ginsburg, J.)).

[20] *Id.* at 529.

[21] *Id.* at 529-30.

[22] *Id.* at 529.

[23] 898 F.3d 51, 73 (D.C. Cir. 2018) (quoting *Labow*, 831 F.3d at 530).

[24] *See, e.g.*, Philip Rucker et al., *A Mueller Mystery: How Trump Dodged a Special Counsel Interview—and a Subpoena Fight*, WASH. POST, Mar. 28, 2019 (quoting the President's attorney, Rudolph Giuliani, who stated, "We allowed [the Special Counsel's office] to investigate everybody, and [the White House] turned over every document they were asked for: 1.4 million documents.").

[25] March 24 Letter at 1.

through these other means, the Department would have no basis to withhold materials or descriptions of materials that it happens to have gathered by issuing grand jury subpoenas. So long as those materials do not on their face "'reveal a connection to a grand jury,'" Rule 6(e) does not bar their disclosure.[26]

As to testimony or other grand jury materials that are genuinely subject to Rule 6(e), the Department can and should work with the House Judiciary Committee to obtain the permission of the district court overseeing the grand jury to make disclosures to Congress on a confidential basis, as it has done in the past in analogous circumstances. The Department took that precise path after the grand jury considering evidence in the Watergate affair issued a report describing potentially criminal acts by President Nixon. The Justice Department filed briefs fully supporting disclosure of the report to the House Judiciary Committee, and made the obvious point that "[t]he need for the House to be able to make its profoundly important judgment on the basis of all available information is as compelling as any that could be conceived."[27] Independent Counsel Kenneth Starr likewise sought the court's authorization to disclose grand jury material regarding President Clinton to the House of Representatives.[28]

The district court would have ample authority to permit disclosure of relevant materials to Congress. As Chief Judge Howell, the judge overseeing this grand jury, explained in a recent opinion, "numerous courts have recognized [that] a district court retains an inherent authority to unseal and disclose grand jury material not otherwise falling within the enumerated exceptions to Rule 6(e)."[29] Indeed, every federal court of appeals to have considered this question has reached that conclusion.[30] Congress's need for these materials is beyond compelling, and the public interest in Congress receiving these materials is at its height. President Trump, moreover, has

---

[26] *Barko*, 898 F.3d at 73 (quoting *Labow*, 831 F.3d at 529).

[27] Mem. for the United States on Behalf of the Grand Jury at 16, *In re Report & Rec. of June 5, 1972 Grand Jury*, Misc. No. 74-21 (D.D.C. Mar. 5, 1974).

[28] *See* Order, *In re Madison Guaranty Savings & Loan Assoc.*, Div. No. 94-1 (D.C. Cir. Special Div. July 7, 1998).

[29] *In re App. to Unseal Dockets Related to the Independent Counsel's 1998 Investigation of President Clinton*, 308 F. Supp. 3d 314, 323 (D.D.C. 2018).

[30] *Id.* at 323-24. *See Carlson v. United States*, 837 F.3d 753, 763 (7th Cir. 2016); *In re Craig*, 131 F.3d 99, 103 (2d Cir. 1997); *In re Pet. to Inspect & Copy Grand Jury Materials*, 735 F.2d 1261, 1268 (11th Cir. 1984); *see also Pitch v. United States*, 915 F.3d 704, 708-09 (11th Cir. 2019); *Haldeman v. Sirica*, 501 F.2d 714, 715 (D.C. Cir. 1974) (court was "in general agreement with" the district court's decision to release the Watergate grand jury's report to Congress). The D.C. Circuit heard argument last fall in a case involving a historian who seeks the release of grand jury material involving an incident that occurred in the 1950s pursuant to the court's inherent authority to release materials otherwise covered by Rule 6(e). *McKeever v. Barr*, No. 17-5149. The facts of that case are obviously distinct from those presented here. As the Department explained in its brief in *McKeever*, "[t]he question in this appeal is whether . . . a district court may order the disclosure of secret grand jury records solely for reasons of historical or academic interest."

expressed public support for the report's release.[31]  As such, the Department should immediately request that these materials be released to Congress.

The Attorney General has refused thus far to work with Congress in that regard.  At his confirmation hearing, however, the Attorney General stated: "I . . . believe it is very important that the public and Congress be informed of the results of the special counsel's work.  My goal will be to provide as much transparency as I can consistent with the law."[32]  The most efficacious way to honor that commitment would be to join with the House Judiciary Committee in seeking expedited disclosure of any Rule 6(e) material to Congress, and to refer any questions about the scope of Rule 6(e)'s application to independent court review.

### 3.  Any Potential Claim of Executive Privilege Has Been Waived

Although the Attorney General's March 24 letter made no mention of executive privilege, his March 29 letter states that "there are no plans to submit the report to the White House for a privilege review," because the President "intends to defer" to the Attorney General on those issues.  Whatever that may mean, it would be highly improper for the Department to conceal portions of the report based on claims of executive privilege on behalf of the President.  As an initial matter, the Department's own long-standing policy is that executive privilege "should not be invoked to conceal evidence of wrongdoing or criminality on the part of executive officers."[33]

In any event, the President and the White House have waived any claims of executive privilege.  The White House voluntarily disclosed millions of documents to the Special Counsel's office and permitted multiple senior officials to be interviewed by the Special Counsel's team, without asserting any type of privilege.[34]  Having voluntarily disclosed this evidence, the President cannot now seek to invoke executive privilege to block its release.  As the D.C. Circuit has held in an analogous context, regarding waiver of attorney-client privilege, "[t]he client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others."[35]  Moreover, the White House has similarly shared information and documents with numerous former White House

---

[31] Liam Stack, *Trump Says Mueller Report Should Be Made Public: 'Let People See It,'* N.Y. TIMES, Mar. 20, 2019.

[32] *The Nomination of the Honorable William Pelham Barr to be Attorney General of the United States*, hearing before the S. Comm. on the Judiciary, Jan. 15, 2019 (statement of the Hon. William Barr).

[33] Robert B. Shanks, Office of Legal Counsel, *Congressional Subpoenas of Department of Justice Investigative Files*, 8 Op. O.L.C. 252, 267 (1984).

[34] *See* Rucker et al., *supra* note 24; Michael Schmidt and Maggie Haberman, *White House Counsel, Don McGahn, Has Cooperated Extensively in Mueller Inquiry*, N.Y. TIMES, Aug. 18, 2018 (noting that no privilege was asserted).

[35] *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981).

officials and their private counsel.[36]   The D.C. Circuit has expressly held that the White House "waive[s] its claims of privilege in regard to [] specific documents that it voluntarily reveal[s] to third parties outside the White House."[37]

Lastly, in the unlikely event that the White House has preserved privilege as to any of the evidence underlying the Mueller report, the public interest in disclosure would still overwhelmingly outweigh the President's interest in secrecy.  The privilege pertaining to presidential communications is not absolute.  Just as the Supreme Court determined in *United States v. Nixon*, the public interest here in the "fair administration of justice" outweighs the President's "generalized interest in confidentiality."[38]

4. <u>Ongoing Investigations, Classified Information, and Privacy and Reputational Interests of Third Parties Should Not Prevent Release to Congress</u>

The fact that certain investigations remain ongoing cannot justify the Department withholding critical evidence from Congress that pertains to Russia's interference in our federal elections or obstruction of justice by the President.  Indeed, during the previous Congress, the Department produced to congressional committees thousands of pages of highly sensitive law enforcement and classified investigatory and deliberative records.[39]  Many of these were related to *this very same investigation*—which of course was open and ongoing at the time.

Similarly, the mere presence of classified information in the Mueller report or in underlying evidence cannot justify withholding evidence from Congress, which is well equipped to handle classified information and does so on a daily basis.  The Department can provide any classified materials to the appropriate committees for handling in secure facilities.  It can also permit the Intelligence Community to review the report on an expedited basis in order to share with Congress whatever equities the Intelligence Community feels may be implicated by the release of specific information contained in the report or any underlying materials.  Additionally, to the extent the Special Counsel's Office is in possession of underlying evidence that is particularly sensitive, the relevant committees are in a position to work with the Department to reach an accommodation to ensure appropriate handling as Congress has in the past on numerous occasions.  However, the Department should not be able to simply invoke the same reasons for redacting the report from public view as a shield against disclosure to a coequal branch of government.

---

[36] *See, e.g.*, Schmidt and Haberman, *supra* note 34.

[37] *In re Sealed Case*, 121 F.3d 729, 741-42 (D.C. Cir. 1997).

[38] 418 U.S. 683, 713 (1974).

[39] *See, e.g.*, *DOJ hands over new classified documents on Russia probe to Congress*, Associated Press, June 23, 2018; Charlie Savage, *Carter Page FISA Released by Justice Department*, N.Y. Times, July 21, 2018

Finally, the Department also should not be able to keep from Congress information related to the "reputational interests of peripheral third parties" as referenced in the Attorney General's March 29 letter.  To the extent the Special Counsel has developed information relative to President Trump's family members (including those employed by the White House) or his associates, campaign employees, consultants, advisers, and others within the scope of the investigation, that should not be withheld from Congress.  It is precisely the type of information that the relevant committees need to perform their oversight, legislative, and other responsibilities.  There is no constitutionally recognized privilege that would apply in such instances, and there is ample precedent for provision of such information, as recently as the last Congress.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

COMMITTEE ON THE JUDICIARY,
UNITED STATES HOUSE OF
REPRESENTATIVES,

<em>Plaintiff,</em>

v.

DONALD F. MCGAHN II,

<em>Defendant.</em>

No. 19-cv-2379 (KBJ)

# EXHIBIT F



# The Attorney General

Washington, D.C.

April 18, 2019

The Honorable Lindsey Graham
Chairman, Committee on the Judiciary
United States Senate
290 Russell Senate Office Building
Washington, D.C. 20510

The Honorable Jerrold Nadler
Chairman, Committee on the Judiciary
United States House of Representatives
2132 Rayburn House Office Building
Washington, D.C. 20515

The Honorable Dianne Feinstein
Ranking Member, Committee on the Judiciary
United States Senate
331 Hart Senate Office Building
Washington, D.C. 20510

The Honorable Doug Collins
Ranking Member, Committee on the Judiciary
United States House of Representatives
1504 Longworth House Office Building
Washington, D.C. 20515

Dear Chairman Graham, Chairman Nadler, Ranking Member Feinstein, and Ranking Member Collins:

I write today to provide you with a public version of the report prepared by Special Counsel Robert S. Mueller, III. Although the Special Counsel prepared this document as a "confidential report" to the Attorney General under 28 C.F.R. § 600.8(c), I have determined that the public interest warrants as much transparency as possible regarding the results of the Special Counsel's investigation. Accordingly, I have determined that the report should be released to the public and provided to Congress, subject only to those redactions required by the law or compelling law enforcement, national security, or personal privacy interests.

### *Russian Interference in the 2016 U.S. Presidential Election*

Volume I of the Special Counsel's report describes the results of his investigation into Russia's attempts to interfere in the 2016 U.S. presidential election and any coordination of those efforts with the Trump campaign and its associates. As quoted in my March 24, 2019 letter, the Special Counsel stated his bottom-line conclusion on the question of so-called "collusion" as follows: "[T]he investigation did not establish that members of the Trump Campaign conspired or coordinated with the Russian government in its election interference activities."

More specifically, the Special Counsel determined that there were two main Russian efforts to influence the 2016 election. The first involved attempts by a Russian organization, the Internet Research Agency (IRA), to conduct disinformation and social media operations in the United States designed to sow social discord, eventually with the aim of interfering with the election. The Special Counsel brought criminal charges against a number of Russian nationals and entities in connection with these activities, but concluded that "[t]he investigation did not identify evidence that any U.S. persons conspired or coordinated with the IRA."

The second main Russian effort to influence the 2016 election involved hacking into the computer systems of the Clinton campaign and certain Democratic Party organizations for the purpose of stealing documents and emails for later public dissemination. Such unauthorized access into computers is a federal crime. The Special Counsel found that Russian government actors successfully carried out these hacking activities between March and mid-June 2016, stealing many thousands of documents and emails. Based on these activities, the Special Counsel brought criminal charges against Russian military officers for conspiring to hack into computers in the United States for purposes of influencing the election. But the Special Counsel did not find that President Trump, his campaign, or its associates conspired or coordinated with the Russian government in its hacking activities.

The Special Counsel also considered whether any persons associated with the Trump campaign had any role in disseminating the hacked information, either through Wikileaks or other channels. Although some of the Special Counsel's discussion concerning these matters must be redacted because of court orders in pending cases or potential harm to ongoing investigations, the Special Counsel did not find that any person associated with the Trump campaign, or any other U.S. citizen, illegally participated in the dissemination of hacked information.

Finally, in connection with investigating Russian interference, the Special Counsel reviewed contacts between persons associated with the Trump campaign and persons having or claiming to have ties to the Russian government. After reviewing those contacts, the Special Counsel did not find any conspiracy to violate U.S. law involving Russia-linked persons and any persons associated with the Trump campaign.

### *Obstruction of Justice*

Volume II of the Special Counsel's report describes his investigation into whether President Trump's actions in connection with the Russia investigation constituted obstruction of justice. Although the report documents the President's actions in detail, the Special Counsel decided not to evaluate the President's conduct under the Department's standards governing prosecution and declination decisions. As I explained in my March 24, 2019 letter to Congress, "[a]fter making a 'thorough factual investigation' into these matters," the Special Counsel "did not draw a conclusion—one way or the other—as to whether the examined conduct constituted obstruction." As the Special Counsel put it, "while this report does not conclude that the President committed a crime, it also does not exonerate him."

Presented with the results of the Special Counsel's thorough, almost-two-year investigation, I determined that the Special Counsel's decision not to reach a conclusion on obstruction left it to me to determine whether the conduct described in the report constitutes a crime when considered under the principles of federal prosecution. The Attorney General has ultimate responsibility for all criminal investigations conducted by the Department. The very function of a federal prosecutor conducting a criminal investigation is to determine whether an offense has been committed and, if so, whether there is sufficient evidence to overcome the presumption of innocence that attaches to every person. Prosecutors are entrusted with awesome investigative powers, including the power to use a grand jury, for the purpose of making these prosecutorial decisions and not for any other purpose. Consequently, I determined that it was

incumbent on me to decide, one way or the other, whether the evidence set forth in the Special Counsel's report was sufficient to establish that the President committed an obstruction-of-justice offense. As stated in my March 24 letter, the Deputy Attorney General and I determined that it was not.

### *Preparation of the Public Report*

As noted above, I have concluded that the report should be released to the public and to Congress to the maximum extent possible, subject only to those redactions required by law or by compelling law enforcement, national security, or personal privacy interests. As you will see, most of the redactions were required to protect grand-jury secrecy or to comply with judicial orders (i) protecting from public release sensitive discovery information or (ii) prohibiting public disclosure of information bearing upon ongoing investigations and criminal proceedings, including *United States v. Internet Research Agency LLC, et al.* and *United States v. Roger Jason Stone, Jr.*

With the assistance of the Special Counsel and his team, we have coordinated the redaction process with members of the intelligence community and with the prosecuting offices currently handling matters referenced in the report. We have clearly marked the redactions based upon the reason for withholding the redacted information: (1) grand-jury information (marked in red), the disclosure of which is prohibited by Federal Rule of Criminal Procedure 6(e); (2) investigative techniques (marked in yellow), which reflect material identified by the intelligence and law enforcement communities as potentially compromising sensitive sources, methods, or techniques, as well as information that could harm ongoing intelligence or law enforcement activities; (3) information that, if released, could harm ongoing law enforcement matters (marked in white), including charged cases where court rules and orders bar public disclosure by the parties of case information; and (4) information that would unduly infringe upon the personal privacy and reputational interests of peripheral third parties (marked in green), which includes deliberation about decisions not to recommend prosecution of such parties.

Because the White House voluntarily cooperated with the Special Counsel's investigation, significant portions of the report contain materials over which the President could have asserted privilege. After the release of my March 29, 2019 letter, the Office of the White House Counsel requested the opportunity to review the redacted report for the purpose of advising the President as to whether he should invoke privilege on any portion prior to the public disclosure of this information. In view of this issue's importance to long-standing interests of the Presidency, I decided that office should be in a position to advise the President. Therefore, I agreed to the request. Following that review, the President confirmed that, in the interest of transparency, he would not assert privilege prior to the public disclosure of the report, although it would have been well within his authority to do so in many instances. Thus, the White House did not request that any information be withheld from public release, and no material was redacted based on executive privilege.

In addition, earlier this week, the President's personal counsel requested and were granted the opportunity to review the redacted report before it was publicly released. That request was consistent with the practice followed under the now-expired Ethics in Government Act, which permitted individuals named in a report prepared by an Independent Counsel the opportunity to

review and comment on the report before publication. *See* 28 U.S.C. § 594(h)(2). The President's personal lawyers raised no objections to publication of any information in the redacted report, and they were not permitted to make, and did not request, any further redactions. Thus, all redactions in the report were made by Department lawyers working together with the Special Counsel's office and the intelligence community.

### *Accommodation of Congress's Requests*

I acknowledge that you have expressed an interest in viewing an unredacted version of the report. As I have said on several occasions, it is my intent to accommodate that request to the extent that I can. I will therefore make available for review by you and the "Gang of Eight" a version of the report with all redactions removed except those relating to grand-jury information. In light of the law and governing judicial precedent, I do not believe that I have discretion to disclose grand-jury information to Congress. Nevertheless, this accommodation will allow you to review the bulk of the redacted material for yourselves.

Finally, I understand that your Committees will have many questions about these matters, and I look forward to discussing them with you in my upcoming testimony. As I previously offered, I am currently available to testify before the Senate Judiciary Committee on May 1, 2019, and before the House Judiciary Committee on May 2, 2019. I believe that the release of the Special Counsel's report, together with my testimony, will accommodate any need Congress has to learn about the results of the Special Counsel's investigation.

*       *       *

In light of the public interest surrounding this matter, I will disclose this letter to the public after delivering it to you.

Sincerely,

William P. Barr
Attorney General

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

COMMITTEE ON THE JUDICIARY,
UNITED STATES HOUSE OF
REPRESENTATIVES,

*Plaintiff,*

v.

DONALD F. MCGAHN II,

*Defendant.*

No. 19-cv-2379 (KBJ)

# EXHIBIT G



**U.S. Department of Justice**

Office of Legislative Affairs

---

*Office of the Assistant Attorney General*　　　　　　*Washington, D.C. 20530*

April 18, 2019

The Honorable Lindsey Graham
Chairman
Committee on the Judiciary
United States Senate
Washington, DC  20510

The Honorable Jerrold Nadler
Chairman
Committee on the Judiciary
U.S. House of Representatives
Washington, DC  20515

Dear Chairman Graham and Chairman Nadler:

I write to provide additional information regarding the Attorney General's April 18, 2019 invitation to certain Members of Congress to review a less-redacted version of Special Counsel Robert Mueller's Report on the Investigation into Russian Interference in the 2016 Presidential Election (Report).

Pursuant to 28 C.F.R. § 600.8(c), the Special Counsel submitted a "confidential report" to the Attorney General on March 22, 2019.  In the Attorney General's March 24, 2019 letter to you, he stated that he was "mindful of the public interest in this matter" and that his "goal and intent" was to "release as much of the Special Counsel's report as" possible "consistent with applicable law, regulations, and Departmental policies."  Subsequently, in his March 29, 2019 letter, the Attorney General explained that Department of Justice (Department) officials, with assistance from the Special Counsel, were identifying and redacting four categories of material from the Report prior to its public release.  These include: (1) material subject to Federal Rule of Criminal Procedure 6(e) that by law cannot be made public, (2) material the intelligence community identifies as potentially compromising sensitive sources and methods, (3) material that could affect other ongoing matters, and (4) information that would unduly infringe on the personal privacy and reputational interests of peripheral third parties.  As the Attorney General's letter of April 18, 2019 explains, the Report released to Congress and the public today contains these redactions.

The Attorney General has determined that it is appropriate to provide the Chairman and Ranking Members of the House and Senate Committees on the Judiciary, the members of the "Gang of Eight," and one designated staff person per member access via *in camera* review to certain material redacted in the publicly released report.

The Honorable Lindsey Graham
The Honorable Jerrold Nadler
Page Two

        To facilitate this review, the Office of Legislative Affairs (Office) will operate a secure
reading room for above-identified members and designated staff at the Department from 10 a.m.
to 5 p.m. each day between April 22 and April 26, 2019.  Additionally, for the convenience of
Members, this Office will provide an opportunity for *in camera* review of the less-redacted Report
in secure spaces on Capitol Hill during the week of April 29, 2019, which immediately follows the
current Congressional recess.

        As required by Federal Rule of Criminal Procedure 6(e), the less-redacted version of the
Report will maintain redactions of sensitive grand jury information that by law cannot be made
public.  However, the less-redacted Report will make available to congressional reviewers all
information covered in each of the other three categories of redactions referenced in the Attorney
General's April 18, 2019 letter.

        Given the sensitive nature of the information, the additional information will be made
available through *in camera* review contingent on an agreement by all individuals reviewing the
less-redacted version of the Report that the material provided only to the above-identified members
and staff will remain confidential.  Material redacted in the public version of the report is law
enforcement sensitive and confidential; it should not be shared in any form without prior approval
of the Department of Justice.  Some of the material is governed by court rules and orders and
cannot be shared publicly absent court order.

        While the Department will permit notetaking, the Department asks that all notes remain at
the Department in its secure facility.  Department officials will transfer notes to and from Capitol
Hill for *in camera* review sessions that take place there.  Following the above-referenced review
opportunities, this Office will be pleased to work with you and your staff should you believe that
additional access to this information is necessary to further your legislative or oversight activities.

        We hope this information is helpful.  Please do not hesitate to have your designated staff
person contact this Office to schedule an appointment for *in camera* review of the Report.

                                        * * *

        Consistent with our past correspondence on this matter and our effort to keep the public
informed, the Department intends to make this letter available to the public after delivering it to
you.

                                Very truly yours,


                                Stephen E. Boyd
                                Assistant Attorney General

The Honorable Lindsey Graham
The Honorable Jerrold Nadler
Page Three


cc:     The Honorable Mitch McConnell
        Senate Majority Leader

        The Honorable Charles E. Schumer
        Senate Minority Leader

        The Honorable Nancy Pelosi
        Speaker of the House

        The Honorable Kevin McCarthy
        House Minority Leader

        The Honorable Richard Burr
        Chairman
        Senate Select Committee on Intelligence

        The Honorable Mark Warner
        Ranking Member
        Senate Select Committee on Intelligence

        The Honorable Adam Schiff
        Chairman
        House Permanent Select Committee on Intelligence

        The Honorable Devin Nunes
        Ranking Member
        House Permanent Select Committee on Intelligence

        The Honorable Dianne Feinstein
        Ranking Member
        Senate Committee in the Judiciary

        The Honorable Doug Collins
        Ranking Member
        House Committee in the Judiciary

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

COMMITTEE ON THE JUDICIARY,
UNITED STATES HOUSE OF
REPRESENTATIVES,

*Plaintiff,*

v.

DONALD F. MCGAHN II,

*Defendant.*

No. 19-cv-2379 (KBJ)

# EXHIBIT H

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

*To* The Honorable William P. Barr, Attorney General of the United States
_____

You are hereby commanded to be and appear before the
Committee on the Judiciary
_____
_____

of the House of Representatives of the United States at the place, date, and time specified below.

☑ **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of production: 2138 Rayburn House Office Building, Washington, D.C., 20515
>
> Date: May 1, 2019                          Time: 10:00am

☐ **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony:_____
>
> Date:_____ (and continuing until completed)      Time:_____

☐ **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: _____
>
> Date:_____                          Time:_____

*To* any authorized staff member or the U.S. Marshals Service
_____

_____ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at

the city of Washington, D.C. this 18th     day of April_____ , 20 19 .

*Chairman or Authorized Member*

Attest:

*Clerk*

# PROOF OF SERVICE

Subpoena for

The Honorable William P. Barr, Attorney General of the United States

Address  United States Department of Justice

950 Pennsylvania Ave., NW, Washington DC, 20530

before the  Committee on the Judiciary

*U.S. House of Representatives*
*116th Congress*

Served by (print name)  Aaron Hiller

Title  Deputy Chief Counsel, House Judiciary Committee

Manner of service  Electronic

Date  04/19/2019

Signature of Server

Address  2138 Rayburn House Office Building

Washington, D.C. 20515

## SCHEDULE

You are hereby required to produce the following in accordance with the attached Definitions and Instructions:

1.  The complete and unredacted version of the report submitted on or about March 22, 2019 by Special Counsel Robert Mueller, pursuant to his authority under 28 C.F.R. § 600.8(c), entitled, "Report on the Investigation into Russian Interference in the 2016 Presidential Election" ("the Report"). This includes, but is not limited to, all summaries, exhibits, indices, tables of contents or other tables or figures, appendices, supplements, addenda or any other attachments whether written or attached in a separate electronic format.

2.  All documents referenced in the Report.

3.  All documents obtained and investigative materials created by the Special Counsel's Office.

## DEFINITIONS

As used in this subpoena, the following terms shall be interpreted in accordance with these definitions:

1. "And," and "or," shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this subpoena any information that might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neutral genders.

2. "Any" includes "all," and "all" includes "any."

3. "Communication(s)" means the transmittal of information by any means, whether oral, electronic, by document or otherwise, and whether in a meeting, by telephone, facsimile, mail, releases, electronic message including email, text message, instant message, MMS or SMS message, encrypted message, message application, social media, or otherwise.

4. "Employee" means any past or present agent, borrowed employee, casual employee, consultant, contractor, de facto employee, detailee, fellow, independent contractor, intern, joint adventurer, loaned employee, officer, part-time employee, permanent employee, provisional employee, special government employee, subcontractor, or any other type of service provider.

5. "Document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, interoffice and intra-office communications, electronic mail ("e-mail"), instant messages, calendars, contracts, cables, notations of any type of conversation, telephone call, meeting or other communication, bulletins, printed matter, computer printouts, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, power point presentations, spreadsheets, and work sheets. The term "document" includes all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments to the foregoing, as well as any attachments or appendices thereto.

6. "Documents in your possession, custody or control" means (a) documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, or representatives acting on your behalf; (b) documents that you have a legal right to obtain, that you have a right to copy, or to which you have access; and (c) documents that have been placed in the possession, custody, or control of any third party. This includes but is not limited to documents that are or were held by your attorneys.

7. "Each" shall be construed to include "every," and "every" shall be construed to include "each."

8. "Including" shall be construed broadly to mean "including, but not limited to."

9. "Investigative materials" means any document created, generated, authored, or obtained by the Special Counsel's Office pursuant to the Special Counsel's Investigation, including but not limited to, prosecution memoranda, FBI 302 interview reports, signals intelligence, witness interviews, written interrogatories and responses, search warrants, subpoenas, Foreign

Intelligence Surveillance Act applications, notes, transcripts, reports, whether classified or unclassified.

10. "Person" or "persons" means natural persons, firms, partnerships, associations, corporations, subsidiaries, division, departments, joint ventures proprietorships, syndicates, or other legal business or government entities, and all subsidiaries, affiliates, divisions, departments, branches, or other units, thereof.

11. "Referenced" means cited, quoted, mentioned, described, alluded to, contained, incorporated, reproduced, or identified in any manner whatsoever.

12. "Relating to" shall mean discussing, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, comprising, showing, setting forth, considering, recommending, concerning, or pertinent to that subject in any manner whatsoever.

13. "Special Counsel's Office" means the office created pursuant to Department of Justice Order No. 3915-17 issued by the Acting Attorney General on May 17, 2017 appointing Robert S. Mueller III as Special Counsel, and its employees.

14. "Special Counsel's Investigation" means the investigation conducted by the Special Counsel's Office pursuant to Department of Justice Order No. 3915-17 issued by the Acting Attorney General on May 17, 2017.

15. "The Report" means the complete and unredacted version of the report submitted on or about March 22, 2019 by Special Counsel Robert Mueller, pursuant to his authority under 28 C.F.R. § 600.8(c), entitled, "Report on the Investigation into Russian Interference in the 2016 Presidential Election."

# **INSTRUCTIONS**

1. In complying with this subpoena, you should produce all responsive documents in unredacted form that are in your possession, custody, or control or otherwise available to you, regardless of whether the documents are possessed directly by you. If a document is referenced in the Report in part, you should produce it in full in a complete and unredacted form.

2. Documents responsive to the subpoena should not be destroyed, modified, removed, transferred, or otherwise made inaccessible to the Committee.

3. In the event that a document is withheld in full or in part on any basis, including a claim of privilege, you should provide a log containing the following information concerning every such document: (i) the reason the document is not being produced; (ii) the type of document; (iii) the general subject matter; (iv) the date, author, addressee, and any other recipient(s); (v) the relationship of the author and addressee to each other; and (vi) any other description necessary to identify the document and to explain the basis for not producing the document. If a claimed privilege applies to only a portion of any document, that portion only should be withheld and the remainder of the document should be produced. As used herein, "claim of privilege" includes, but is not limited to, any claim that a document either may or must be withheld from production pursuant to any law, statute, rule, policy or regulation.

4. Any objections or claims of privilege are waived if you fail to provide an explanation of why full compliance is not possible and a log identifying with specificity the ground(s) for withholding each document prior to the subpoena compliance date.

5. In complying with the subpoena, be apprised that the Committee does not recognize: any purported non-disclosure privileges associated with the common law including, but not limited to the deliberative-process privilege, the attorney-client privilege, and attorney work product protections; or any purported contractual privileges, such as non-disclosure agreements.

6. Any assertion of any such non-constitutional legal bases for withholding documents or other materials, shall be of no legal force and effect and shall not provide a justification for such withholding or refusal, unless and only to the extent that the Committee has consented to recognize the assertion as valid.

7. Pursuant to 5 U.S.C. § 552(d), the Freedom of Information Act (FOIA) and any statutory exemptions to FOIA shall not be a basis for withholding any information.

8. Pursuant to 5 U.S.C. § 552a(b)(9), the Privacy Act shall not be a basis for withholding information.

9. If any document responsive to this subpoena was, but no longer is, in your possession, custody, or control, or has been placed into the possession, custody, or control of any third party and cannot be provided in response to this subpoena, you should identify the document (stating its date, author, subject and recipients) and explain the circumstances under which the document ceased to be in your possession, custody, or control, or was placed in the possession, custody, or control of a third party, including, but not limited to (a) how the document was disposed of; (b) the name, current address, and telephone number of the person who currently has possession, custody, or

control over the document; (c) the date of disposition; and (d) the name, current address, and telephone number of each person who authorized said disposition or who had or has knowledge of said disposition.

10. If any document responsive to this subpoena cannot be located, describe with particularity the efforts made to locate the document and the specific reason for its disappearance, destruction or unavailability.

11. In the event that any entity, organization, or individual named in the subpoena has been, or is currently, known by any other name, the subpoena should be read also to include such other names under that alternative identification.

12. All documents should be produced with Bates numbers affixed. The Bates numbers must be unique, sequential, fixed-length numbers and must begin with a prefix referencing the name of the producing party (e.g., ABCD-000001). This format must remain consistent across all productions. The number of digits in the numeric portion of the format should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted. All documents should be Bates-stamped sequentially and produced sequentially.

13. Documents produced pursuant to this subpoena should be produced in the order in which they appear in your files and should not be rearranged. Any documents that are stapled, clipped, or otherwise fastened together should not be separated. Documents produced in response to this subpoena should be produced together with copies of file labels, dividers, or identifying markers with which they were associated when this subpoena was issued. Indicate the office or division and person from whose files each document was produced.

14. Responsive documents must be produced regardless of whether any other person or entity possesses non-identical or identical copies of the same document.

15. Produce electronic documents as created or stored electronically in their original electronic format. Documents produced in electronic format should be organized, identified, and indexed electronically, in a manner comparable to the organization structure called for in Instruction 13 above.

16. Data may be produced on CD, DVD, memory stick, USB thumb drive, hard drive, or via secure file transfer, using the media requiring the least number of deliverables. Label all media with the following:

    a.  Production date;

    b.  Bates range;

    c.  Disk number (1 of X), as applicable.

17. If a date or other descriptive detail set forth in this subpoena referring to a document, communication, meeting, or other event is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the subpoena, you should produce all documents which would be responsive as if the date or other descriptive detail were correct.

18. The subpoena is continuing in nature and applies to any newly discovered document, regardless of the date of its creation. Any document not produced because it has not been located or discovered by the return date should be produced immediately upon location or discovery subsequent thereto.

19. Two sets of each production shall be delivered, one set to the Majority Staff and one set to the Minority Staff. Production sets shall be delivered to the Majority Staff in Room 2138 of the Rayburn House Office Building and the Minority Staff in Room 2142 of the Rayburn House Office Building. You should consult with Committee Majority Staff regarding the method of delivery prior to sending any materials.

20. If compliance with the subpoena cannot be made in full by the specified return date, compliance shall be made to the extent possible by that date. An explanation of why full compliance is not possible shall be provided along with any partial production. In the event that any responsive documents or other materials contain classified information, please immediately contact Committee staff to discuss how to proceed.

21. Upon completion of the document production, please submit a written certification, signed by you or by counsel, stating that: (1) a diligent search has been completed of all documents in your possession, custody, or control which reasonably could contain responsive documents; (2) documents responsive to the subpoena have not been destroyed, modified, removed, transferred, or otherwise made inaccessible to the Committee since the date of receiving the Committee's subpoena or in anticipation of receiving the Committee's subpoena, and (3) all documents identified during the search that are responsive have been produced to the Committee, identified in a log provided to the Committee, or otherwise identified as provided herein.

22. A cover letter should be included with each production including the following information:

    a. List of each piece of media (hard drive, thumb drive, DVD or CD) included in the production by the unique number assigned to it, and readily apparent on the physical media;

    b. List of fields in the order in which they are listed in the metadata load file;

    c. The paragraph(s) and/or clause(s) in the Committee's subpoena to which each document responds;

    d. Time zone in which emails were standardized during conversion (email collections only);

    e. Total page count and bates range for the entire production, including both hard copy and electronic documents.

23. You need not produce documents which are readily publicly available.

24. As to Item 3 in the Schedule, please consult with the Committee to determine a reasonable time period for compliance.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES, *Plaintiff,* v. DONALD F. MCGAHN II, *Defendant.* | No. 19-cv-2379 (KBJ) |

# EXHIBIT I



**U.S. Department of Justice**

Office of Legislative Affairs

_____

Office of the Assistant Attorney General          *Washington, D.C. 20530*

May 1, 2019

The Honorable Jerrold Nadler
Chairman
Committee on the Judiciary
U.S. House of Representatives
Washington, D.C. 20515

Dear Chairman Nadler:

On April 18, 2019, the Attorney General took the extraordinary step of publicly disclosing the report of Special Counsel Robert S. Mueller, III, with as few redactions as possible.  Under the regulations that govern the Special Counsel, his report was a "confidential," internal Department of Justice (Department) document, which contained the kind of prosecutorial deliberations that the Department almost never releases publicly. 28 C.F.R. § 600.8(c); 64 Fed. Reg. 37,038, 37,041 (July 9, 1999).  Nonetheless, in response to requests from you and other Members, and in the interest of transparency, the Attorney General disclosed the report and volunteered to appear to testify before the Committee.  In addition, the Attorney General offered you and other congressional leaders the chance to review the report with redactions only for grand-jury information (because disclosure of that information is prohibited by law).  That would permit you to review 98.5% of the report, including 99.9% of Volume II, which discusses the investigation of the President's actions.

Regrettably, before even reviewing the less-redacted version or awaiting the Attorney General's testimony, you served a subpoena demanding (i) the unredacted report, (ii) every document cited therein, and (iii) "all documents obtained and investigative materials created" by the Special Counsel's office over nearly two years.  In other words, the Committee has demanded all of the Special Counsel's investigative files, which consist of millions of pages of classified and unclassified documents, bearing upon more than two dozen criminal cases and investigations, many of which are ongoing.  You served such a subpoena knowing that the Department could not lawfully provide the unredacted report, that the Committee lacks any legitimate legislative purpose for seeking the complete investigative files, and that processing your requests would impose a significant burden on the Department.

The Department has always been willing to follow the constitutionally mandated accommodation process to address legitimate congressional requests for information.  In this case, both the Attorney General's decision to release the report with minimal

1

redactions and his willingness to testify were already extraordinary accommodations reflecting his respect for meeting the legitimate information needs of the Committee and its Members. But this subpoena is not legitimate oversight. The requests in the subpoena are overbroad and extraordinarily burdensome. More importantly, these requests would pose a fundamental threat to the confidentiality of law enforcement files and the Department's commitment to keep law enforcement investigations free of political interference.

For reasons integral to our law enforcement responsibilities, the Department's practice is to reveal information about our criminal investigations only when we decide to prosecute, and then generally only in court, in our indictments and subsequent filings. When we decline to prosecute, we abide by fundamental principles of privacy and due process and refrain from publicly assessing the information that was assembled regarding individuals who were investigated but not prosecuted. Attorney General Barr's decision to release the confidential report reflected an extraordinary accommodation of the congressional and public interest in the results of the Special Counsel's investigation and was justified because it was critical for the American people to know the Special Counsel's conclusion that the Trump campaign did not conspire or coordinate with Russia in its attempts to interfere with the 2016 presidential election.

We are disappointed, however, that the Committee has responded to this extraordinary accommodation by reflexively issuing a subpoena that threatens to swallow the extremely important principle that the Department must preserve the confidentiality of its investigations. It is one thing for the Attorney General to disclose a written report of prosecutorial decisions, but quite another thing to open up the entirety of the investigative file to congressional review. Allowing your Committee to use Justice Department investigative files to re-investigate the same matters that the Department has investigated and to second-guess decisions that have been made by the Department would not only set a dangerous precedent, but would also have immediate negative consequences.

Over the past year, you have repeatedly expressed concern that the Special Counsel's investigation would not remain free of outside interference. You now know, as reported in the Attorney General's March 22, 2019 letter, that the Special Counsel completed his investigation, on his own terms and on his own schedule, and that there were no instances where the Attorney General or his predecessors overruled the Special Counsel's judgment. That does not, however, mean that we now may tolerate the specter of congressional interference with the autonomy of the Department's law enforcement functions. *See, e.g., Assertion of Executive Privilege over Documents Generated in Response to Congressional Investigation into Operation Fast and Furious*, 36 Op. O.L.C. __, at *4-5 (June 19, 2012) (opinion of Attorney General Holder) (citing the need "to ensure that critical ongoing law enforcement actions are not compromised and that law enforcement decisionmaking is not tainted by even the appearance of political influence").

The Department must ensure that it may continue to conduct law enforcement investigations free of outside interference, particularly in high-profile cases that receive intense public scrutiny. To that end, the Department has long resisted congressional attempts to rummage through its investigative files. As Attorney General Michael Mukasey recognized in advising the President to assert executive privilege over FBI

2

investigative reports bearing upon the Valerie Plame investigation, the Department has a "concern about the prospect of committees of Congress obtaining confidential records from Justice Department criminal investigative files for the purpose of addressing highly politicized issues in public committee hearings." *Assertion of Executive Privilege Concerning the Special Counsel's Interviews of the Vice President and Senior White House Staff*, 32 Op. O.L.C. 7, 10-11 (2008).

Attorney General Robert Jackson similarly declined to provide Congress with the FBI's investigative files related to counterespionage activities. Writing "with the approval of and at the direction of [President Roosevelt]," Jackson explained that disclosing such information would "be of serious prejudice to the future usefulness of the Federal Bureau of Investigation," which often relies upon information that is "given in confidence and can only be obtained upon pledge not to disclose its sources." *Position of the Executive Department Regarding Investigative Reports*, 40 Op. Att'y Gen. 45, 46 (1941). Furthermore, such disclosure "might also be the grossest kind of injustice to innocent individuals," since "[i]nvestigative reports include leads and suspicions, and sometimes even the statements of malicious or misinformed people." *Id.* at 47. Noting that a "long line of distinguished predecessors" had "uniformly taken the same view," Jackson concluded that "the public interest does not permit general access to Federal Bureau of Investigation reports for information by the many congressional committees who from time to time ask it." *Id.*

Consistent with these precedents, "[t]he Department's longstanding policy is to decline to provide Congressional committees with access to open law enforcement files." Letter for John Linder, Chairman, Subcommittee on Rules and Organization of the House, from Robert Raben, Assistant Attorney General, Office of Legislative Affairs at 3 (Jan. 27, 2000). "[P]roviding a Congressional committee with confidential information about active criminal investigations would place the Congress in a position to exert pressure or attempt to influence the prosecution of criminal cases." *Id.* at 4. In addition, "the disclosure of documents from our open files could also provide a 'road map' of the Department's ongoing investigations. . . . The investigation would be seriously prejudiced by the revelation of the direction of the investigation, information about the evidence that the prosecutors have obtained, and assessments of the strengths and weaknesses of various aspects of the investigation." *Id.*

Even with respect to closed law enforcement matters, the Department must protect the numerous confidentiality interests implicated by law enforcement information— starting with our "broad confidentiality interest in materials that reflect [the Department's] internal deliberative process." *Id.* at 5. "We have long been concerned about the chilling effect that would ripple throughout government if prosecutors, policy advisors at all levels and line attorneys believe that their honest opinion . . . may be the topic of debate in Congressional hearings or floor debates." *Id.* In addition, "[t]he Department takes very seriously its responsibility to respect the privacy interests of individuals about whom information is developed during the law enforcement process." *Id.* We also have substantial confidentiality interests regarding sensitive law enforcement and intelligence information, such as information regarding confidential sources, methods, and techniques. In this case, the Special Counsel's investigation received the White House's cooperation in

3

making witnesses and documents available.  Similar access by the Department could be impeded in future investigations if the White House were given reason to believe that Congress would receive each and every document shared with the Department.

Against this backdrop of the Department's compelling need to protect the autonomy and effectiveness of its investigations, as well as the extraordinary steps the Attorney General has already taken to accommodate the Committee's needs, the Committee has not articulated any legitimate legislative purpose for its request for all of the Special Counsel's investigative files.  The Committee has no legitimate role in demanding law enforcement materials with the aim of simply duplicating a criminal inquiry—which is, of course, a function that the Constitution entrusts exclusively to the Executive Branch.  If the Department were to provide law enforcement materials every time a high-profile and politically charged investigation was underway, we would irredeemably undermine the integrity and independence of law enforcement investigations. This is especially true here where the Committee has demanded every single document bearing upon over two dozen separate criminal cases and investigations, and where the only point of the demand seems to be to generate public disclosures that the Special Counsel's extensive report did not already produce and to second-guess prosecution and declination decisions made by the Department.  This is not a legitimate use of congressional investigative authority.

For these reasons, the Department is unable to provide the Committee with the Special Counsel's investigative files.  In reaching this conclusion, we do not close the door on engaging with the Committee about potential further accommodations in response to a properly focused and narrowed inquiry that is supported by a legitimate legislative purpose.  If and when the Committee has completed its review of the Special Counsel's report and has identified particularized and legitimate needs for information that are not satisfied by the report itself, we will be prepared to engage further with the Committee and to respond to your specific requests for information.  Our response, of course, must remain consistent with long-standing Department obligations, including the need to protect the autonomy of criminal investigations, the obligation to protect grand-jury information, and the legitimate confidentiality interests of the Executive Branch.

We are also unable to honor your specific request for the completely unredacted Special Counsel's report because disclosing grand-jury information in response to congressional oversight requests is prohibited by law.  Rule 6(e) of the Federal Rules of Criminal Procedure provides that matters occurring before a grand jury must be kept secret, except in certain specifically enumerated circumstances.  *See McKeever v. Barr*, No. 17-5149, 2019 WL 1495027, at *2 (D.C. Cir. Apr. 5, 2019).  Rule 6(e) contains no exception that would permit the Department to provide grand-jury information to the Committee in connection with its oversight role.  Therefore, the Department may not provide the grand-jury information that the subpoena requests.  The Department has, however, provided you and the Ranking Member (as well as other members of leadership in the House and Senate) with access to a version of the report that redacts only the grand-jury information that cannot be disclosed under Rule 6(e).  As noted above, this minimally redacted version would permit review of 98.5% of the report, including 99.9% of Volume II, which discusses the investigation of the President's actions.

4

Please do not hesitate to contact this office if we may be of further assistance.

Sincerely,

Stephen E. Boyd
Assistant Attorney General

cc:     The Honorable Doug Collins
        Ranking Member

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

COMMITTEE ON THE JUDICIARY,
UNITED STATES HOUSE OF
REPRESENTATIVES,

                    *Plaintiff,*

        v.

DONALD F. MCGAHN II,

                    *Defendant.*

No. 19-cv-2379 (KBJ)

# EXHIBIT J

JERROLD NADLER, New York
CHAIRMAN

ZOE LOFGREN, California
SHEILA JACKSON LEE, Texas
STEVE COHEN, Tennessee
HENRY C. "HANK" JOHNSON, JR., Georgia
TED DEUTCH, Florida
KAREN BASS, California
CEDRIC L. RICHMOND, Louisiana
HAKEEM S. JEFFRIES, New York
DAVID CICILLINE, Rhode Island
ERIC SWALWELL, California
TED LIEU, California
JAMIE RASKIN, Maryland
PRAMILA JAYAPAL, Washington
VAL DEMINGS, Florida
LOU CORREA, California
MARY GAY SCANLON, Pennsylvania
SYLVIA GARCIA, Texas
JOSEPH NEGUSE, Colorado
LUCY McBATH, Georgia
GREG STANTON, Arizona
MADELEINE DEAN, Pennsylvania
DEBBIE MUCARSEL-POWELL, Florida
VERONICA ESCOBAR, Texas

DOUG COLLINS, Georgia
RANKING MEMBER

F. JAMES SENSENBRENNER, JR., Wisconsin
STEVE CHABOT, Ohio
LOUIE GOHMERT, Texas
JIM JORDAN, Ohio
KEN BUCK, Colorado
JOHN RATCLIFFE, Texas
MARTHA ROBY, Alabama
MATT GAETZ, Florida
MIKE JOHNSON, Louisiana
ANDY BIGGS, Arizona
TOM McCLINTOCK, California
DEBBIE LESKO, Arizona
GUY RESCHENTHALER, Pennsylvania
BEN CLINE, Virginia
KELLY ARMSTRONG, Alabama
GREG STEUBE, Florida

ONE HUNDRED SIXTEENTH CONGRESS

# Congress of the United States
## House of Representatives

COMMITTEE ON THE JUDICIARY

2138 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515–6216

(202) 225–3951

http://www.house.gov/judiciary

May 3, 2019

The Honorable William P. Barr
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Dear Attorney General Barr:

I write to respond to the Department's letter of May 1, 2019 refusing to comply with the Judiciary Committee's subpoena for the unredacted Mueller report, the documents it cites, and other underlying materials. As you know, the Committee has repeatedly engaged with your staff in writing, by telephone and in person to discuss a way forward on the subpoena.

At the outset, we note that the Department has never explained why it is willing to allow only a small number of Members to view a less-redacted version of the report, subject to the condition that they cannot discuss what they have seen with anyone else. The Department also remains unwilling to work with the Committee to seek a court order permitting disclosure of materials in the report that are subject to Federal Rule of Criminal Procedure 6(e). And the Department has offered no reason whatsoever for failing to produce the evidence underlying the report, except for a complaint that there is too much of it and a vague assertion about the sensitivity of law enforcement files.

Nonetheless, the Committee remains willing to negotiate a reasonable accommodation with the Department. First, the Committee requests that the Department reconsider its refusal to allow all Members of Congress and appropriate staff to view redacted portions of the report that are not subject to Rule 6(e) in a secure location in Congress. As the Committee has already indicated, Congress has ample means of providing for safe storage of these materials; and it is routinely entrusted with the responsibility to protect classified and other sensitive information.

1

Second, the Committee renews its request that the Department work jointly with Congress to seek a court order permitting disclosure of materials covered by Rule 6(e). The Department has asserted that Rule 6(e) "contains no exception" that would permit such disclosure, but courts have provided Rule 6(e) materials to Congress under the rule's "judicial proceeding" exception in the past,[1] and other exceptions may also be available.[2]

Third, the Committee is willing to prioritize a specific, defined set of underlying investigative and evidentiary materials for immediate production. As indicated in item two of the Committee's subpoena, the Committee has a heightened interest in obtaining access to the investigative and evidentiary materials specifically cited in the report. This discrete and readily identifiable set of documents includes reports from witness interviews (commonly known as "302s") and items such as contemporaneous notes taken by witnesses of relevant events. Since these materials are publicly cited and described in the Mueller report, there can be no question about the Committee's need for and right to this underlying evidence in order to independently evaluate the facts that Special Counsel Mueller uncovered and fulfill our constitutional duties. As the Mueller report makes clear, this need is amplified where, as here, Department policy prohibits the indictment of a sitting President and instead relies upon Congress to evaluate whether constitutional remedies are appropriate. In addition, to the extent these materials are classified or contain sensitive law enforcement information, we are prepared to maintain their confidentiality as we regularly do with similar information.

Fourth, as we have already indicated in the instructions to the subpoena, we are also prepared to discuss limiting and prioritizing our request in item three of the subpoena for other underlying evidence obtained by the Special Counsel's office.

Accommodation requires negotiation that takes into account the legitimate interests and responsibilities of both Congress and the Department. Your proposed conditions are a departure from accommodations made by previous Attorneys General of both parties. As recently as last Congress, the Department produced more than 880,000 pages of sensitive investigative materials pertaining to its investigation of Hillary Clinton, as well as much other material relating to the then-ongoing Russia investigation. That production included highly classified material, notes from FBI interviews, internal text messages, and law enforcement memoranda. The volume of documents cited in the Special Counsel's report is surely smaller, and the Committee is willing

---

[1] *See, e.g., In re Grand Jury Proceedings of Grand Jury No. 81-1 (Miami)*, 669 F. Supp. 1072, 1075-76 (S.D. Fla. 1987).

[2] *See* Fed. R. Crim. P. 6(e)(3)(D) (allowing disclosure of grand jury materials "involving foreign intelligence, counterintelligence . . . , or foreign intelligence information" to "any federal law enforcement, intelligence, . . . or national security official to assist the official receiving the information in the performance of that official's duties"); *id.* (allowing disclosure of grand jury materials relating to "a threat of attack or other grave hostile acts of a foreign power or its agent . . . , or clandestine intelligence gathering activities by an intelligence service or network of a foreign power or by its agent" to "any appropriate federal . . . official").

to work with the Department to prioritize production of materials even within that defined category. Additionally, in the most recent prior instance in which the Department conducted an investigation of a sitting President, Kenneth Starr produced a 445-page report to Congress along with 18 boxes of accompanying evidence.

Lastly, it cannot go unremarked that, in refusing to comply with congressional oversight requests, the Department has repeatedly asserted that Congress's requests do not serve "legitimate" purposes. This is not the Department's judgment to make. Congress's constitutional, oversight and legislative interest in investigating misconduct by the President and his associates cannot be disputed. The Committee has ample jurisdiction under House Rule X(l) to conduct oversight of the Department, undertake necessary investigations, and consider legislation regarding the federal obstruction of justice statutes, campaign-related crimes, and special counsel investigations, among other things.

The Committee is prepared to make every realistic effort to reach an accommodation with the Department. But if the Department persists in its baseless refusal to comply with a validly issued subpoena, the Committee will move to contempt proceedings and seek further legal recourse.

We request a response by 9 a.m. on Monday, May 6, 2019. Please do not hesitate to contact us if you have any questions.

Sincerely,

Jerrold Nadler
Chairman
House Committee on the Judiciary

cc:   The Hon. Doug Collins
      Ranking Member, House Committee on the Judiciary

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES, | |
| *Plaintiff,* | |
| v. | No. 19-cv-2379 (KBJ) |
| DONALD F. MCGAHN II, | |
| *Defendant.* | |

# EXHIBIT K



**U.S. Department of Justice**

Office of Legislative Affairs

---

Office of the Assistant Attorney General

*Washington, D.C. 20530*

May 6, 2019

The Honorable Jerrold Nadler
Chairman
Committee on the Judiciary
U.S. House of Representatives
Washington, DC 20515

Dear Chairman Nadler:

I write in response to your May 3, 2019 letter to the Attorney General.  We appreciate the House Committee on the Judiciary's (Committee) offer to negotiate a reasonable accommodation to the demands made by the April 18, 2019 subpoena, and we emphasize the Department of Justice's (Department) continued willingness to engage in good faith with the Committee on these issues consistent with its obligations under the law.  We were disappointed that the Committee took initial steps this morning toward moving forward with the contempt process.

The Department reiterates its concerns with the Committee's rush to issue a subpoena immediately after the Attorney General took the extraordinary step of publicly disclosing, with as few redactions as possible, the confidential report of Special Counsel Robert S. Mueller, III, and after he took the further step of making an even-less-redacted version available to a bipartisan group of congressional leaders.  The Committee did so even though you have yet to take advantage of the Department's offer to review the less-redacted version of the Special Counsel's report—which naturally raises questions about the sincerity of the Committee's interest in and purported need for the redacted material.  Your refusal to review the less-redacted report also hinders our ability to engage in a meaningful discussion about what specific information Congress needs in furtherance of its legitimate legislative activities.  Furthermore, the Committee has not articulated any legitimate basis for requesting the law enforcement documents that bear upon more than two dozen criminal cases and investigations, including ongoing matters, and does not identify any available legal basis to authorize the Department to ask a court to share materials protected by Rule 6(e) of the Federal Rules of Criminal Procedure.  Indeed, the Committee fails even to address the D.C. Circuit's recent decision on this question.  *See McKeever v. Barr*, 920 F.3d 842, 844–45 (D.C. Cir. 2019).

Nonetheless, as we have made clear from the outset, the Department welcomes the Committee's offer to attempt to negotiate an acceptable accommodation of our respective interests on these issues.  We are prepared to discuss the matters raised in your letter, including your request to provide greater access to the less-redacted version of the report to additional Members of Congress and staff, as well as prioritizing review and possible disclosure of certain materials cited

The Honorable Jerrold Nadler
Page Two

in the Special Counsel's report, provided that such access and disclosure is done lawfully and in a manner that protects long-established Executive Branch confidentiality interests.

To that end, we invite members of your and the Ranking Member's staff to the Department on the afternoon of Wednesday, May 8, 2019 to negotiate an accommodation that meets the legitimate interests of each of our coequal branches of government.  In order to make the meeting productive, we believe that it would make sense for you to at least review the less-redacted version of the report in advance, and we will take steps to ensure that it remains available to you prior to the meeting.  We are available to discuss further details of the meeting with you in advance.

Sincerely,

Stephen E. Boyd
Assistant Attorney General

cc:     The Honorable Doug Collins
        Ranking Member
        Committee on the Judiciary
        U.S. House of Representatives
        Washington, DC  20515

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

COMMITTEE ON THE JUDICIARY,
UNITED STATES HOUSE OF
REPRESENTATIVES,

                    *Plaintiff,*

        v.

DONALD F. MCGAHN II,

                    *Defendant.*

No. 19-cv-2379 (KBJ)

# EXHIBIT L

JERROLD NADLER, New York
CHAIRMAN

DOUG COLLINS, Georgia
RANKING MINORITY MEMBER

# U.S. House of Representatives
## Committee on the Judiciary
### Washington, DC 20515–6216
#### One Hundred Sixteenth Congress

May 24, 2019

The Honorable William P. Barr
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Mr. Pat Cipollone
Counsel to the President
The White House
1600 Pennsylvania Ave, N.W.
Washington, D.C. 20002

Dear Attorney General Barr and Mr. Cipollone:

I write to follow up on my letters of May 10, 2019 to Attorney General Barr and May 16, 2019 to Mr. Cipollone describing the efforts to date by the Judiciary Committee to reach a reasonable accommodation regarding the Committee's April 18, 2019 subpoena, and expressing the Committee's willingness to engage in further negotiations to resolve this dispute. I also proposed in both letters that the Committee's staff meet with your staffs to determine if a reasonable accommodation could be reached. As you know, I've received no response to my letters and the Committee's offer to engage in further accommodation discussions.

We write yet again in an effort to encourage both the Department of Justice and the White House to engage in accommodation discussions to see if an agreement can be reached before the House takes action on the floor and prior to the Committee making any decisions regarding potential litigation. To facilitate such discussions, the Committee is providing further details regarding the documents and information that it is willing to accept as satisfaction of its subpoena in a final attempt to avoid the need for subpoena enforcement litigation.

To that end and as we previously offered, the Committee is prepared to identify specific materials that if produced would be deemed to satisfy the subpoena. These are documents referenced in Volume II of the Special Counsel's report that primarily consist of (i) FBI interview reports (commonly known as "302s") describing statements given by firsthand witnesses to relevant events, (ii) a limited set of notes taken by witnesses and relied on by the

Special Counsel's office, and (iii) a small number of White House memoranda and communications specifically cited in the report.[1]

A complete list of the specific documents is attached. Within that limited universe of documents, we are further prepared to prioritize production of materials that would provide the Committee with the most insight into certain incidents where the Special Counsel found "substantial evidence" of obstruction of justice. Those incidents include (1) President Trump's efforts to have Special Counsel Mueller removed; (2) President Trump's efforts to have White House Counsel Don McGahn create a fraudulent record denying that incident; and (3) President Trump's efforts to have Attorney General Sessions reverse his recusal and limit the scope of the Special Counsel's investigation. Mr. McGahn's statements to the Special Counsel's office, for example, are cited more than 70 times in descriptions of incidents (1) and (2) and, therefore, are of particular importance to the Committee's work.

In addition, as to redacted portions of the report that are not subject to Federal Rule of Criminal Procedure 6(e), the Committee is prepared to limit its review to members of the Judiciary Committee and appropriate staff, subject to the condition that the Department has insisted on – that they cannot discuss what they have seen with anyone else (except that the Committee has requested the ability for counsel to share the materials with a court under seal in the event of litigation). As you know, Congress has ample means of providing for safe storage of these materials, as it is routinely entrusted with the responsibility to protect classified and other sensitive information. Although the Department's proposed conditions are a departure from accommodations made by previous Attorneys General of both parties (as is our proposed compromise), the Committee is nevertheless prepared to accept this modified requirement as a concession.

Lastly, as we have previously made clear, the Committee is not seeking from the Department any information or documents that are properly subject to Rule 6(e).[2] Similarly, the Committee is also prepared to relieve the Department of the obligation to produce the underlying documents not specifically identified in the Mueller Report and contained in the limited set of Volume II referenced documents listed in the attachment, if an agreement can be reached.

As a result of the Committee's unilateral accommodation efforts, the Department would satisfy the Committee's subpoena by producing the limited set of materials from Volume II of the Mueller Report that the Committee has identified, and permitting only the Judiciary Committee members and appropriate staff to review the non-Rule 6(e) redactions under the conditions the Department has requested.

---

[1] The Committee is prepared to discuss whether any redactions of these documents would be appropriate.

[2] The Committee intends to seek a court order permitting the Committee to receive those portions of the report redacted on Rule 6(e) grounds and potentially related referenced documents.

Notwithstanding the President's stated intent to block all congressional subpoenas, the Committee also remains prepared to meet with the Department and the White House to ascertain if an acceptable accommodation can be reached.  I am personally willing to meet with you both in an effort to achieve a suitable compromise.

Sincerely,

Jerrold Nadler
Chairman
House Committee on the Judiciary

cc:     Doug Collins
        Ranking Member

3

**<u>Documents Referenced in Volume II of the Special Counsel's Report</u>**

**<u>FBI Interview Reports (302s)</u>**

The Committee requests 302 reports for the following individuals, identified by the following dates:

- Stephen K. Bannon (2/12/18; 2/14/18; 10/26/18; 1/18/19)
- Dana Boente (1/31/18)
- James Burnham (11/3/17)
- Chris Christie (2/13/19)
- Michael Cohen (8/7/18; 9/12/18; 10/17;18; 11/12/18; 11/20/18; 3/19/19)
- James Comey (11/15/17)
- Rick Dearborn (6/20/18)
- Uttam Dhillon (11/21/17)
- Annie Donaldson (11/6/17; 4/2/18)
- John Eisenberg (11/29/17)
- Michael Flynn (11/17/17; 11/20/17; 11/21/17; 1/19/18)
- Counsel to Michael Flynn (name not specified) (3/1/18)
- Rick Gates (4/10/18; 4/11/18; 4/18/18; 10/25/18)
- Hope Hicks (12/7/17; 12/8/17; 3/13/18)
- Joseph Hunt (2/1/18)
- John Kelly (8/2/18)
- Jared Kushner (4/11/18)
- Corey Lewandowski (4/6/18)
- Paul Manafort (10/1/18)
- Andrew McCabe (8/17/17; 9/26/17)
- Mary McCord (7/17/17)
- K.T. McFarland (12/22/17)
- Don McGahn (11/30/17; 12/12/17; 12/14/17; 3/8/18; 2/28/19)
- Stephen Miller (10/31/17)
- Rob Porter (4/13/18; 5/8/18)
- Reince Priebus (10/13/17; 1/18/18; 4/3/18)
- Rod Rosenstein (5/23/17)
- Christopher Ruddy (6/6/18)
- James Rybicki (6/9/17; 6/13/17; 6/22/17; 11/21/18)
- Sarah Sanders (7/3/18)
- Jeff Sessions (1/17/18)
- Sean Spicer (10/16/17)
- Sally Yates (8/15/17)

**Contemporaneous Notes**

The Committee requests notes taken by the following individuals on the following dates:

- Annie Donaldson (3/2/17; 3/5/17; 3/6/17; 3/12/17; 3/16/17; 3/21/17; 4/11/17; 5/9/17; 5/10/17; 5/31/17)
- Joseph Hunt (5/3/17; 5/8/17; 5/9/17; 5/17/17; 5/18/17; 5/30/17; 7/21/17)
- John Kelly (2/5/18; 2/6/18)
- Corey Lewandowski (6/19/17)
- Stephen Miller (5/5/17)
- Rob Porter (7/10/17; 10/16/17; 12/6/17; 1/27/18; undated notes identified as "SC_RRP000053")
- Reince Priebus (7/22/17)

**Memoranda and Communications**

The Committee requests the following memoranda and communications. Dates and Bates numbers referenced in the Special Counsel's report are included where available, but Bates numbers may not encompass the entirety of the page ranges for each document:

- Draft Memorandum to file from Office of Counsel to the President (2/15/17) (SCR15_000198 - SCR15_000202)
- Draft Termination Letter to FBI Director Comey (SCR013c_000003 - SCR013c_000006)
- E-mail from James Burnham to Annie Donaldson (2/16/17) (SCR004_00600)
- McFarland Memorandum for the Record (2/26/17) (KTMF_00000047 - KTMF_00000048)
- White House Counsel's Office Memorandum (SCR016_000002 - SCR016_000005)
- White House Counsel's Office Memorandum re: "Flynn Tick Tock" (SCR015_000278)