**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES, | ) ) ) ) ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) ) | No. 19-cv-2379 (KBJ) |
| DONALD F. MCGAHN, II | ) ) ) | |
| *Defendant*, | ) ) | |

**DEFENDANT'S MOTION FOR STAY PENDING APPEAL
AND FOR IMMEDIATE ADMINISTRATIVE STAY**

For only the second time in our history, a court has ordered a senior presidential advisor to testify before Congress. *See* ECF No. 47 (Order); ECF No. 46 (Mem. Op.). The only other time that a district court issued such an order, *see Comm. on the Judiciary, U.S. House of Reps. v. Miers*, 558 F. Supp. 2d 53 (D.D.C. 2008), the D.C. Circuit issued a published opinion staying the order pending appeal, explaining that the dispute was "of potentially great significance for the balance of power between the Legislative and Executive Branches." *Comm. on the Judiciary of the U.S. House of Reps. v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008) (per curiam); *see also id.* at 912 (Tatel, J., concurring) (explaining that the justiciability issues "satisfy th[e] modest standard" necessary to justify a stay). That case was then settled on appeal, and the D.C. Circuit has not had occasion to address these issues since.

This case raises the same significant and difficult separation-of-powers questions presented in *Miers*, and no binding precedent has addressed those issues since. Just as in *Miers*, this Court's order should therefore be stayed to ensure that Defendant has an opportunity to seek meaningful appellate review. *See Miers*, 542 F.3d at 912 (Tatel, J., concurring) (agreeing that issues required

"deliberative investigation" from D.C. Circuit). Defendant further requests that the Court enter an immediate administrative stay extending through this Court's ruling on Defendant's motion to stay and, should this Court deny Defendant's motion, further extending through the D.C. Circuit's ruling on a motion for stay pending appeal filed in that Court.

Pursuant to Local Civil Rule 7(m), counsel for Defendant conferred with counsel for Plaintiff before filing this motion. Counsel for Plaintiff requested that Defendant state Plaintiff's position as follows: "Plaintiff, the Committee on the Judiciary, opposes a stay pending appeal. Out of courtesy to this Court, however, the Committee does not oppose an administrative stay of seven days." Defendant therefore respectfully informs the Court that, absent an intervening order from this Court extending the stay beyond the seven days to which Plaintiff has agreed (i.e., beyond December 2, 2019), Defendant intends to seek relief from the D.C. Circuit on the morning of Wednesday, November 27, 2019.

## LEGAL STANDARD

In evaluating whether to grant a stay pending appeal, courts consider "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (per curiam); *see also, e.g.*, *Nken v. Holder*, 556 U.S. 418, 434-435 (2009); *Winter v. NRDC*, 555 U.S. 7, 22 (2008).

## ARGUMENT

**I.   The D.C. Circuit Has Already Held That A Stay Is Warranted In These Circumstances.**

In *Miers*, the D.C. Circuit was asked to address whether the House Judiciary Committee could ask a federal court to issue an order compelling a former Counsel to the President to appear and testify in response to a Committee subpoena. 542 F.3d at 910. The district court ruled that it

2

could issue such an order. The Counsel to the President appealed and moved for a stay pending disposition of the appeal. *Id.* The D.C. Circuit granted the motion for a stay, explaining that the dispute "is of potentially great significance for the balance of power between the Legislative and Executive Branches." *Id.* at 911.

The same is true here. Among other things, Mr. McGahn, a former Counsel to the President, has urged that this *political* dispute between the Legislative and Executive Branches over Mr. McGahn's potential congressional testimony does not belong in a *judicial* forum. The same separation-of-powers concerns present in *Miers* are at issue in this case. Whether viewed as binding circuit precedent or highly persuasive authority, the D.C. Circuit's stay order in *Miers* compels a stay in this case.

## II. The Traditional Factors Also Support A Stay.

### A. Defendant Is Likely To Succeed On The Merits Of The Appeal.

Defendant has made a "strong showing" that he is likely to succeed on the merits of this appeal. *See Nken*, 556 U.S. at 434.[1] This Court's order rejected four separate arguments presented by Defendant: (1) that the Court lacks jurisdiction under Article III, *see* Mem. Op. at 46-77, 81-89; (2) that the Court lacks statutory jurisdiction under 28 U.S.C. § 1331, *see id.* at 41-45; (3) that Plaintiff lacks a cause of action through which it can enforce its subpoena, *see id.* at 77-81; and (4) that Mr. McGahn is absolutely immune from compelled congressional testimony, *see id.* at 89-116. In rejecting these arguments, the Court rejected positions that have been presented by the Executive Branch under administrations of both political parties for decades. To obtain relief from the D.C. Circuit, Defendant need only prevail on one: if Defendant persuades the D.C. Circuit that this Court lacked jurisdiction under Article III, *or* that it lacked jurisdiction under 28 U.S.C.

---

[1] For these purposes, the "merits" of the appeal include the question of whether the district court had jurisdiction to address the merits in the first place. *See, e.g., Al Maqaleh v. Gates*, 620 F. Supp. 2d 51, 56 (D.D.C. 2009); *see also Miers*, 542 F.3d at 911 (Tatel, J., concurring).

§ 1331, *or* that Plaintiff lacked a cause of action, *or* that the Executive Branch's longstanding position on absolute immunity is correct, then this Court's order will be reversed. To sustain this Court's order on appeal, Plaintiff has to run the table.

Defendant has a significant chance of prevailing on each of these issues. *First*, with respect to Article III jurisdiction, no appellate court has ever held that a component of Congress can sue the Executive Branch to enforce a congressional subpoena. Rather, as the Supreme Court has explained, history and tradition demonstrate that the political branches resolve their disputes using the tools assigned to them by the Constitution. *See, e.g.*, *Raines v. Byrd*, 521 U.S. 811, 826 (1997) ("It is evident from several episodes in our history that in analogous confrontations between one or both Houses of Congress and the Executive Branch, no suit was brought on the basis of claimed injury to official authority or power."). While "[t]here would be nothing irrational about a system that granted standing" for the political branches to sue each other, it "is obviously not the regime that has obtained under our Constitution to date." *Id.* at 828.

*Second*, Defendant has a significant chance of persuading the D.C. Circuit that this Court lacks statutory jurisdiction because Congress has not enacted a statute granting district courts jurisdiction to enforce House subpoenas. The provision that Congress has enacted to govern subpoena-enforcement suits applies only to the Senate and expressly *excludes* suits like this one: suits against executive branch officers asserting executive branch objections. *See* 28 U.S.C. § 1365. Respectfully, it makes little sense to read 28 U.S.C. § 1331's general language as both completely overlapping with the specific jurisdictional grant in § 1365 and, even worse, overriding the careful political compromise that § 1365 embodies by furnishing jurisdiction to hear the very suits that Congress carefully (and repeatedly) excluded from § 1365. *See, e.g.*, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012).

*Third*, Defendant has a significant chance of persuading the D.C. Circuit that Plaintiff lacks a cause of action to enforce its subpoenas in federal court. "[R]ights of action to enforce federal law must be created by Congress," *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001), and Congress has never enacted a cause of action that would permit the *House* to enforce its subpoenas in federal court. *Cf.* 2 U.S.C. § 288d (purporting to create a cause of action for the *Senate*). While there is a history and tradition of the House issuing subpoenas and using its own powers to enforce them, the Supreme Court has held that there is a critical difference between the authority to issue subpoenas and the authority to enforce them in court. *See Reed v. Cty. Comm'r of Del. Cty.*, 277 U.S. 376, 389 (1928). There is no tradition of federal courts enforcing legislative subpoenas, and so there is a significant chance of the D.C. Circuit finding that this Court should not have inferred a cause of action permitting such enforcement under the Constitution. *See, e.g.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) ("When a party seeks to assert an implied cause of action under the Constitution itself, . . . separation-of-powers principles are or should be central to the analysis."); *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 322, 327 (1999) (implied causes of action in equity must be based on "traditional equity practice" and "Congress is in a much better position than [the courts] to . . . design the appropriate remedy" for "departure[s]" from that practice).

*Fourth* and finally, there is a significant chance that, if it reaches the issue, the D.C. Circuit will determine that Mr. McGahn is absolutely immune from compelled congressional testimony. While the Court's opinion observes that no case has held that senior presidential advisors are absolutely immune from compelled congressional testimony, Mem. Op. at 91, 94-95, it is equally true that no binding precedent forecloses Defendant's argument. And this rule is the longstanding view of the Executive Branch, consistently reaffirmed by administrations of both political parties for nearly five decades—with the most recent assertion before the one at issue here coming in 2014

during the Obama Administration.  *See Immunity of the Assistant to the President and Dir. of the Office of Political Strategy & Outreach from Cong. Subpoena*, 38 Op. O.L.C. ___, Slip. Op. at 1-2 (July 15, 2014) (Orloff Decl., ECF No. 32-5, Exh. E).  As one judge recently observed in a different context: "[C]ould it really be wrong if both Administrations agree on it?"  *California v. Trump*, 267 F. Supp. 3d 1119, 1127 (N.D. Cal. 2017).  The D.C. Circuit will thus be evaluating a well-considered, hotly contested proposition of enormous constitutional import from first principles.  In light of the serious separation-of-powers concerns that are presented by the compelled congressional interrogation of senior presidential advisors, there is a significant chance that the D.C. Circuit will hold that Mr. McGahn is absolutely immune from such compulsion.

\*   \*   \*

Defendant has made a strong showing that he will prevail on at least one of the issues presented in this case, and prevailing on any of those issues will require reversal of this Court's order.  Thus, notwithstanding this Court's rejection of Defendant's positions, the Court should stay its order in recognition of the significant possibility that a reviewing court may see at least one of these issues differently.  *See, e.g.*, *Al-Adahi v. Obama*, 672 F. Supp. 2d 81, 83 (D.D.C. 2009) ("While the Court believes that the Memorandum Opinion speaks for itself in terms of how the case should be decided, it is true that it deals with complicated issues that represent fair ground for litigation and thus for more deliberative investigation.  Therefore, the Government prevails on the first factor." (internal quotation marks and citation omitted)).

### B. The Executive Branch Will Be Irreparably Harmed Absent A Stay.

Even if the first factor did not overwhelmingly favor the Executive Branch, a stay would still be appropriate to avoid irreparable harm.  *See Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 83 (D.D.C. 2018) ("A party does not necessarily have to

make a strong showing with respect to the first factor (likelihood of success on the merits) if a strong showing is made as to the second factor (likelihood of irreparable harm).").

Absent a stay, the Court's order will negate the absolute immunity that has been asserted here: if Mr. McGahn testifies before Congress, the absolute immunity from compelled congressional testimony would be vitiated. In similar circumstances, courts have consistently found irreparable harm and issued stays to afford an opportunity for effective appellate review. For example, absolute immunity from civil suit "is an immunity from suit rather than a mere defense to liability" and "is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forysth*, 472 U.S. 511, 526 (1985) (emphasis omitted). As a result, courts have held that denials of motions seeking dismissal of suits on the ground of immunity are immediately appealable, and cases have been stayed in order to allow appellate panels to answer whether an official is subject to the burdens of discovery and trial. *See id.*; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982) (qualified immunity claims are immediately appealable so that government officials are not subjected "either to the costs of trial or to the burdens of broad-reaching discovery"). If the order is not stayed, and Mr. McGahn must appear before the Committee, then the claim of immunity will have been "effectively lost," *Mitchell*, 472 U.S. at 526, and Defendant would be unable to undo the harm caused by complying with the Court's order. As explained in Defendant's motion for summary judgment, this harm includes both the fact of the compelled testimony itself and the significant possibility that privileged information will be inadvertently disclosed. *See* Def.'s Mot. for Summ. J., ECF No. 32, at 64-65.

Failing to grant a stay could also potentially moot the Executive Branch's appeal and thus deprive the Executive Branch of the chance to seek appellate review of these important constitutional issues. As this Court has observed in the FOIA context, "irreparable harm occurs where the release of documents would moot a defendant's right to appeal." *Charles v. Office of*

7

*the Armed Forces Med. Exam'r*, No. 1:09-CV-0199 (KBJ), 2013 WL 12332949, at *1 (D.D.C. May 9, 2013) (Jackson, K.B., J.) (citing *People for the Am. Way Found. v. U.S. Dep't of Educ.*, 518 F. Supp. 2d 174, 177 (D.D.C. 2007); *Ctr. for Int'l Env't Law v. Office of the U.S. Trade Representative*, 240 F. Supp. 2d 21, 22-23 (D.D.C. 2003)).  Denial of a stay here could have a similar effect, further counseling in favor of a stay.

        **C.**      **Plaintiff Will Not Be Meaningfully Harmed By A Stay.**

A stay pending appeal will not meaningfully harm Plaintiff.  First, notwithstanding Plaintiff's suggestion that it is investigating "instances of misconduct recounted in the Mueller Report" as part of its impeachment inquiry, *see* Pl's Notice, ECF No. 45, at 3, it is clear that the predominant focus of the House's current investigation concerns allegations surrounding Ukraine: since the House adopted Resolution 660, *see* H. Res. 660, 116th Cong. (2019), every reported private deponent and every public witness has testified about events that relate to Ukraine and postdate Mr. McGahn's service as Counsel to the President.  To the extent that the Committee remains interested in the events described in the Mueller Report, that report has been made available to the public with minimal redactions.  Moreover, the Committee's Chairman and Ranking Member were given access to the unredacted report, other than grand jury information.  Volume II of that report, which cites Mr. McGahn's interview reports and addresses the President's conduct, is almost 99.9% unredacted.[2]

Second, the Committee's position is that it cannot "effectively question" Mr. McGahn without obtaining the grand jury materials that underlie that Special Counsel's report.  *See In re: Application for an Order Authorizing the Release of Certain Grand Jury Materials*, No. 1:19-gj-

---

    [2] The Committee's filing requesting an expedited ruling further indicated that it believes "President Trump may have provided false statements in his written answers to the Special Counsel's office." Pl.'s Notice, ECF No. 45, at 3.  The Committee provides no reason to believe that Mr. McGahn has any relevant knowledge on this topic.

8

00048, Application, ECF No. 1, at 2-3 (D.D.C. July 26, 2019) ("These materials are essential to . . . its ability to effectively question one of its most critical witnesses, Mr. McGahn."). Yet on appeal from an order by Chief Judge Howell compelling the Department of Justice to turn over those grand jury materials, on November 18, 2019, the D.C. Circuit issued an order continuing an administrative stay through at least January 3, 2020, when the D.C. Circuit will hear oral argument following expedited briefing. *See In re: Application of the Committee on the Judiciary, U.S. House of Representatives, for an Order Authorizing the Release of Certain Grand Jury Materials*, No. 19-5288, Order (D.C. Cir. Nov. 18, 2019). And since the Committee cannot obtain the grand jury materials that it says are "essential" to questioning Mr. McGahn until at least early 2020, it follows that the Committee would not be significantly harmed by waiting to question Mr. McGahn until completion of similarly expedited appellate briefing in this case.

Ultimately, Defendant need not demonstrate that a stay pending appeal would cause no harm to Plaintiff. Rather, as this Court held in *Charles*, even when there is "harm to plaintiff from further delay," a stay is warranted when "th[o]se considerations are outweighed by the irreparable harm to Defendants that would occur in the case of disclosure without an opportunity to appeal." *Charles*, 2013 WL 12332949, at *2. That is plainly the case here.

### D. The Public Interest Favors A Stay.

Finally, the public interest counsels in favor of preserving the D.C. Circuit's ability to address the weighty issues presented in this lawsuit. If this suit is rendered moot by the denial of a stay, the political branches and the courts in this district will be denied appellate guidance concerning both the justiciability of this sort of inter-branch lawsuit and the amenability of senior presidential advisors to congressional subpoenas. On an issue of this importance to the nation, it plainly serves the public interest to have the issues raised in this case resolved by an appellate tribunal.

## CONCLUSION

The relevant factors unanimously favor a stay, and the D.C. Circuit has issued a published opinion entering a stay in materially indistinguishable circumstances. The Court should enter an immediate administrative stay and grant Defendant's motion for a stay pending appeal.

Dated:  November 26, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JAMES M. BURNHAM
Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

JAMES J. GILLIGAN
Special Litigation Counsel

*/s/ Steven A. Myers*
STEVEN A. MYERS (NY Bar No. 4823043)
SERENA M. ORLOFF (CA Bar No. 260888)
ANDREW BERNIE (DC Bar No. 995376)
Trial Attorneys

United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Tel:        (202) 305-8648
Fax:       (202) 616-8470
E-mail:    steven.a.myers@usdoj.gov

*Counsel for Defendant*