**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

COMMITTEE ON THE JUDICIARY,
UNITED STATES HOUSE OF
REPRESENTATIVES,

                 *Plaintiff*,

    v.

DONALD F. MCGAHN II,

                *Defendant*.

No. 19-cv-2379 (KBJ)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR A STAY PENDING APPEAL**

On November 25, 2019, this Court issued a thorough and well-reasoned opinion rejecting the Department of Justice's threshold arguments that the House Committee on the Judiciary lacks standing and the right to enforce its subpoenas in federal court, and holding that Donald F. McGahn II is not absolutely immune from compelled Congressional testimony. As this Court explained, it reached the same conclusions and rejected the same arguments here that had previously been urged by the Department and rejected by other judges of this Court in *Committee on Judiciary v. Miers*, 558 F. Supp. 2d 53 (D.D.C. 2008) and *Committee on Oversight and Government Reform v. Holder*, 979 F. Supp. 2d 1 (D.D.C. 2013). This Court correctly observed that "per the Constitution, no one is above the law." Mem. Opinion (Op.) at 117 (Nov. 25, 2019), ECF No. 46. This Court should deny the Department's request for a stay pending appeal because the delay from such a stay would impair the House's ongoing impeachment inquiry.

As the Committee has previously described, the Mueller Report made clear that McGahn has important information concerning President Donald J. Trump's misconduct. The Committee has been vigorously trying to obtain this information, which is of significant relevance to the House's ongoing impeachment investigation. That investigation has been proceeding rapidly and continues to do so. Accordingly, as the Committee has emphasized, speedy judicial action is needed to avoid hampering the House's impeachment investigation. *See* Pl.'s Notice of Request for Expedited Ruling (Nov. 19, 2019), ECF No. 45. Even if evidence from McGahn is not obtained before the House has completed its investigation, there is still an urgent need for that evidence because it could potentially be used if there is an impeachment trial in the Senate. The D.C. Circuit's decision to grant a stay pending appeal in *Committee on the Judiciary v. Miers*, 542 F.3d 909 (D.C. Cir. 2008), is distinguishable for these reasons. Unlike in *Miers*, McGahn's testimony is relevant to an urgent impeachment inquiry.

Against this background, the Department cannot satisfy the standard for a stay pending appeal. *First*, as to the merits, the Court's thoughtful opinion correctly rejects the Department's sweeping claim that "Presidents can lawfully prevent their senior-level aides from responding to compelled congressional process and that neither the federal courts nor Congress has the power to do anything about it." Op. 4.

*Second*, complying with a Congressional request for testimony would not irreparably harm McGahn or the Executive Branch. High-level Executive Branch officials routinely testify before Congress, and during such testimony they are provided with the opportunity to assert applicable privileges with respect to specific questions—assertions that have sufficed to protect Executive interests.

*Third*, the balance of harms and public interest weigh against a stay. The House seeks McGahn's testimony as it investigates whether to impeach President Trump, and as it considers remedial legislation to prevent future abuses of Presidential power and improper interference with agency decisionmaking. In this case, as in others involving urgent requests for information about President Trump's malfeasance, the Executive Branch has sought to avoid complying with its legal obligations to provide information to Congress through obstruction and delay. The public has a compelling interest in ensuring that the House has full information as it exercises its constitutional power of impeachment.

The Committee yesterday informed the Department that it would, as a courtesy to this Court, not oppose a seven-day administrative stay to provide this Court time to rule on the stay motion. The Department nevertheless asserts that, "absent an intervening order from this Court extending the stay beyond the seven days to which Plaintiff has agreed …, [the Department] intends to seek relief from the D.C. Circuit" on Wednesday, November 27—tomorrow morning. Def.'s Mot. for Stay Pending Appeal and for Immediate Administrative Stay at 2 (Nov. 26, 2019), ECF No. 49. It would be improper for the Department to seek a stay from the D.C. Circuit before this Court rules. *See* Fed. R. App. P. 8(a)(1) ("A party must ordinarily move first in the district court for … a stay of the judgment or order of a district court pending appeal[.]"). Because the Committee does not oppose a seven-day administrative stay in this Court, the Department has no basis to force this Court to resolve the motion in one day, or to short-circuit the normal stay process by seeking relief from the D.C. Circuit before this Court has an opportunity to rule. In the event that this Court denies a stay pending appeal and the Department seeks that relief from the D.C. Circuit, the Committee will not oppose a seven-day administrative stay in the D.C. Circuit to ensure that that Court has time to consider the request.

## ARGUMENT

"A stay pending appeal is always an extraordinary remedy" and is never granted as a matter of right. *Bhd. of Ry. & S. S. Clerks, Freight Handlers, Express & Station Emps. v. Nat'l Mediation Bd.*, 374 F.2d 269, 275 (D.C. Cir. 1966) (per curiam). In seeking a stay, the Department bears the burden of (1) making "a strong showing that [it] is likely to succeed on the merits," (2) establishing that it "will be irreparably injured absent a stay," and (3) showing that a stay would not substantially injure the Committee or undermine the public interest. *Chafin v. Chafin*, 568 U.S. 165, 179 (2013) (quotation marks omitted). These factors weigh decisively in the Committee's favor here.

### I.   The Department Is Unlikely to Succeed on the Merits

For the reasons already explained by the Court, the Department is unlikely to succeed on the merits. The Court considered the Department's arguments and rejected them in turn, agreeing with Judge Bates in *Miers* and Judge Berman Jackson in *Holder* that the Department's aggressive attempts to preclude judicial resolution of this suit lack merit, and with Judge Bates in *Miers* that the Executive Branch's absolute immunity theory is wrong.

*First*, the Court correctly held that claims by Congressional committees to enforce their subpoenas are justiciable. As the Court explained, "claims regarding the enforceability of a subpoena raise garden-variety legal questions that the federal courts address routinely and are well-equipped to handle." Op. 47-48. "DOJ's talk of 'political turf wars' and its soaring protestations about the Committee's claim being not 'capable of judicial resolution' obscure the fact that issues such as whether a particular subpoena is valid and enforceable, and whether and to what extent the recipient of such a subpoena has a legal duty to respond, are straightforward, fully justiciable questions of law." Op. 48 (alteration and citation omitted).

*Second*, the Court correctly held that McGahn's defiance of the subpoena inflicts an Article III injury on the Committee. The Court observed that "no federal judge has ever held that defiance of a valid subpoena does not amount to a concrete and particularized injury in fact." Op. 69. And "the *degree* of harm is an order of magnitude different" where the defiance is of Congress rather than a private party, because Congress depends on compliance to "conduct the investigations that are necessary to perform its crucial functions of enacting legislation and overseeing the operations of government." Op. 71. The Court noted the "manifest inequity" of the Department's position, which would treat "a committee of Congress less favorably than a litigating private citizen when it comes to identifying the appropriate mechanisms" for enforcing a subpoena. Op. 81.

*Third*, the Court correctly held that subject matter jurisdiction exists under 28 U.S.C. § 1331, the federal question statute. This case—an action seeking to enforce a Congressional subpoena issued under Article I of the Constitution—plainly presents a question "arising under the Constitution [or] laws" of the United States. 28 U.S.C. § 1331. This Court observed that the D.C. Circuit "conclusively determined" as much in *United States v. AT&T*, 551 F.2d 384 (D.C. Cir. 1976). Op. 42. And this Court further rejected DOJ's assertion that a separate jurisdictional provision—which *grants* jurisdiction over actions to enforce Senate subpoenas, *see* 28 U.S.C. § 1365—somehow *revokes* jurisdiction over actions to enforce House subpoenas, which the statute does not even mention. Op. 43-44.

*Fourth*, the Court correctly held that the Committee has a cause of action. As this Court explained, the Supreme Court has held that "the power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function," *McGrain v. Daugherty*, 273 U.S. 135, 174 (1927), and Congress's power to enforce its subpoenas is intrinsic to that function.

5

Op. 79.  The Court then correctly explained that, to the extent Congress needs statutory authority "to file a lawsuit to enforce its subpoenas in vindication of its thwarted constitutional rights," "the Declaratory Judgment Act plainly serves that purpose."  Op. 80.

*Finally*, on the merits, this Court correctly rejected the Department's unfounded claim of absolute immunity.  As the Court explained, not only does the concept of "absolute testimonial immunity for senior-level presidential aides ha[ve] no foundation in law," but that concept also "conflicts with key tenets of our constitutional order."  Op. 94.  The Court held that, under binding Supreme Court precedent, "if a duly authorized committee of Congress issues a valid legislative subpoena to a current or former senior-level presidential aide, the law requires the aide to appear as directed, and assert executive privilege as appropriate."  Op. 90.  And the Court correctly noted that the entire concept of "absolute testimonial immunity for senior-level White House aides appears to be a fiction that has been fastidiously maintained over time through the force of sheer repetition in OLC opinions, and through accommodations that have permitted its proponents to avoid having the proposition tested in the crucible of litigation."  Op. 115.

## II. Requiring McGahn to Comply with the Committee's Subpoena Will Not Irreparably Injure the Executive Branch

The Executive Branch will suffer no irreparable harm absent a stay.  Senior Executive Branch officials routinely testify before Congress, and the Executive Branch will suffer no harm—irreparable or otherwise—if McGahn complies with his duty to testify "and assert[s] executive privilege as appropriate."  Op. 90.  Executive Branch confidentiality will not be vitiated if McGahn testifies while an appeal is pending.  If McGahn testifies, the President will have the opportunity to assert any applicable privilege and his assertions will in turn be subject to judicial review.  For that reason, the Department errs in suggesting that the case might become moot absent a stay.  If McGahn testifies, there is likely to be an ensuing dispute over any

6

assertions of privilege. A ruling for the President at that point by this Court or on appeal could afford full relief.

The Department seeks support from Supreme Court decisions holding that the erroneous denial of qualified immunity imposes a harm warranting an immediate appeal. *See Mitchell v. Forysth*, 472 U.S. 511, 526-27 (1985). But those cases differ from this one because the availability of qualified immunity has long been settled, and the question in any particular case is whether a defendant is entitled to it. Here, by contrast, the absolute immunity asserted by the Department is a "fiction" that is "entirely unsupported by existing case law." Op. 91, 115. The Department cannot bootstrap its way into a stay pending appeal by asserting a meritless theory of absolute immunity and then claiming irreparable harm when the courts reject it.

**III.   A Stay Would Harm the Committee and the Public Interest**

**A.**  The House's weighty interests—including in the exercise of its constitutional authority to conduct impeachment—would be severely undermined by a stay pending appeal. The Committee is undertaking a fast-moving inquiry into whether President Trump has committed impeachable offenses, and McGahn is an eyewitness to some of the misconduct that the Committee is investigating. The Executive Branch has already delayed McGahn's testimony for months by invoking meritless claims to absolute immunity, and if a stay pending appeal is granted, the Committee would most likely lose the opportunity to consider that evidence before a House vote on impeachment. Moreover, even if this case is not resolved in time for a House vote on impeachment, the need for prompt resolution of this case would remain critical given that the House Managers could potentially make use of McGahn's testimony in the event of a subsequent trial in the Senate. And, quite apart from the question of impeachment, the Committee is urgently considering the need for remedial legislation to prevent abuses of Presidential power and improper interference with agency decisionmaking. As the Committee

has explained, McGahn's testimony would be critical to informing that legislation and conducting related oversight.

These interests are constitutionally significant.  As this Court recognized, defiance of Congressional subpoenas prevents Congress from conducting "the investigations that are necessary to perform its crucial functions of enacting legislation and overseeing the operations of government."  Op. 71.  And because the Executive Branch's obstruction interferes with the "sole Power of Impeachment" that the Constitution vests in the House, *see* U.S. Const., Art. I, § 2, cl. 5, a stay would subject the House to significant constitutional and institutional harm.

**B.**  A stay would undermine the public interest.  Granting a stay could thwart the Committee's ability to conduct an impeachment inquiry based on all of the relevant evidence, which in turn could compromise the public's faith in the process.  The decision whether to impeach a sitting President is among the House's most significant and solemn responsibilities, and it is vital that the Committee be provided with access to the relevant facts.  The Department in previous Administrations has recognized this public interest, stating that the "need for the House to be able to make its profoundly important judgment on the basis of all available information is as compelling as any that could be conceived."[1]  This Court should heed that representation and reject the Department's efforts at further delay.

---

[1] Mem. for the United States at 19, *Haldeman v. Sirica*, 501 F.2d 714 (D.C. Cir. 1974) (en banc) (No. 74-1364), *available at* https://perma.cc/9TDD-JV9T (click "View the live page," starting at p. 42).

**CONCLUSION**

The Committee respectfully requests that the Court deny McGahn's motion for a stay pending appeal.

Respectfully submitted,

*/s/ Douglas N. Letter*
Douglas N. Letter (DC Bar No. 253492)
   *General Counsel*
Todd B. Tatelman (VA Bar No. 66008)
   *Deputy General Counsel*
Megan Barbero (MA Bar No. 668854)
   *Associate General Counsel*
Josephine Morse (DC Bar No. 1531317)
   *Associate General Counsel*
Adam A. Grogg (DC Bar No. 1552438)
   *Assistant General Counsel*
William E. Havemann (VA Bar No. 86961)
   *Assistant General Counsel*
OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
douglas.letter@mail.house.gov

Annie L. Owens (DC Bar No. 976604)
Seth Wayne (DC Bar No. 888273455)
Joshua A. Geltzer (DC Bar No. 1018768)
INSTITUTE FOR CONSTITUTIONAL
   ADVOCACY AND PROTECTION
Georgetown University Law Center
600 New Jersey Avenue NW
Washington, D.C. 20001
Telephone: (202) 662-9042
ao700@georgetown.edu

*Counsel for the Committee on the Judiciary, United States House of Representatives*

November 26, 2019