# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. No. 19-cv-2379 (KBJ) |
| DONALD F. MCGAHN II, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER
## DENYING DOJ's MOTION FOR A STAY PENDING APPEAL

The Department of Justice ("DOJ"), acting on behalf of former White House Counsel Donald F. McGahn II, has appealed this Court's Memorandum Opinion and Order, issued on November 25, 2019 (*see* Def.'s Notice of Appeal, ECF No. 48), and has filed the instant motion seeking a stay of this Court's decision pending the outcome of that appeal.  (*See* Def.'s Mot. for Stay Pending Appeal and for Immediate Administrative Stay ("Def.'s Mot."), ECF No. 49.)  The challenged Order of this Court declares that McGahn does not have absolute testimonial immunity from compelled congressional process, and that his refusal to appear for testimony before the Committee on the Judiciary of the House of Representatives ("the Judiciary Committee"), pursuant to a valid subpoena that the Committee issued to him on April 22, 2019, is unlawful.  (*See* Order, ECF No. 47, at 1.)[1]  The Order further enjoins

---

[1] Page number citations to the documents that the parties and the Court have filed refer to those that the Court's electronic case filing system automatically assigns.

McGahn to appear before the Committee to provide testimony and invoke executive privilege where appropriate.  (*See id*. at 2.)  DOJ's stay motion argues that this Court's Order requiring McGahn to testify should be stayed pending appeal because the D.C. Circuit stayed a substantially similar district court order in the *Miers* case, and "the same significant and difficult separation-of-powers questions presented in *Miers*" are presented here.  (Def.'s Mot. at 1.)  DOJ also maintains that it has satisfied each of the four traditional factors that courts consider when deciding whether or not a stay pending appeal is warranted.  (*See id*. at 3–10.)  The Judiciary Committee has filed an opposition brief that asserts that DOJ cannot satisfy the four traditional factors to warrant a stay pending appeal, and that "such a stay would impair the House's ongoing impeachment inquiry." (Pl's Opp'n to Def.'s Mot. for a Stay Pending Appeal ("Pl.'s Opp'n"), ECF No. 51, at 1.)

DOJ's motion to stay this Court's Order pending appeal will be **DENIED** for the reasons explained below.

## I.

"A stay is an 'intrusion into the ordinary processes of administration and judicial review[.]'" *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) (per curiam)).  The party seeking a stay bears the "burden of showing that exercise of the court's extraordinary injunctive powers is warranted." *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985).  There are four "traditional" factors that govern a request for a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably

injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 426 (quoting *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)); *see also Cuomo*, 772 F.2d at 974. The Supreme Court has explained that the first two factors "are the most critical." *Nken*, 556 U.S. at 434.

With respect to the first factor, "[i]t is not enough that the chance of success on the merits [is] better than negligible." *Id.* (internal quotation marks and citation omitted). Instead, it must be "substantial[.]" *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977). Indeed, a party seeking a stay pending appeal must "raise[] questions going to the merits so serious, substantial, difficult[,] and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Id.* at 844 (internal quotation marks and citation omitted); *see also In re Application of Comm. on Judiciary U.S. House of Representatives for an Order Authorizing Release of Certain Grand Jury Materials*, No. 19-gj-48 (BAH), 2019 WL 5608827, at *1 (D.D.C. Oct. 29, 2019). The D.C. Circuit has further explained that a movant's failure to satisfy this stringent standard for demonstrating a likelihood of success on the merits is "an arguably fatal flaw for a stay application." *Citizens for Responsibility & Ethics in Washington ("CREW") v. Fed. Election Comm'n*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (per curiam).

The second factor, similarly, requires more than the mere "possibility of irreparable injury[.]" *Nken*, 556 U.S. at 434 (internal quotation marks and citation omitted). "Irreparable harm must be 'both certain and great[,]' and 'actual and not theoretical.'" *CREW*, 904 F.3d at 1019 (quoting *Wis. Gas Co. v. F.E.R.C.*, 758 F.2d

669, 674 (D.C. Cir. 1985)).  It is "further require[d] that the movant substantiate the claim that irreparable injury is 'likely' to occur." *Wis. Gas Co.*, 758 F.2d at 674 (citing *Holiday Tours, Inc.*, 559 F.2d at 843 n.3).  Where there is a low likelihood of success on merits, a movant must show a proportionally greater irreparable injury, *see Cuomo*, 772 F.2d at 974, in order to warrant the "extraordinary remedy" of a stay, *id.* at 978.

The last two factors, "the harm to the opposing party and weighing the public interest[,] . . . merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.  Such is the case here; indeed because the party that opposes the stay is a committee of the body of Congress that is comprised of proportionally elected representatives of the People of the United States, it is clear that the public interest lies in avoiding any harm to the Judiciary Committee that might result from a stay of this Court's Order.

## II.

DOJ begins its stay request with the compelling assertion that "[t]he only other time that a district court issued" an order requiring "a senior presidential advisor to testify before Congress[,]" the D.C. Circuit issued a stay pending appeal.   (Def.'s Mot. at 1 (referencing *Comm. on Judiciary, U.S. House of Representatives v. Miers*, 542 F.3d 909 (D.C. Cir. 2008)).)  Upon review of the D.C. Circuit's stay opinion in *Miers*, however, it is clear to this Court that there are relevant differences between the stay order that the D.C. Circuit issued in that case and the one that DOJ seeks here.

First of all, in the *Miers* case, the Judiciary Committee had argued that Judge Bates's declaration regarding the unlawfulness of Miers's withheld testimony was not an immediately appealable injunction, and the D.C. Circuit's stay order is plainly

primarily addressed to *that* dispute. *See Miers*, 542 F.3d at 910–11. The Circuit panel specifically held that, although the *Miers* court had "framed its decree as a declaratory judgment," such "declaratory judgment is the functional equivalent of an injunction[,]" and the panel further observed that "the Supreme Court has long held that a district court's denial of a colorable claim of immunity from process is immediately appealable[.]" *Id.* at 911. There is no similar question as to the immediate appealability of this Court's Order of November 25, 2019.

Second, and similarly, the D.C. Circuit granted a stay pending appeal in *Miers* without specifically addressing the traditional factors that courts apply when determining whether or not to issue stays. Instead, the panel evaluated, and rejected, the previously mentioned argument that the appellate court lacked jurisdiction, and then turned to the issue of whether the adjournment of the 110th Congress would necessarily moot the appeal, because "the subpoenas [that Congress] has issued will expire" prior to the D.C. Circuit's decision. *Id.* The panel noted in passing that "[t]he present dispute is of potentially great significance for the balance of power between the Legislative and Executive Branches[,]" but suggested that the Circuit did not need to expedite its consideration of the significant issues that the case presented, because either the expiration of the subpoenas at the end of the calendar year would moot the matter (which would mean that the parties and the appellate court would have wasted time in preparing the appeal on an expedited basis), or the case would "not become moot despite the expiration of the subpoenas[,]" which would mean that "there would be no pressing need for an immediate decision." *Id.* Based on this reasoning, the Circuit decided to consider the appeal in the ordinary course, and "therefore grant[ed] the

motion for stay pending appeal and den[ied] the motion for expedition." *Id.*  In the instant case, the D.C. Circuit has already set an expedited briefing and argument schedule (*see* Notice of Per Curiam Order, ECF No. 52-1); therefore, the question of expedition, which appears to have been the motivating factor behind the prior Circuit decision granting the motion to stay pending appeal in *Miers*, is not at issue.

Finally, even if the D.C. Circuit had specifically addressed the traditional stay factors, the circumstances that the panel faced when it issued the stay pending appeal in *Miers* differ substantially from the circumstances that exist here, despite the substantive similarities with respect to the legal issues presented in both cases.  For example, *Miers* was a case of first impression, whereas, now, two federal district court judges have addressed the same legal issues concerning both the authority of the federal courts to entertain a disputed subpoena-enforcement claim brought by the House Judiciary Committee after a former White House Counsel refused to testify before Congress in response to a valid subpoena; and also the President's assertion that senior-level presidential aides have absolute testimonial immunity.  And both judges rejected the Executive branch's contentions—a track record that had not developed at the time that the D.C. Circuit considered the stay motion in *Miers*.  In addition, the Executive branch's claim of irreparable harm is substantially weaker in the instant case than it was in *Miers*, because unlike Harriet Miers, McGahn has already given sworn testimony to the Special Counsel, which makes it difficult to see why the Executive branch would be harmed if McGahn's testimony proceeds while the appeal is pending.

III.

Under the circumstances presented in this case, none of the four traditional factors that support a stay pending appeal weighs in favor of staying this Court's Order requiring McGahn to testify.

A.

With respect to the first factor, DOJ's motion reasserts the four main arguments that DOJ made in its cross-motion for summary judgment: "(1) that the Court lacks jurisdiction under Article III; (2) that the Court lacks statutory jurisdiction under 28 U.S.C. § 1331; (3) that [the Judiciary Committee] lacks a cause of action through which it can enforce its subpoena; and (4) that Mr. McGahn is absolutely immune from compelled congressional testimony[.]" (Def.'s Mot. at 3.)  DOJ further contends that it must succeed on only *one* of these arguments in order to prevail on appeal, whereas the Judiciary Committee must "run the table" and succeed on all four arguments. (*Id.* at 3–4.)

As demonstrated in the Court's Memorandum Opinion, DOJ's likelihood of succeeding on appeal with respect to any of these arguments is exceedingly low.  Two district court judges have now addressed each of DOJ's legal contentions on identical facts and both have reached the same conclusions. *Compare generally* Mem. Op, ECF No. 46, with *Comm. on Judiciary, U.S. House of Representatives v. Miers*, 558 F. Supp. 2d 53 (D.D.C. 2008).  In particular, both *Miers* and the Memorandum Opinion that this Court filed in the instant case held that federal courts have Article III jurisdiction over a subpoena-enforcement claim brought by the House Judiciary Committee under 28 U.S.C. § 1331, notwithstanding the existence of 28 U.S.C. § 1365 and constitutional

separation-of-powers principles.  (*See* Mem. Op. at 41–45); *Miers*, 558 F. Supp. 2d at

65.  Both *Miers* and this Court also found that the legal issue presented when a

committee of Congress asserts that there is no lawful basis for a senior-level

presidential aide to refuse to appear for testimony as directed by a lawful subpoena is

not non-justiciable (*see* Mem. Op. at 46–66); *Miers*, 558 F. Supp. 2d at 72; that a House

committee has a cognizable injury in fact and meets the other criteria for Article III

standing to sue when a senior-level White House Aide defies its subpoena (*see* Mem.

Op. at 66–77); *Miers*, 558 F. Supp. 2d at 70–71; and that a thwarted House committee

has a cause of action to sue in federal court under Article I of the Constitution and the

Declaratory Judgment Act (*see* Mem. Op at 77–81); *Miers*, 558 F. Supp. 2d at 78–95.

This Court also agreed with *Miers* that there is no legal (or logical) basis for DOJ's

assertion that a senior-level presidential aide is absolutely immune from compelled

congressional process.  (*See* Mem. Op. 89–116); *Miers*, 558 F. Supp. 2d at 99–107.

The Court's reasoning in support of these conclusions is set forth at length in its

Memorandum Opinion, which incorporates and adopts the analysis of the *Miers* case,

and both opinions speak for themselves.  DOJ's stay motion fails to demonstrate that

any portion of this Court's legal analysis is erroneous, or even that the legal issues

raised in this case "represent fair ground for litigation[.]"  (Def.'s Mot. at 6 (quoting *Al-*

*Adahi v. Obama*, 672 F. Supp. 2d 81, 83 (D.D.C. 2009)).  Moreover, neither the

Supreme Court nor the D.C. Circuit has ever previously held that the significance of the

issues presented in a case, standing alone, is enough to warrant a stay pending appeal.

To the contrary, it is well established that "[s]imply calling an issue important—

primarily because it involves the relationship of the political branches—does not

transform the Executive's weak arguments into a likelihood of success or a substantial appellate issue."  *Comm. on Judiciary, U.S. House of Representatives v. Miers* (*Miers Stay Opinion*), 575 F. Supp. 2d 201, 204 (D.D.C. 2008); *see also generally Barr v. E. Bay Sanctuary Covenant*, 140 S. Ct. 3 (2019) (Sotomayor, J., dissenting).   And DOJ's stay motion does nothing more than that.

B.

DOJ has also failed to carry its burden of showing that the Executive branch will be irreparably harmed absent a stay pending appeal.  DOJ first argues that there is irreparable harm because, absent a stay, this Court's Order will "negate the absolute immunity that has been asserted here." (Def.'s Mot. at 7.)  On its face, this argument plainly rests on the assumption that absolute immunity exists; therefore, it is substantively indistinguishable from DOJ's assertion that it will succeed in persuading the appeals court that this Court's Order is erroneous, which is unlikely as noted above. To the extent that this argument is, instead, a variant of mootness—(*see* Def.'s Mot. at 7 (asserting that "if Mr. McGahn testifies before Congress, the absolute immunity from compelled congressional testimony would be vitiated"))—it is unpersuasive in the context of the circumstances presented here, for at least two reasons.

First of all, *every* stay-pending-appeal request concerning injunctive relief that a lower court has ordered involves a risk that interim compliance will moot the appeal; yet, courts have required more—i.e., that the injury suffered be irreparable in nature— in order to substantiate the stay.   Second, as Judge Bates noted in the Memorandum Opinion that he issued denying the Executive's motion for a stay pending appeal in *Miers*, the risk of mootness is not actually all that great in this case, because the

absolute immunity issue can be preserved for appeal even if the witness's testimony is provided.  *See Miers Stay Opinion*, 575 F. Supp. 2d at 205; *see also id.* (explaining that "Ms. Miers could . . . appear to testify before the Committee but explain that she is doing so under protest and that it is the Executive's position that she remains absolutely immune from compulsory congressional process[,]" a practice that "is consistent with the familiar method of objecting to evidentiary rulings at trial").

In this Court's view, DOJ also cannot make a persuasive showing of irreparable harm in the absence of a colorable argument that McGahn's mere appearance before the Judiciary Committee would, in and of itself, be harmful.  In this regard, the instant case differs substantially from *Charles v. Office of the Armed Forces Medical Examiner* (*see* Def.'s Mot. at 7–8), because in *Charles*, the Court's FOIA ruling required *the release* of certain allegedly protected information.  *See* 935 F. Supp. 2d 86, 100 (D.D.C. 2013).  Not so here: as the Court explained in its Memorandum Opinion, McGahn may assert executive privilege where appropriate, and the question of which parts of McGahn's testimony might be subject to withholding as privileged has not yet been decided.

Furthermore, and importantly, compliance with a valid subpoena that a committee of Congress issues pursuant to Article I investigative powers is itself a legal duty, and therefore not an injury at all (*see* Mem. Op. at 35); *see also Watkins v. United States*, 354 U.S. 178, 187–88 (1957), and this is especially so where the only requirement of this Court's Order is that McGahn must appear before Congress, *see Miers Stay Opinion*, 575 F. Supp. 2d at 205–06.  DOJ's harm contention also seems especially dubious under the particular circumstances of this case, because the Judiciary Committee has asserted that it intends to question McGahn about statements that he

made to the Special Counsel's Office, which have already been publicly disseminated as part of the Mueller Report.  As this Court's Opinion explained, the Committee is free to subpoena a witness who has already provided testimony, whether to test that witness's credibility or otherwise, and where the Committee calls such a witness, the Executive branch is hard pressed to maintain persuasively that it is irreparably harmed by that witness's repeat performance while the absolute immunity issue is pending on appeal.

DOJ also attempts to suggest that compelled testimony is irreparable harm per se, by referencing prior cases in which courts have stayed their rulings pending appeal to avoid the alleged harm that would occur if an immunized witness is required to testify while the immunity issue is being decided.  (*See* Def.'s Mot. at 7.)  However, Judge Bates's stay ruling persuasively explains that there is a "significant difference[] between absolute or qualified immunity from a civil damages lawsuit and the Executive's asserted immunity from congressional testimony here."  *Miers Stay Opinion*, 575 F. Supp. 2d at 205.  In particular, "[i]mmunity from damages in a civil suit entails immunity from the entire *process* of litigation[,]" including "lengthy (and costly) pre-trial discovery, depositions, and ultimately trial itself, as well as any damages."  *Id*. (emphasis in original).  That is a far cry from the comparatively modest burden that arises when a former senior-level presidential aide is required to spend a few hours testifying before Congress.  *Id.* at 206.

Judge Bates's stay opinion also speaks definitively to "any harm to the Executive's asserted institutional interest in 'autonomy[,]'" *id*., which is an injury that is only implied in the motion that DOJ has filed in the instant case.  DOJ's first two sentences suggest that a stay of this Court's Order pending appeal is warranted because

what the Court has done "[f]or only the second time in our history" is to shift "the balance of power between the Legislative and Executive Branches" by ordering that a senior-level presidential advisor must testify before Congress.  (Def.'s Mot. at 1 (internal quotation marks and citation omitted).)  But when one recalls that "[s]enior presidential advisors frequently appear voluntarily to provide testimony before Congress on sensitive issues[,]" and that requiring McGahn to testify during the pendency of the appeal "will not preclude the Executive from asserting absolute immunity prospectively in the event that the D.C. Circuit reverses this Court's absolute immunity holding and concludes that senior advisors are entitled to such protection[,]" *Miers Stay Opinion*, 575 F. Supp. 2d at 206, the impact of this Court's ruling is far less dramatic than DOJ represents.  Thus, this Court agrees with Judge Bates that any harm to the Executive branch's interests from the denial of DOJ's requested stay pending appeal is minimal.

## C.

In its brief in opposition to DOJ's motion to stay, the Judiciary Committee asserts that its ability to exercise "its constitutional authority to conduct impeachment" would be harmed if a stay pending appeal is granted.  (Pl.'s Opp'n at 7.)  This is because, pursuant to its Article I power of inquiry, the Committee is currently "undertaking a fast-moving inquiry into whether President Trump has committed impeachable offenses, and McGahn is an eyewitness to some of the misconduct that the Committee is investigating."  (*Id*.)  DOJ does not dispute the Judiciary Committee's representation that, "if a stay pending appeal is granted, the Committee would most likely lose the opportunity to consider [the McGahn] evidence before a House vote on

impeachment[.]"  (*Id.*)  But DOJ maintains that, regardless, the Judiciary Committee

will not be "meaningfully harmed by a stay" because "the predominant focus of the

House's current investigation concerns allegations surrounding Ukraine[,]" and because

the Judiciary Committee has taken the position in another case that is currently pending

in the D.C. Circuit that it "cannot 'effectively question' Mr. McGahn without obtaining

the grand jury materials that underlie th[e] Special Counsel's report[.]"  (Def.'s Mot. at

8 (capitalization altered); *see also id.* at 9 (explaining that the grand jury materials issue

is currently being reviewed by the D.C. Circuit and therefore the Committee will not

have access to such materials until at least early 2020).)   DOJ further insists that

"preserving the D.C. Circuit's ability to address the weighty issues presented in this

lawsuit" is in the public's interest.  (*Id.* at 9.)

DOJ's argument that the Judiciary Committee will not be meaningfully harmed

by a stay of this Court's Order pending appeal seems disingenuous, and therefore, is

unpersuasive.  Addressing the second harm-related representation first, it is

indisputable that the Judiciary Committee has consistently sought access to materials

and testimony with respect to its investigation of the circumstances that underlie the

Mueller Report, and it is *DOJ's appeal* that has created a delay in the execution of

Chief Judge Howell's order requiring that unredacted copies of the grand jury materials

be turned over to the Committee.  Thus, DOJ's argument here that any further delay

will not be harmful to the Judiciary Committee because, in essence, DOJ has already

harmed the Committee's interests by successfully delaying its access to other materials

strikes this Court as an unacceptable mischaracterization of the injury at issue.  And,

indeed, DOJ cites no authority for its suggestion that, if a stay movant has already

successfully forestalled an opponent's vindication of its rights, any additional delay that a stay in the instant matter would cause should not count as harm.

This Court has no doubt that further delay of the Judiciary Committee's enforcement of its valid subpoena causes grave harm to both the Committee's investigation and the interests of the public more broadly.  This is because, as the Court explained in its Memorandum Opinion, "when a committee of Congress seeks testimony and records by issuing a valid subpoena in the context of a duly authorized investigation, it has the Constitution's blessing, and ultimately, it is acting not in its own interest, but for the benefit of the People of the United States."  (Mem. Op. at 74.) Interference with a House committee's ability to perform its constitutionally assigned function of gathering relevant and important information concerning potential abuses of power in a timely fashion injures both the House and the People whose interests the Congress's power of inquiry is being deployed to protect.  Thus, far from DOJ's "no additional harm, no foul" attitude, it is clear that the Judiciary Committee's ongoing investigation will be further hampered if the Committee loses its ability to question McGahn altogether (effectively or not) during the current impeachment inquiry.

DOJ's insistence that the Judiciary Committee is really most interested in the Ukraine affair, and thus will not be harmed by any delay with respect to key testimony concerning certain circumstances revealed in the Mueller Report, fares no better.  For one thing, it is the Judiciary Committee, and not DOJ, that gets to establish the scope of its own Article I investigation, and the Committee has repeatedly represented that it is, in fact, reviewing the Mueller Report as part of the House's impeachment inquiry.  (*See* Mem. Op. at 10; *see also* Hr'g Tr., ECF No. 44, at 9:10–11:17.)  DOJ's related

suggestion that the Committee already has what it needs from McGahn for the purpose

of its investigation (*see* Def.'s Mot. at 8 (asserting that "[t]o the extent that the

Committee remains interested in the events described in the Mueller Report, that report

has been made available to the public with minimal redactions" and "the Committee's

Chairman and Ranking Member were given access to the unredacted report, other than

grand jury information")) likewise evidences DOJ's manifest refusal to accept that the

Judiciary Committee is constitutionally authorized to subpoena witnesses almost

without exception, and that, as a result, the Committee is not limited to calling only

those persons whose testimony is unknown.  (*See* Mem. Op. at 35–39.)  DOJ also does

not, and cannot, deny that whatever additional information that the Committee (and the

public) might glean from McGahn's live testimony will be lost if the Judiciary

Committee does not have an opportunity to question him prior to any House vote on

impeachment.  (*See* Pl.'s Opp'n at 7.)

Finally, although the public does have an interest in appellate review of this

matter, it is not at all clear that the D.C. Circuit would actually lose the ability to decide

"the weighty issues presented in this lawsuit" if the stay is denied, as noted above.

(Def.'s Mot. at 9); *see also Miers Stay Opinion*, 575 F. Supp. 2d at 205.  By contrast,

the Judiciary Committee would almost certainly lose the chance to question McGahn as

part of the present impeachment inquiry if a stay order issues, which would

unquestionably harm the ongoing investigation that the Judiciary Committee is

conducting, and by extension, would also injure the public's interest in thorough and

well-informed impeachment proceedings.  DOJ does not dispute that McGahn is a key

witness to events that the Judiciary Committee seeks to review, or that "Congress could

be seriously handicapped in its efforts to exercise its constitutional function wisely and effectively" if the Committee is not able to compel timely testimony related to the current impeachment inquiry. *Quinn v. United States*, 349 U.S. 155, 160–61 (1955) (citations omitted). Therefore, any additional delay in McGahn's compliance with the Committee's valid subpoena causes real and certain harm to the Judiciary Committee and to the broader interests of the public.

IV.

"'[A]n impeachment investigation involving the President of the United States' is 'a matter of the most critical moment to the Nation.'" *In re Application of Comm. on Judiciary*, 2019 WL 5608827, at *3 (quoting *In re Report & Recommendation of June 6, 1972 Grand Jury*, 370 F. Supp. 1219, 1230 (D.D.C. 1974) (Sirica, C.J.))) (alteration in original). Indeed, the fact that the issuance of a stay of McGahn's testimony would impede an investigation that a committee of Congress is undertaking *as part of an impeachment inquiry* is yet another distinction between the instant circumstances and those that existed when the D.C. Circuit stayed the district court order in *Miers*. And as this Court noted above, the D.C. Circuit *Miers* panel also did not address any of the four traditional stay factors, each of which weighs against the issuance of a stay under the circumstances presented here for the reasons previously explained.

Accordingly, it is hereby

**ORDERED** that DOJ's Motion to Stay Pending Appeal and For Immediate Administrative Stay (ECF No. 49) is **DENIED**. It is

**FURTHER ORDERED** that the administrative stay entered by this Court on November 27, 2019 (*see* Minute Order of Nov. 27, 2019), is **LIFTED**.


DATE:  December 2, 2019                              *Ketanji Brown Jackson*

                                                    KETANJI BROWN JACKSON
                                                    United States District Judge